GIBSON, DUNN & CRUTCHER LLP
CHARLES J. STEVENS, SBN 106981
  cstevens@gibsondunn.com
AUSTIN V. SCHWING, SBN 211696
  aschwing@gibsondunn.com
WINSTON Y. CHAN, SBN 214884
  wchan@gibsondunn.com
JOSHUA D. DICK, SBN 268853
  jdick@gibsondunn.com
PETER C. SQUERI, SBN 286249
  psqueri@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200
Facsimile:   415.393.8306

GIBSON, DUNN & CRUTCHER LLP
JESSICA R. CULPEPPER, SBN 304336
  jculpepper@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendant JUUL LABS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY COLGATE, KAYTLIN MCNIGHT, M.H., a minor, by her Mother and Natural Guardian JENNIFER HELLMAN, L.B., a minor, by her Mother and Natural Guardian, JILL NELSON, ANTHONY SMITH, COREY SMITH, KACIE ANN LAGUN, A.U., a minor, by her mother and natural guardian, LISA COMMITANTE, TOMMY BENHAM, and DAVID LANGAN on behalf of themselves, the general public and those similarly situated,<br><br>              Plaintiffs,<br><br>   v.<br><br>JUUL LABS, INC.,<br><br>              Defendant. | CASE NO. 18-cv-02499-WHO<br><br>**JOINT CASE MANAGEMENT STATEMENT NO. 1**<br><br>DATE: August 28, 2018<br>TIME: 2:00 PM<br>CTRM: 2, 17th Floor<br><br>HONORABLE JUDGE WILLIAM H. ORRICK |

**JOINT CASE MANAGEMENT STATEMENT**

Plaintiffs Bradley Colgate, Kaytlin McKnight, M.H., a minor, by her Mother and Natural Guardian Jennifer Hellman, L.B., a minor, by her Mother and Natural Guardian, Jill Nelson, Anthony Smith, Corey Smith, Kacie Ann Lagun, A.U., a minor, by her mother and natural guardian, Lisa Commitante, Tommy Benham, and David Langan on behalf of themselves, the general public and those similarly situated ("Plaintiffs"), and Defendant JUUL Labs, Inc. ("JUUL" or "Defendant"), by and through their respective counsel of record, hereby submit the following Joint Case Management Statement, pursuant to Local Rule 16-10(d), in advance of the Case Management Conference scheduled in this matter for August 28, 2018 at 2:00 p.m.

**I.      JURISDICTION AND SERVICE**

Plaintiffs filed this action in the Northern District of California on April 26, 2018. Defendant JUUL was served on May 7, 2018. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). There are no issues with respect to personal jurisdiction or venue.

**II.     FACTS**

**A.      Plaintiffs' Statement:**

JUUL manufactures, develops, markets and advertises JUUL e-cigarettes and JUUL pods. A JUUL e-cigarette is about the size and shape of a pack of chewing gum. It consists of a rectangular enclosure containing a rechargeable battery and heating element (the "JUUL device"), and a pre-filled pod of JUUL's patented nicotine solution (the "JUULpod"), which slides into the end of the JUUL device. Though JUUL markets and advertises its devices and pods as safe, candy-like products that are attractive to minors and nonsmokers, they in fact contain more potent doses of nicotine than cigarettes, making them unbelievably addictive.

Though only released in 2015, JUUL now dominates the $3 billion e-cigarette market in the United States, beating out established competitors like Philip Morris. More nefariously, as JUUL had hoped, its products quickly went viral, and "JUULING" now dominates high schools and colleges throughout the Country. *See, e.g.,* https://www.seattletimes.com/explore/shop-northwest/juul-is-the-iphone-of-smoking-and-the-kids-are-wild-for-it/;       http://fortune.com/2018/08/16/juul-e-cigarette-

sales-school-kids/; https://www.washingtonpost.com/news/to-your-health/wp/2018/07/30/e-cigarette-maker-juul-targeted-teens-with-false-claims-of-safety-lawsuit-claims.

The secret to JUUL's success is quite simple: JUUL e-cigarettes' patented nicotine formulation is more addictive than anything else on the market, including the most potent cigarettes. But instead of disclosing this to parents, children and consumers, JUUL launched a multi-million dollar marketing campaign targeting children and young adults in an effort to brand the JUUL e-cigarette as a fashion accessory sold in "limited edition" colors and candy-like flavors. JUUL also did not adequately disclose any of the myriad problems that are likely to occur from the use of its products, including long-term nicotine addiction; increased risk of heart disease and stroke; changes in brain functionality that lead to increased susceptibility to anxiety, depression and other addictions; decreased functionality of the endocrine system; heightened risk of cancer; and negative effects on fertility.

As one of the San Francisco engineers who invented the JUUL e-cigarette stated: "We don't think a lot about addiction here because we're not trying to design a cessation product at all . . . anything about health is not on our mind." To the contrary, JUUL continues to frame its products as cool, fashionable items to own and use. It advertises and markets the JUULdevice and JUULpods in a variety of bright, primary colors, with the nicotine pods advertised and marketed in child friendly flavors such as mango, "cool mint," "fruit medley," "crème brulee," and "limited edition classic menthol," and "limited edition cool cucumber."

Defendant's misconduct is not limited to the youth market. Defendant has continuously downplayed, misrepresented, or failed to disclose the nicotine content and pharmacokinetics of JUUL e-cigarettes, the risks of addiction, or worsening addiction, that JUUL e-cigarettes pose, and the health risks of nicotine. For example, JUUL's web site at juullabs.com states "[u]nlike other alternatives on the market, JUUL accommodates nicotine levels akin to a cigarette's in order to satisfy smokers switching." But JUUL e-cigarette and JUULpods deliver 25% more nicotine into the blood than the strongest cigarettes available. The disparity is likely far greater when a JUUL is compared to the "light" cigarettes preferred by the teenagers and young adults that constitute JUUL's core demographic. For smokers seeking an alternative to cigarettes, JUUL's omissions and misrepresentations about the nicotine content of its products muddy the waters when it comes to making an informed decision about

smoking cessation options. In fact, the JUUL e-cigarette system delivers a potent dose of a nicotine salt, which is a particularly addictive form of nicotine that is absorbed by the body at a much higher rate than smoking a cigarette or e-cigarettes that use nicotine liquid. Many smokers duped into using JUUL e-cigarettes report that JUULing has aggravated their addiction to nicotine.

JUUL has built a commercial empire on fraud, misrepresentations and omissions. Its sleek ad campaigns have turned children and non-smokers into addicts. JUUL has also worsened the plight of smokers who turned to JUUL as a means of ending their addiction to nicotine. This case seeks to put an end to JUUL's unscrupulous practices, inherently dangerous products, and provide relief to consumers for the economic losses caused by JUUL's deceptively addictive products.

As pled, this class action includes ten named Plaintiffs (seven adults and three minors). The named Plaintiffs currently reside in seven states: California, Massachusetts, Michigan, New Jersey, New York, Pennsylvania and Washington (state). Plaintiffs seek to represent the following class: "All persons who purchased, in the United States, a JUUL e-cigarette and/or JUULpods."

Plaintiffs allege eleven causes of action: (1) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17500 et seq. and similar law of others states; (2) violations of False Advertising Law, Cal. Bus. & Prof. Code §§ 17200 et seq. and similar law of others states; (3) violations of the Consumers Legal Remedies Act (the "CLRA"), Cal. Civil Code §§1750 et seq. and similar law of others states; (4) fraud, deceit and/or misrepresentation; (5) unjust enrichment; (6) failure to warn; (7) design defect; (8) manufacturing defect; (9) breach of implied warranty; (10) breach of express warranty; and (11) negligent misrepresentation.

**B.     Defendant's Statement:**

JUUL Labs, Inc. is a San Francisco-based company that designs, manufactures, and markets Electronic Nicotine Delivery Systems ("ENDS"), including the market-leading JUUL device and JUULpods. Plaintiffs—ten individuals from seven states (California, Massachusetts, Michigan, New Jersey, New York, Pennsylvania, and Washington)—allege that JUUL made false or misleading representations about JUUL products from which Plaintiffs supposedly concluded that JUUL is "a safer, healthier alternative to smoking," "deliver[ed] lower doses of nicotine," or is "a safer, less addictive alternative to smoking cigarettes." *E.g.*, FAC ¶¶ 36, 49. Plaintiffs allege that they

purchased and/or used JUUL products, and vaguely assert they would not have done so had they "known the truth of the matter about JUUL." *See*, *e.g.*, FAC ¶¶ 15, 18. Although the Plaintiffs are from only seven states, they seek to represent a class of "[a]ll persons who purchased, in the United States, a JUUL e-cigarette and/or JUULpods," and a subclass of underage purchasers who purchased JUUL products illegally from entities unrelated to JUUL. FAC ¶¶ 162–63.

JUUL strenuously disagrees that it has engaged in any wrongdoing of any kind and has moved to dismiss this baseless lawsuit. Plaintiffs' allegations that JUUL has marketed its products to minors are false. JUUL has never marketed its products to minors, and Plaintiffs' First Amended Complaint fails to identify any such marketing. JUUL has marketed its products only to existing adult smokers who deserve an alternative to combustible cigarettes. JUUL's corporate mission is to improve the lives of the world's one billion adult smokers. In 2009, the United States Congress noted that "[t]obacco use is the foremost preventable cause of premature death in America. It causes over 400,000 deaths in the United States each year, and approximately 8,600,000 Americans have chronic illnesses related to smoking." 21 U.S.C. § 387, note. "In 2016, more than 15 of every 100 U.S. adults aged 18 years or older (15.5%) currently smoked cigarettes. This means an estimated 37.8 million adults in the United States currently smoke cigarettes. More than 16 million Americans live with a smoking-related disease."[1] JUUL Labs is dedicated to eliminating combustible cigarettes by offering existing adult smokers an alternative in the form of ENDS. The Food and Drug Administration ("FDA"), which regulates ENDS like JUUL's, has concluded that "the inhalation of nicotine (i.e., nicotine without the products of combustion) is of less risk to the user than the inhalation of nicotine delivered by smoke from combusted tobacco products." 81 Fed. Reg. 28974, 28981. "FDA recognizes that completely switching from combusted cigarettes to ENDS may reduce the risk of tobacco-related disease for individuals currently using combusted tobacco products, given the products' comparative placements on the continuum of nicotine-delivering products." *Id*. at 29030. Nevertheless, in a crusade to stifle the lawful sale of FDA-regulated JUUL products—and to try to obtain damages and attorneys' fees—Plaintiffs mount an attack on JUUL Labs and its products,

---

[1] https://www.cdc.gov/tobacco/data_statistics/fact_sheets/adult_data/cig_smoking/index.htm.

with baseless allegations and claims ranging from consumer fraud to product liability to breach of warranty, and several others.  All this is despite the fact that many of the Plaintiffs have failed to allege a specific statement made by JUUL which supposedly misled them, admit they were hopelessly addicted to cigarettes before trying JUUL products, and have not returned to smoking cigarettes since, and despite the clear statements on JUULpod packaging identifying their nicotine content.  Further, Plaintiffs' allegation that JUUL delivers more nicotine than a traditional cigarette is also entirely unfounded and unsupported by the documents referenced in the First Amended Complaint.  In fact, the only studies referenced in the First Amended Complaint that tested actual JUUL products demonstrate the exact opposite—that JUUL provides lower doses nicotine that traditional combustible cigarettes.

Defendant has moved to dismiss all of Plaintiffs' claims on multiple bases, including that they are preempted by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 387p(a)(2)(A), which has specific requirements on product labeling that JUUL must follow.  Specifically, the Tobacco Control Act prohibits states from issuing any requirement "which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." *Id*.  As this language makes clear, Plaintiffs' state law claims premised on labeling of JUUL products are preempted and must be dismissed.  *See In re Fontem*, 2016 WL 6520142, at *9 (C.D. Cal. Nov. 1, 2016) (dismissing causes of action preempted by the TCA). Additionally, Plaintiffs' claims are not pleaded with the required particularity and Plaintiffs have otherwise failed to state a claim against JUUL.

### III. LEGAL ISSUES

#### A. Plaintiffs' Statement:

Plaintiffs assert eleven separate causes of action on behalf of a putative class:  (1) False Advertising (under Cal. Bus. & Prof. Code § 17500 ("FAL") and "the laws of all other states"); (2) Consumer Legal Remedies Act (under Cal. Civ. Code § 1750 ("CLRA") and "similar laws of other states"); (3) Fraud; (4) Unfair, Unlawful and Deceptive Trade Practices (under Cal. Bus. & Prof. Code § 17200 ("UCL") and "the laws of all other states"); (5) Unjust Enrichment; (6) Strict Product Liability

– Failure to Warn; (7) Strict Liability – Design Defect; (8) Strict Liability – Manufacturing Defect; (9) Breach of Implied Warranty of Merchantability; (10) Breach of Express Warranty; and (11) Negligent Misrepresentation.  FAC ¶¶ 175–277.

**B.     Defendant's Statement:**

At this early stage of the litigation, and given that Defendant's Motion to Dismiss (Dkt. 40) and Motion to Strike (Dkt. 41) are pending, it is impossible to identify all of the legal issues the Court would need to resolve if this baseless litigation were permitted to proceed (which it should not be). Defendant believes that the legal issues to be decided will include:

1. Whether Plaintiffs' claims are preempted under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 387p(a)(2)(A);
2. Whether this Court should dismiss Plaintiffs' claims for failure to state a claim pursuant to Rule 12(b)(6) and Rule 9(b);
3. Whether the claims of any and all putative class members who created an online account with JUUL and agreed to arbitrate disputes relating to their JUUL products, including the claims pleaded in this litigation, must be compelled to arbitration;
4. Whether this Court should strike Plaintiffs' purported nationwide class under Rules 12(b)(1), 12(f), 23(c)(1)(A), and 23(d)(1)(D);
5. Whether Plaintiffs can maintain this case as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3);
6. Whether Defendant is liable to Plaintiffs under state consumer protection and false advertising statutes;
7. Whether Defendant made any misrepresentations to or concealed any material facts from Plaintiffs;
8. Whether Defendant is liable to Plaintiffs for alleged failure to disclose, design defect, or manufacturing defect;
9. Whether Defendant is in breach of any express or implied warranties to Plaintiffs;
10. Whether any defenses bar Plaintiffs' claims, or eliminate or reduce alleged damages; and

11. Whether Plaintiffs' proposed remedies are permitted or appropriate.

JUUL reserves its right to assert additional legal issues.

## IV. MOTIONS

1. Plaintiffs' Motion to Appoint Interim Lead Counsel (Dkt.# 21), set for hearing on August 28, 2018, at 2:00 p.m.;

2. Defendant's Motion to Dismiss (Dkt.# 40), set for hearing on September 26, 2018, at 2:00 p.m.; and

3. Defendant's Motion to Strike (Dkt.# 41), set for hearing on September 26, 2018, at 2:00 p.m.

## V. AMENDMENT OF PLEADINGS

### A. Plaintiffs' Statement:

Plaintiffs filed a First Amended Complaint on June 12, 2018. Plaintiffs intend to seek leave to file a second amended complaint if necessary to address alleged shortcoming raised by Defendant's motion to dismiss. Depending on facts learned in discovery, Plaintiffs may seek to modify the proposed class and/or add classes or subclasses. Moreover, as this is a class action, additional plaintiffs may seek to intervene or be added.

### B. Defendant's Statement:

Plaintiffs have already amended their complaint once. Defendant reserves the right to object to any proposed amendment.

## VI. EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding preservation of documents, including electronically stored information. Potentially relevant electronically stored information has been and will continue to be maintained by the parties.

## VII. INITIAL DISCLOSURES

### A. Plaintiffs' Statement:

Plaintiffs will serve their initial disclosures in accordance with the Federal Rules. There is no compelling reason to delay.

### B. Defendant's Statement:

Defendant believes that initial disclosures are not appropriate in this case at this time. Defendant's motion to dismiss and motion to strike were filed on July 24, 2018. Responses are due by August 22, 2018, and replies are due by September 12, 2018. A hearing on the motions is set for September 26, 2018, at 2:00 p.m. Defendant has moved to dismiss all of Plaintiffs' claims on multiple bases, including that they are preempted by federal law, and that Plaintiffs have otherwise failed to state a claim against JUUL. In addition, Defendant has moved to strike Plaintiffs' nationwide class allegations, and to dismiss Plaintiffs' nationwide class claims to the extent they seek to represent individuals in unrepresented states. As explained in more detail below, resolution of these motions should be dispositive of Plaintiffs' claims. At a minimum, resolution of the motions will narrow the issues for appropriate disclosure and discovery. Moreover, any disclosures or discovery prior to the Court ruling on the motions to dismiss are especially premature and unwarranted given the fatal lack of particularity in Plaintiffs' claims; indeed, as explained in Defendant's motion to dismiss, Plaintiffs have not alleged what supposed misrepresentations they saw or how they purportedly relied on them, making it virtually impossible to make appropriate disclosures in this case.

Accordingly, in light of these pending motions, Defendant believes that initial disclosures are premature and proposes that the parties serve initial disclosures within 20 days of answering the operative complaint, so that the parties can understand which issues remain in the case, if any.

## VIII. DISCOVERY

### A. Plaintiffs' Statement:

Defendant's informal request for a discovery stay should be rejected. The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when potentially dispositive motions are filed. *See, e.g., In re Valence Tech. Sec. Litig.*, 1994 WL 758688, at *2 (N.D. Cal. Nov.18, 1994); *see also Skellercup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600–601 (C.D.Cal.1995) ("Had the Federal Rules contemplated that a motion to dismiss under Fed.R.Civ.P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation" (citation and quotation

marks omitted).) Moreover, a motion for a discovery stay seeking to preclude discovery must be supported by "good cause" and a "strong showing." *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975); *accord In re Valence Tech. Sec. Litig.*, 1994 WL 758688, at *2; *see also Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D.Cal.1990) ("The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements.") Defendant has not made, and cannot make, such a strong showing. This matter is no different than any other case in which a dispositive motion has been filed early. The mere possibility that the scope of Plaintiffs' claims may change is insufficient to show hardship or inequity sufficient to justify a stay of discovery. Regardless, Plaintiffs contend, for the reasons in their oppositions to the motions to dismiss and strike, that Defendant's motions will be denied in their entirety and discovery should proceed.

**Plaintiffs' Proposed Discovery Schedule:**

Plaintiffs propose that another CMC be held following the Court's decision on certification to set additional fact and expert discovery deadlines.

**B.     Defendant's Statement:**

Defendant's position is that discovery should be stayed pending a ruling on JUUL's motions to dismiss and strike, because a ruling on these motions may entirely dispose of Plaintiffs' claims. Dismissal on the pleadings would make unnecessary the lengthy, burdensome, and costly discovery these cases could require.  At a minimum, resolution of these pending motions may significantly narrow the scope of potentially relevant discovery in this case.

Whether to stay discovery pending a dispositive motion is within the Court's discretion. *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987).  In exercising that discretion, courts in this district have stayed discovery where the issues presented in the motion would be "potentially dispositive of the entire case" and where those issues could "be decided absent discovery." *Carter v. Oath Holdings, Inc.*, No. 17-CV-07086-BLF, 2018 WL 3067985, at *4 (N.D. Cal. June 21, 2018); *see also In re Nexus 6p Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017); *Gibbs v. Carson*, No. 13-CV-0860-TEH, 2014 WL 172187, at *3 (N.D. Cal. Jan. 15, 2014); *Hamilton v. Rhoads*, No. 11-CV-0227-RMW, 2011 WL 5085504, at *1 (N.D. Cal. Oct. 25, 2011).  Indeed, the

Ninth Circuit has instructed district courts that "[i]t is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery." *Rutman Wine v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). More recently, the Ninth Circuit has noted that "[t]he Supreme Court has stated . . . that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it." *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (explaining that Rule 8 "'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'")).

Defendant's pending motions may entirely dispose of this case and can be decided without discovery. As laid out in detail in Defendant's motion to dismiss, Plaintiffs' allegations are insufficient to state any claim against JUUL, and their claims should be dismissed in their entirety. Plaintiffs' claims are expressly preempted by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 387p(a)(2)(A), as amended by the Tobacco Control Act which provides the FDA with exclusive authority to promulgate regulations of labeling for ENDS. *See* ECF 40 at 10. Specifically, the Tobacco Control Act prohibits states from issuing any requirement "which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." 21 U.S.C. § 387p(a)(2)(A). As this language makes clear, Plaintiffs' state law claims premised on labeling of JUUL products are preempted and must be dismissed. *See In re Fontem*, 2016 WL 6520142, at *9 (C.D. Cal. Nov. 1, 2016) (dismissing causes of action preempted by the TCA). In addition, Plaintiffs' claims fail to meet the heightened pleading requirement of Rule 9(b), and Plaintiffs have not adequately alleged facts necessary to establish key elements of their claims. Discovery prior to the Court ruling on the motions to dismiss is especially premature and unwarranted given the fatal lack of particularity in Plaintiffs' claims. For example, Plaintiffs have not alleged what supposed misrepresentations they saw or how they purportedly relied on them, making it virtually impossible to conduct meaningful discovery for relevant documents in an efficient and expedient manner. While JUUL's motion to dismiss should be granted in its entirety, even if it is only partially

successful, this Court's order likely would have a substantial impact on the nature and scope of appropriate discovery in this case. Accordingly, it is premature to begin discovery at this time.

In addition, JUUL believes that its pending motion to strike Plaintiffs' nationwide class allegations will substantially narrow the scope of this case. As laid out in JUUL's motion, under California's choice-of-law principles, this Court must apply the law of each putative class member's state of residence to his or her claims. The variations in the 50 states' laws will overwhelm common questions that may exist in this case and preclude a finding of predominance at the class certification stage, making Plaintiffs' claims unsuitable for certification on a nationwide basis. Because it is apparent that Plaintiffs cannot sustain a nationwide class, Defendant has moved for an order striking Plaintiffs' doomed nationwide class allegations. Also, because Plaintiffs lack standing to bring claims on behalf of individuals outside the seven states in which the named Plaintiffs reside, Defendant has moved to dismiss Plaintiffs' claims with regard to the unrepresented states. These issues should be decided before expensive, burdensome discovery is permitted. *See Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017) (Hon. W. Orrick) (addressing class-standing issues on a motion to dismiss because "plaintiffs have two named class representatives in two states purporting to represent a nationwide class, creating the significant burden of nationwide discovery"); *In re Carrier IQ, Inc., Con. Priv. Litig.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015) (Hon. E. Chen) ("The Court has reservations of subjecting the [defendant] to the expense and burden of nationwide discovery without Plaintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws.").

It makes little sense to begin discovery in this action until the Court has had an opportunity to determine if Plaintiffs' claims and class allegations are potentially viable and the scope of this case. Given the significant burden of nationwide discovery, and the important issues raised in Defendant's motions, JUUL believes that discovery should be stayed pending a ruling on the motions.

## IX. CLASS ACTIONS

### A. Plaintiffs' Statement:

Defendant's arguments regarding certification are both premature and incorrect. Plaintiffs will address the substance of Defendant's arguments at the appropriate time (i.e., in the context of class certification briefing).

Plaintiffs make the following disclosures as required by N.D. Cal. Civil L.R. 16-9(b).

Plaintiffs seek to represent the following group of similarly situated persons, defined as follows: Plaintiffs seek to represent the following class: "All persons who purchased, in the United States, a JUUL e-cigarette and/or JUULpods." (Dkt.# 24, ¶ 162.)

Plaintiffs plead that this action involves common questions of law and fact to the potential class because each member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that (a) JUUL E-cigarettes and JUULpods were less addictive than traditional cigarettes; (b) JUUL products could be used without negative health consequences, and (c) they would be able to stop using and purchasing JUUL products "anytime." Class Member claims also derive from common questions of law and fact related to JUUL products falsely advertised as non-addictive. Finally, Plaintiff alleges that the following common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the classes to recover:

a. Whether Defendants' advertising and marketing regarding the JUUL E-cigarette and JUULpods were likely to deceive Class Members or were unfair;

b. Whether Defendants intentionally omitted material information from their advertising and marketing materials;

c. Whether Defendants unfairly, unlawfully and/or deceptively induced Class Members to purchase JUUL E-cigarettes and/or JUULpods using the promise that they would be able to stop purchasing JUULpods "anytime";

d. Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

e. The amount of revenues and profits Defendants received and/or the amount of monies

or other obligations lost by Class Members as a result of such wrongdoing;

    f.    Whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

    g.    Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

Plaintiffs contend that the class can be certified consistent with the requirements of Fed. R. Civ. P. 23(b)(2) or (b)(3).

**Plaintiffs' Proposed Certification Schedule:**

| | |
|---|---|
| Deadline for Plaintiffs to file their motion for class certification and any expert report(s) in support thereof | Eight (8) months after Defendant files its answer to the operative complaint. |
| Deadline for Defendant to oppose the motion for class certification and produce any expert report(s) in support of its opposition | Eight (8) weeks after Plaintiffs file their motion for class certification |
| Plaintiffs' reply in support of motion for class certification | Six (6) weeks after Defendant files its opposition to the motion for class certification |

**B.**    **Defendant's Statement:**

Plaintiffs' claims are not suitable for class treatment pursuant to Federal Rule of Civil Procedure 23. Defendant has filed a motion to strike Plaintiffs' nationwide class allegations and claims. Additionally, the proposed classes cannot be certified because Plaintiffs cannot establish the elements of Rule 23(a) or (b)(3). Further, a significant portion of the proposed class members may also have agreed to resolve their claims in individual arbitrations because JUUL's website contains an arbitration agreement that people must agree to before purchasing products from JUUL online, and in general, the claims are highly individualized and otherwise inappropriate for class treatment because they would require, among other things, examination of each putative class member's exposure to varying advertisements over time and their individualized experiences with JUUL products.

Defendant respectfully suggests that determining a schedule for class certification would be premature at this point, particularly while Defendant's motion to dismiss and motion to strike are

pending.  Defendant proposes that the parties meet and confer to discuss a schedule after the Court rules on those motions, in the event the Court does not dismiss all claims.

**Defendant's Proposed Certification Schedule:**

Defendant agrees to Plaintiffs' proposed certification schedule.

## X.   RELATED CASES

On May 11, 2018, Plaintiff Carl Cooper filed a nearly identical action against JUUL Labs, Inc. and Pax Labs, Inc. in San Francisco Superior Court: *Cooper v. JUUL Labs, Inc.*, Case No. CGC – 18-566496 (S.F. Super. Ct.).  That case was designated as "complex" and assigned to Judge Karnow.  On July 17, 2018, Judge Karnow entered a case management order memorializing that the parties have agreed to an informal stay of proceedings including discovery in that case pending further agreement or court order.  JUUL has preserved its right to move to formally stay the *Cooper* action until this federal case is resolved because the purported class in this case entirely subsumes the purported class in the *Cooper* case.  Another related individual (non-class) action is pending in the United States District Court for the Southern District of New York (*D.P.*, an Infant, by His Mother and Natural Guardian, L.P., No. 7:18-cv-05758-CS (S.D.N.Y. June 26, 2018) (individual action)).  Migliaccio & Rathod LLP is counsel of record in all of these actions.  Gutride Safier LLP is counsel of record in this action and the *Cooper* action.

## XI.   RELIEF

### A.   Plaintiffs' Statement:

As set forth in the FAC, Plaintiffs seek restitution, compensatory damages, civil penalties, punitive damages, costs, attorneys' fees, injunctive relief, and any other relief that the Court may deem just and proper.

### B.   Defendant's Statement:

Defendant denies that Plaintiffs are entitled to any damages or other relief.  Defendant has not brought any counterclaims and does not seek any relief.

## XII. SETTLEMENT AND ADR

The parties believe that it is premature to mediate this case, but both parties are amenable to mediation if the case is permitted to proceed.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Plaintiffs have declined to proceed before a Magistrate Judge for all purposes. The parties are amenable to having a magistrate judge assigned to decide discovery disputes.

## XIV. OTHER REFERENCES

### A. Plaintiffs' Statement:

Plaintiffs disagree that Defendant's arbitration provision is binding or enforceable on any named Plaintiff or putative class member. Plaintiffs will address any such argument when actually presented. Plaintiffs withhold judgment regarding the necessity of a special master or Judicial Panel on Multidistrict Litigation.

### B. Defendant's Statement:

Defendant believes that some of the absent putative class members' claims must be resolved in binding arbitration. Defendant reserves the right to move to arbitrate such claims or to challenge or narrow the putative class at the appropriate time.

The parties do not believe this case is suitable for resolution by a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

**Plaintiffs' Statement:**

Plaintiffs will first focus their discovery efforts on class certification.

**Defendant's Statement:**

On July 24, 2018, Defendant JUUL moved to dismiss Plaintiffs' claims under Rules 12(b)(6) and (9)(b); to strike Plaintiffs' nationwide class allegations under Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D); and to dismiss Plaintiffs' nationwide class claims under Rule 12(b)(1). Responses are due by August 22, 2018 and Replies are due by September 12, 2018. A hearing on the motions is set for September 26, 2018, at 2:00 p.m.

## XVI. EXPEDITED TRIAL PROCEDURE

The parties agree this case is not appropriate for an expedited trial procedure.

## XVII. SCHEDULING

### A. Plaintiffs' Proposed Schedule:

Plaintiffs disagree with any further delay in this case.

### B. Defendant's Proposed Schedule:

While the parties disagree on whether discovery should commence, they have agreed on the deadline for filing a motion for class certification (eight months after Defendant answers the operative complaint). Defendant also proposes that, to the extent that the case is permitted to proceed past the pleading stage, the parties should submit a schedule for summary judgment and experts in advance of the next case management conference once the parties have a better sense of the issues remaining in the case, if any.

## XVIII. TRIAL

### A. Plaintiffs' Position:

Plaintiffs estimate that trial in this case will take 12-15 days. Plaintiffs propose that a CMC be held following the Court's decision on certification to set additional deadlines, including a trial schedule.

### B. Defendant's Position:

It is difficult to estimate the length of a trial in this case. The First Amended Complaint purports to raise 11 claims that would require analysis of all 50 states' laws. Defendant believes that it would be impossible to have a manageable trial of this putative class action, let alone complete it in 12-15 days as Plaintiffs' suggest. Defendant respectfully requests that, to the extent this case proceeds and a class is certified (neither of which should occur), the Court should hold a status conference shortly thereafter to set a trial date and the parties can submit a proposed estimate for the length of trial based on the issues that are still in the case.

### XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

#### A. Plaintiffs' Statement:

Pursuant to Civil Local Rule 3-16, the undersigned counsel certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding.  These representations are made to enable the Court to evaluate possible disqualification or recusal.

Plaintiffs

Putative class members

#### B. Defendant's Statement:

Defendant has filed a Corporate Disclosure Statement as required by Federal Rule of Civil Procedure 7.1 and a Certification of Interest Entities or Persons as required by Civil Local Rule 3-15. Defendant JUUL does not have a parent corporation, and no publicly held corporation owns 10 percent or more of the stock for JUUL.  JUUL does not have any other interest to report.

### XX. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### XXI. OTHER

None

Dated: August 21, 2018                     **GUTRIDE SAFIER LLP**

*/s/ Seth Safier*
Seth Safier

*Counsel for Plaintiffs*

Dated: August 21, 2018                     **GIBSON, DUNN & CRUTCHER LLP**

*/s/ Austin V. Schwing*
Austin V. Schwing

*Counsel for Defendant*

**Local Rule 5-1(i)(3) Certification**

I, Austin V. Schwing, attest that I have received authority from each other signatory to file this document.

                                         **GIBSON, DUNN & CRUTCHER LLP**

                                         */s/ Austin V. Schwing*
                                         Austin V. Schwing

                                         *Counsel for Defendant JUUL Labs, Inc.*