1   **GUTRIDE SAFIER LLP**
    ADAM J. GUTRIDE (State Bar No. 181446)
2   SETH A. SAFIER (State Bar No. 197427)
    TODD KENNEDY (State Bar No. 250267)
3   ANTHONY PATEK (State Bar No. 228964)
4   100 Pine Street, Suite 1250
    San Francisco, California 94111
5   Telephone: (415) 639-9090
    Facsimile:  (415) 449-6469
6
7   **MIGLIACCIO & RATHOD LLP**
    Nicholas Migliaccio, admitted pro hac vice
8   Jason Rathod, admitted pro hac vice
    Esfand Nafisi (State Bar No. 320119)
9   412 H Street NE, Suite 302
    Washington, D.C. 20002
10  Telephone:  (202) 470-3520
    Facsimile: (202) 800-2730
11
12  *Attorneys for Plaintiffs*

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15
    BRADLEY COLGATE, et al,                CASE NO. 4:18-cv-02499-WHO
16
17      Plaintiffs,                        **PLAINTIFFS' OPPOSITION TO
                                           MOTION TO STRIKE PLAINTIFFS'
18           v.                            NATIONWIDE CLASS
                                           ALLEGATIONS PURSUANT TO FED.
19  JUUL LABS, INC.; PAX LABS, INC.        R. CIV. P. 12(f), 23(c)(1)(A), 23(d)(1)(D)
                                           AND TO DISMISS NATIONWIDE
20      Defendants.                        CLASS CLAIMS PURSUANT TO FED.
                                           R. CIV. P. 12(b)(1)**
21
22                                         Honorable William H. Orrick
23                                         Date:  September 26, 2018
                                           Time:  2:00 pm
24                                         Ctrm:  Courtroom 2; 17th Floor
                                           Action filed:  April 26, 2018
25
26
27
28

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................1

II.  BACKGROUND SUMMARY ...............................................................................3

III.  ARGUMENT ........................................................................................................7

A.  Defendant's Motion to Strike Should Be Denied. ....................................7

1.  Legal Standard ................................................................................7

2.  Defendant's Choice of Law Analysis Is Premature and Incorrect. ...................8

a.  This Court Should Defer A Complex Choice-of-Law Analysis Until Class Certification. ..................................8

b.  Defendant Fails To Carry Its Burden of Demonstrating That the Law of Fifty States Applies to All of Plaintiffs' Claims. ...............10

(1)  The Law For All of Plaintiffs' Causes of Action Does Not Differ in All States. ...........................................11

(2)  Even Where Variances Do Exist, They Are Not True Conflicts. ...................................................13

c.  California Has The Strongest Interest In Applying Its Law In This Case. ..........................................21

B.  Defendant's 12(b)(1) Motion to Dismiss Should Also Be Rejected. ............22

II.  CONCLUSION ...................................................................................................25

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

## TABLE OF AUTHORITIES

### CASES

*Allstate Ins. Co. v. Hague,* 449 U.S. 302 (1981)................................................................10

*Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182 (Utah 1996) .....................18

*Andren v. Alere, Inc.*, 2017 U.S. Dist. LEXIS 209405 (S.D. Cal. Dec. 20, 2017) .........15, 16, 18

*Andriesian v. Cosmetic Dermatology, Inc*., No. 3:14-cv-01600-ST, 2015 WL 1638729 (D. Or. Mar. 3, 2015) .........................................................................................8

*Assoc. of Med. Colls. v. U.S.*, 217 F.3d 770 (9th Cir. 2000) ...................................................23

*Barber v. Johnson & Johnson Co*., No. 8:16-cv-1954-JLS-JCGx) 2017 U.S.Dist.LEXIS 53591 (C.D.Cal. Apr. 4, 2017).............................................19

*Bias v. Wells Fargo & Co*., 312 F.R.D. 528 (N.D. Cal. 2015) .................................................16

*Bias v. Wells Fargo & Co*., 942 F. Supp. 2d 915 (N.D. Cal. 2013).........................................8

*Bruno v. Eckhart Corp.* 280 F.R.D. 540 (C.D.Cal. 2012) ........................................................3

*Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365 (N.D. Cal. 2010) ..........................11

*Chen v. L.A. Truck Centers, LLC* 7 Cal.App.5th 757 (2017).............................................3, 22

*Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (C.D. Cal. June 30, 2011) ......................................................................................................7

*Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564 (N.D. Cal. 2013)..........................................8

*Cover v. Windsor Surry Co.,* No. 14-CV-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016)..................................................................................1

*Czuchaj v. Conair Corp*., No. 13-cv-1901-BEN (RBB)) 2015 U.S.Dist.LEXIS 178142 (S.D.Cal. Nov. 12, 2015) ...................................................................19

*Darisse v. Nest Labs, Inc*., No. 5:14-cv-01363-BLF, 2016 U.S. Dist. LEXIS 107938 (N.D. Cal. Aug. 15, 2016) ................................................................20

*Daugherty v. Sony Elecs., Inc.*, 2006 WL 197090 (Tenn. Ct. App. Jan. 26, 2006) ...................18

*Dean v. Colgate-Palmolive Co*., No. EDCV 15–0107 JGB, 2015 WL 3999313 (C.D. Cal. June 17, 2015)...................................................................10

*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012)....................................8, 11

*Frenzel v. AliphCom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014) ...................................................10

*Gagne v. Bertran*, 43 Cal. 2d 481 (1954)..............................................................................12

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982).............................................................7

*Gerstle v. Am. Honda Motor Co*., No. 16-cv-04384-JST, 2017 U.S.Dist.LEXIS 100580 (N.D. Cal. June 28, 2017) ..............................................................2, 22

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) .................................18

*Hindsman v. GM LLC*, No. 17-cv-05337-JSC) 2018 U.S.Dist.LEXIS 92319 (N.D.Cal. June 1, 2018) .................................................................................24

*Hughes v. Ester C Co.*, 317 F.R.D. 333 (E.D.N.Y. 2016) .......................................................17

*In re Abbott Labs. Norvir Anti-Tr. Litig*., 2007 WL 1689899 (N.D. Cal. June 11, 2007) ...................................................................................................14

*In re Carrier IQ, Inc. Consumer Priv. Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. Jan.

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

2015) ....................................................................................................................24

*In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531 (N.D. Cal. 2009) ................11

*In re Checking Account Overdraft Litig.*, 307 F.R.D. 630 (S.D. Fla. 2015) ..............14

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D.Cal. 2018) ...............................................................24

*In re DirecTV Early Cancellation Litigation*, 738 F.Supp.2d 1062 (C.D.Cal. 2010) ................21

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
    955 F. Supp. 2d 1311 (S.D. Fla. 2013) ..............................................................18

*In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679 (9th Cir. 2018) ........................16

*In re Mercedes–Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) ...........15

*In re N. Dist. of Cal. "Dalkon Shield" IUD Prods. Liab. Litig.*, 526 F. Supp. 887
    (N.D. Cal. 1981) ..................................................................................................22

*In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888 (N.D.Cal. 2018) ................16

*In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011) ...........17

*In re POM Wonderful*, 2012 U.S. Dist. LEXIS 141150 (C.D. Cal. Sept. 28, 2012) ............13

*In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009) ...........................17

*International Harvester Co. v. Superior Court*, 95 Cal. App. 3d 652 (1979) .............22

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460 (N.D.Cal. 2017) ............23

*Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168 (N.D.Cal. 2017) .............1, 25

*Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975) ................................7

*Kanfer v. Pharmacare US, Inc.*, 142 F.Supp.3d 1091 (S.D.Cal. 2015) .....................10

*Koller v. Med Foods, Inc.*, Case No. 14-cv-02400-RS (N.D. Cal.) (Dkt.# 152.) ..........13, 14

*Lacher v. Superior Court*, 230 Cal. App. 3d 1038 (1991) .........................................11

*Lewand v. Mazda Motor of Am., Inc.*, No. SACV 17-00620 JVS (JCGx)) 2017
    U.S.Dist.LEXIS 219127 (C.D.Cal. Nov. 8, 2017) ............................................22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................23

*Mazza v. Honda American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ...........8, 10

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010) ............................................13

*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) .................................................23

*Metcap Sec. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756 (Del. Ch. Feb. 27,
    2009), *aff'd sub nom. Metcap Sec. LLC v. Pearl Sr. Care, Inc.*, 977 A.2d 899
    (Del. 2009) ...........................................................................................................18

*Mollicone v. Universal Handicraft, Inc.*, No. 2:16-cv-07322-CAS(MRWx)) 2017
    U.S.Dist.LEXIS 14125 (C.D.Cal. Jan. 30, 2017) .............................................25

*Northrop Corp. v. American Motorists Ins. Co.*, 220 Cal. App. 3d 1553 (1990) ..................22

*One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 87 A.D.3d 1 (N.Y. App. Div.
    2011) ....................................................................................................................18

*Opperman v. Path, Inc.*, 2016 WL 3844326 (N.D.Cal. 2016) ...................................10

*Original Talk Radio Network, Inc. v. Alioto*, 2014 U.S.Dist.LEXIS 153036 (D.Or.
    Oct. 29, 2014, No. 1:13-cv-00759-PA) ..............................................................16

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

*Pecanha v. Hain Celestial Grp.*, No. 17-cv-04517-EMC) 2018 U.S.Dist.LEXIS 11739 (N.D.Cal. Jan. 24, 2018) ...................................................................24

*Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21, 2010) .........................................................................13

*Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.*, 710 F.Supp.2d 458 (D. Del. 2010) ..................................................................................................14

*Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565 (C.D.Cal. 2016) ..........................2

*Porter v. Hu*, 116 Haw. 42 (Ct. App. 2007)...............................................................18

*Powers v. Lycoming Engines,* 245 F.R.D. 226 (E.D. Pa. 2007) ................................14

*Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888 (N.D. Cal. Aug. 18, 2015).......7

*Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .......................24

*Schroeder v. Buchholz*, 622 N.W.2d 202 (N.D. 2001) ..............................................18

*Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605 (D.S.D. 2004)..................15

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ............................................................23

*Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 2014 U.S. Dist. LEXIS 35455, 2014 WL 1048710 3 (N.D. Cal. Mar. 14, 2014)........................................7

*Thompson v. Jiffy Lube Intern., Inc.*, 250 F.R.D. 607 (D. Kan. 2008) ......................17

*Thompson v. McCombe*, 99 F.3d 352 (9th Cir. 1996)................................................23

*Thornhill Publ'g Co. v. General Tel. Elec.*, 594 F.2d 730 (9th Cir. 1979)................23

*Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. March 31, 2010) ....................7

*Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535 (Ct. App. 2002), *as corrected* (June 19, 2002) ....................................................................................18

*Valencia v. Volkswagen Group of Am. Inc.*, No. 15-cv-00887-HSG) 2015 U.S.Dist.LEXIS 105545 (N.D.Cal. Aug. 11, 2015).................................................19

*Van Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-cv-03889-JD, 2018 U.S.Dist.LEXIS 34796 (N.D.Cal. Mar. 1, 2018)..................................................16

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ....................7

*Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906 (2001)....................................10

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) .........................7

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ...............19

*Zeiger v. WellPet LLC,* 304 F. Supp. 3d 837 (N.D. Cal. 2018) ...................................1

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

1  Plaintiffs respectfully submit this opposition to Defendant's motion to strike and motion to
2  dismiss pursuant to Rule 12(b)(1). (Dkt.# 41.)

3  **I.     INTRODUCTION**

4  JUUL Labs, Inc. ("JUUL" or "Defendant") does not dispute that it is headquartered, and
5  performs all of its marketing, advertising, research, design, testing and development, in California.
6  It nevertheless asks this Court to strike, as a matter of law, Plaintiffs' nationwide class allegations
7  on the grounds that common questions do not predominate. It further contends that the same claims
8  should be dismissed, per Rule 12(b)(1), because ten named Plaintiffs, from seven different states,
9  do not have standing to represent absent class members across the country. Defendant's arguments
10 are premature, unsupported by law and untethered from the allegations in the Complaint.

11 It is true that this Court has dismissed nationwide class allegations on the pleadings in
12 several prior cases, but those cases are inapposite.[1] Here, the issue is not suceptible to determination
13 on the pleadings, and Defendant has not met its burden to show irreconcilable conflicts of law. For
14 some of the claims, which involve introduction into the stream of commerce of an inherently
15 dangerous product, there is a strong probability that California law will apply nationally, under
16 California's governmental interest test, because the state has a strong interest in ensuring
17 manufacturers are liable for the harm they cause, particularly when all relevant decisions were
18 made in California. For other consumer claims, and the claim for unjust enrichment, the laws of the
19 states are so similar that common issues predominate even if individual state laws apply, and there
20 are sufficient named representatives from a variety of states—seven at last count—to adequately
21 represent the nationwide class and/or to-be-proposed subclasses of groups of similar states. Claims
22 of a subgroup—online purchasers from any state—may be governed by California law under a

23

24 [1] *See Zeiger v. WellPet LLC,* 304 F. Supp. 3d 837 (N.D. Cal. 2018) ("*Zeiger*") (dismissing
25 nationwide class allegations at pleading stage when only plaintiff was from California, defendants were outside California, and all claims were purported to be under California consumer law); *Cover*
26 *v. Windsor Surry Co.,* No. 14-CV-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) ("*Cover*") (dismissing nationwide class allegations at pleading stage when only plaintiff was from
27 Rhode Island, defendants were California defendants, and claims were primarily under California law); and *Johnson v. Nissan N. Am., Inc.,* 272 F. Supp. 3d 1168 (N.D.Cal. 2017) ("*Johnson*") (same
28 for a California and a New York plaintiff, non-California defendants, and mixed claims).

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

written choice-of-law provision.[2] The appropriate result is to deny the motions to strike and dismiss and to defer the choice-of-law issues until class certification, when a fuller record will be developed, including the specific groups of claims and states that may be included in proposed subclasses. *See, e.g., Gerstle v. Am. Honda Motor Co*., No. 16-cv-04384-JST, 2017 U.S.Dist.LEXIS 100580, at *13 (N.D. Cal. June 28, 2017) (denying motion to strike nationwide class, stating "the Court has no factual record to use in deciding which state has a greater interest in applying its laws.")

The prior cases in which this Court dismissed nationwide class allegations are distinguishable for another important reason. In those cases, the Court was concerned that allowing nationwide class allegations to proceed would drastically increase the discovery burden on defendants. Here, striking nationwide allegations will have, at best, a de minimis effect on the scope of discovery. The same discovery will be needed to resolve the claims of the seven (non-California) named Plaintiffs from six states as would be needed to resolve claims of all purchasers, as there was uniform set of marketing, packaging, and product formula. A nationwide class will actually enhance efficiency and decrease discovery costs, as otherwise there will need to be more named plaintiffs and/or more cases, which will increase the need for discovery (e.g., 50 plaintiff depositions), require duplication of efforts (e.g., multiple motions to dismiss, for class certification, etc.), and increase the likelihood of inconsistent results.

Further, with respect to those nationwide claims for which Plaintiff seeks application of California law, Defendant fails its burden of proving "that foreign law, rather than California law, should apply to class claims." To meet this burden, Defendant must not only show that there are "differences" between the laws but that the differences are material, or that there is a "true conflict" of law, such that class certification is impossible. *See Petersen v. Costco Wholesale Co*., 312 F.R.D. 565, 581 (C.D.Cal. 2016) (rejecting similar conclusory motion to strike nationwide claims, as "a close analysis of these purported differences reveal that many of them 'are insignificant, and

---

[2] *See* https://www.juul.com/legal-and-privacy, last visited August 20, 2018 ("These Terms of Service will be governed by and interpreted under the laws of the State of California, USA, without regard to its principles of conflict of laws. Exclusive venue for any dispute that arises out of or relates to these Terms of Service or your use of the Website will be the state or federal courts of San Francisco, California.")

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

1  therefore, they present no hurdle to class certification.'"). Defendant cannot meet its burden. It

2  offers virtually no analysis of Plaintiffs' claims but instead parrots the work of other defendants and

3  other courts in other cases. Its approach has invariably been rejected, even at the class certification

4  stage, where Plaintiffs have the burden to show predominance. As one court put it when faced with

5  a similar attempt to avoid nationwide claims: Defendant "cannot profitably rely on the work of a

6  different party in a different case with different facts—or on the Ninth Circuit finding error in a

7  district court rejecting an argument [defendant] did not themselves present to this Court—to correct

8  their failure." *See Bruno v. Eckhart Corp.* 280 F.R.D. 540, 550 (C.D.Cal. 2012).

9  Finally, even if JUUL could establish a material difference or true conflict, it would also

10  need to establish that another state has a greater interest than California in applying its laws to the

11  claims in this case on which Plaintiffs seek application of California law. It has not done so, and is

12  unlikely to be able to do so, particularly on Plaintiffs' inherent defect and strict liability claims.

13  Here, too, Defendant merely string-cites cases, hoping that the analysis therein applies equally to

14  the facts at issue here. But unlike the mill-run false advertising cases relied on by Defendant, the

15  defect claims here involve California's "strong interest" in "ensuring manufacturers are liable for

16  the harm they cause, providing an economic incentive for improved product safety, inducing the

17  reallocation of resources toward safer products, and spreading the risk of harmful products." *Chen*

18  *v. L.A. Truck Centers, LLC*, 7 Cal.App.5th 757, 774-775 (2017).

19  Defendant's motion to strike and to dismiss should be denied in the entirety.[3]

20  ## II.   BACKGROUND SUMMARY

21  JUUL manufactures, develops, markets and advertises JUUL e-cigarettes and JUULpods. A

22  JUUL e-cigarette is about the size and shape of a pack of chewing gum. It consists of a rectangular

23  enclosure containing a rechargeable battery and heating element (the "JUUL device"), and a pre-

24  filled pod of JUUL's patented combination of nicotine salt and benzoic acid (the "JUULpod"),

25  which slides into the end of the JUUL device. Though JUUL markets and advertises its devices and

26
27  [3] If the Court is inclined to grant Defendant's motion, Plaintiffs request 60 days' leave to file an amended complaint with additional allegations and/or named plaintiffs. The additional time is necessary to be able to properly vet the significant numbers of persons from other states who wish
28  to join the complaint as named plaintiffs.

-3-

pods as safe, candy-like products that are attractive to minors and nonsmokers, they in fact deliver more potent doses of nicotine than cigarettes, making them unbelievably addictive.

Although only released in 2015, JUUL now controls more than 70% of the $3 billion e-cigarette market in the United States, is valued at $15 billion and has beaten out established competitors like Philip Morris. More nefariously, as JUUL intended, its products quickly went viral, and "JUULING" now dominates middle schools and high schools throughout the Country.

The secret to JUUL's success is quite simple: JUUL e-cigarettes' patented nicotine formulation is more addictive than anything else on the market, including the most potent cigarettes. Instead of disclosing this to parents, children and consumers, JUUL launched a multi-million dollar marketing campaign targeting adolescents and young adults in an effort to brand the JUUL e-cigarette as a fashion accessory sold in "limited edition" colors and candy-like flavors. JUUL also did not adequately disclose any of the myriad problems that are likely to occur from the use of its products, including long-term nicotine addiction; increased risk of heart disease and stroke; changes in brain functionality that lead to increased susceptibility to anxiety, depression and other addictions; decreased functionality of the endocrine system; heightened risk of cancer; and negative effects on fertility.

JUUL now claims that its products are only for adult smokers who wish to quit. But as one of the San Francisco engineers who invented the JUUL e-cigarette admitted: "We don't think a lot about addiction here because we're not trying to design a cessation product at all . . . anything about health is not on our mind." Even today, JUUL continues to frame its products as cool, fashionable items to own and use. It advertises and markets the JUULdevice and JUULpods in a variety of bright, primary colors, with the nicotine pods advertised and marketed in youth-centric flavors such as mango, "cool mint," "fruit medley," "crème brulee," and "limited edition classic menthol," and "limited edition 'cool' cucumber."

Defendant's misconduct is not limited to the youth market. It has continuously downplayed, misrepresented, or failed to disclose the nicotine content and pharmacokinetics of JUUL e-cigarettes, the risks of addiction, and of worsening existing addiction, that JUUL e-cigarettes pose, and the health risks of nicotine. For example, JUUL's web site at juullabs.com

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

states "[u]nlike other alternatives on the market, JUUL accommodates nicotine levels akin to a cigarette's in order to satisfy smokers switching." But JUUL e-cigarette and JUULpods deliver at least 25% more nicotine into the blood than the strongest cigarettes available, and they deliver it in a manner that creates a more potent narcotic 'kick' than cigarettes. The disparity is likely far greater when a JUUL is compared to the "light" cigarettes preferred by the teenagers and young adults who constitute JUUL's core demographic. For smokers seeking an alternative to cigarettes, JUUL's omissions and misrepresentations about the nicotine content of its products muddy the waters when it comes to making an informed decision about smoking cessation options. In fact, the JUUL e-cigarette contains three times more nicotine than the legal limit in the European Union, and combines nicotine salt with benzoic acid, which alters the pH of the aerosolized nicotine and can geometrically increase the bioavailability (i.e., absorption) of nicotine. Many smokers duped into using JUUL e-cigarettes report that "JUULing" has aggravated their addiction to nicotine.

JUUL has built a better mousetrap, but what JUUL did not disclose is that consumers are the mice. Its sleek ad campaigns have turned children and non-smokers into addicts. JUUL has also worsened the plight of smokers who turned to JUUL as a means of ending their addiction to nicotine. This case seeks to put an end to JUUL's unscrupulous practices, inherently dangerous products, and provide relief to consumers for the economic losses caused by JUUL's deceptively addictive products.

As pled, this class action includes ten named Plaintiffs (seven adults and three minors). The named Plaintiffs currently reside in seven states: California, Massachusetts, Michigan, New Jersey, New York, Pennsylvania and Washington state. Plaintiffs seek to represent the following class: "All persons who purchased, in the United States, a JUUL e-cigarette and/or JUULpods." (Dkt.# 24, ¶ 162.) They allege eleven causes of action: (1) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17500 et seq. and similar law of others states; (2) violations of False Advertising Law, Cal. Bus. & Prof. Code §§ 17200 et seq. and similar law of others states; (3) violations of the Consumers Legal Remedies Act (the "CLRA"), Cal. Civil Code §§1750 et seq. and similar law of others states; (4) fraud, deceit and/or misrepresentation; (5) unjust enrichment; (6) failure to warn; (7) design defect; (8) manufacturing defect; (9) breach of implied warranty; (10)

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

breach of express warranty; and (11) negligent misrepresentation.[4]

Plaintiffs further plead that this action involves common questions of law and fact to the potential class because each member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that (a) JUUL E-cigarettes and JUULpods were equivalent to a pack of cigarette; (b) JUUL products could be used without negative health consequences and were safe enough to be sold without any addiction warning labels; and (c) purchasers would be able to stop using and purchasing JUUL products "anytime." Class Member claims also derive from common questions of law and fact related to JUUL products falsely advertised as non-addictive. Finally, Plaintiffs allege that the following common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the classes to recover:

a.      Whether Defendants' advertising and marketing regarding the JUUL E-cigarette and JUULpods were likely to deceive Class Members or were unfair;

b.      Whether Defendants intentionally omitted material information from their advertising and marketing materials;

c.      Whether Defendants unfairly, unlawfully and/or deceptively induced Class Members to purchase JUUL E-cigarettes and/or JUULpods using the promise that they would be able to stop purchasing JUULpods "anytime";

d.      Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

e.      The amount of revenues and profits Defendants received and/or the amount of monies or other obligations lost by Class Members as a result of such wrongdoing;

f.      Whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

---

[4] The ordering of the causes of action differs from the FAC. Moreover, for ease of reference, Plaintiffs' first three claims—i.e., for violation of California's UCL, FAL, CLRA and their corollaries in the other 49 states and the District of Columbia, shall be referred to as Plaintiffs' "Consumer Statutory Claims" and the remaining claims as the "Common Law Claims."

1
2

    g.    Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

## III.    ARGUMENT

3
4

### A.    Defendant's Motion to Strike Should Be Denied.

5

#### 1.    Legal Standard

6
7
8
9
10
11

Courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true[.]" *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. March 31, 2010). Similarly, a court "must view the pleading in the light most favorable to the nonmoving party." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. June 30, 2011).

12
13
14
15
16
17
18
19
20
21
22
23

Courts, including this one, have recognized class allegations may sometimes be stricken at the pleading stage.[5] *See, e.g., Kamm v. California City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim."). However, Ninth Circuit precedent stands "for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted."[6] *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). Motions to strike at outset of a case are only granted under "exceptional circumstances." *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 908 (N.D. Cal. Aug. 18, 2015); *see also Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 2014 U.S. Dist. LEXIS 35455, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014) (noting district courts increasingly rely on *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) in holding

24
25
26

[5] "[T]he court may [also] issue orders that require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). And "[p]ursuant to Rule 23(d)(1)(D), the court may strike class allegations if the complaint plainly reflects that a class action cannot be maintained." *Simpson v. Ramada Worldwide, Inc.*, 2012 U.S. Dist. LEXIS 169932, at *2 (N.D. Cal. Nov. 29, 2012).

27
28

[6] This remains true until and even after class certification. *See Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 631 (9th Cir.) (holding "the evidence needed to prove a class's case often lies in a defendant's possession and may be obtained only through discovery.")

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

that "Rule 12(f) motions to strike are not the proper vehicle for seeking dismissal of class allegations.")

This is far from the exceptional case. To the contrary, Defendant falls well short of meeting its obligation to make any compelling argument to strike Plaintiffs' nationwide class allegations.

### 2. Defendant's Choice of Law Analysis Is Premature and Incorrect.

Defendant initially contends that this Court must now apply *Mazza v. Honda American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) and then determine, based solely on the pleadings, for all of Plaintiffs' claims, that the laws of other states (and not California) apply to class member purchases and/or Defendant's allegedly unlawful conduct and thereby individual issues necessarily predominate. The argument fails for at least three reasons: First, it is premature. Second, Defendant fails to carry its burden of proving that a true conflict exists between California law and the law of the unrepresented states *for all eleven* of Plaintiffs' causes of action as applied to the facts of this case. Finally, California has by far the strongest interest in applying its law to the claims, regardless of the state where the Plaintiffs (or class members) reside.

#### a. This Court Should Defer A Complex Choice-of-Law Analysis Until Class Certification.

Although the Court is not precluded from conducting a *Mazza* analysis on the pleadings, the majority approach in this Circuit is to defer the choice-of-law question until class certification. *See, e.g., Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013) (declining to dismiss claim for nationwide class under California law; explaining that "[s]uch a detailed choice-of-law analysis is not appropriate at this stage of the litigation."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) (same); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 929 (N.D. Cal. 2013) (reasoning that California's choice-of-law analysis "is more difficult, and premature" at the pleading stage "when dealing with a potential nationwide class action."); *Andriesian v. Cosmetic Dermatology, Inc.*, No. 3:14-cv-01600-ST, 2015 WL 1638729, at *11 (D. Or. Mar. 3, 2015) (collecting cases for the proposition that "most [courts] hold that a case should not be dismissed based on a conflict of law analysis prior to class certification.") This is particularly true in instances, as here, where (i) defendant is headquartered in California, (ii) there are multiple

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

named plaintiffs from different states, and (iii) numerous causes of action, including a majority of non-California claims.

Defendant nevertheless argues that this Court follows the "minority approach" and analyzes "issues that may undermine the viability of a putative nationwide class, such as class standing and choice of law, at the [pleading] stage." Defendant overstates the argument. For example, this Court most recently stated that "there is no hard and fast rule" regarding when to best to determine the scope of a proposed class. *Zeiger*, 304 F. Supp. 3d at 847. Here, the Court should wait to determine the appropriate of nationwide certification in the context of the Rule 23 predominance inquiry.

As mentioned in the introduction, *Zeiger*, *Cover* and *Johnson* presented situations much different from the one here. *Zeiger* had a single California plaintiff, pleading a nationwide class against only non-California defendants. *Cover* had a single Rhode Island plaintiff, pleading primarily California consumer claims against California defendants. *Johnson* had only New York and California plaintiffs, with all defendants from outside California. By contrast, this case already has ten named Plaintiffs from seven different states; three of the eleven claims are asserted under California law and its non-California corollaries, with the remaining eight being common law claims; the only Defendant is headquartered in California; and all of the alleged misconduct—i.e., all of the advertising, marketing, research, development, labeling, and manufacturing of Defendant's highly addictive, inherently dangerous, poisonous product marketed to children— emanates from California.

Moreover, unlike in *Zeiger*, *Cover* and *Johnson*, absent from Defendant's argument is any analysis regarding how a nationwide class in this case would create any additional discovery burden. It would not. To the contrary, striking a nationwide class will likely result in adding more named plaintiffs to cover all fifty states, thereby creating a far bigger discovery burden on Defendant. Alternatively, it will result in additional cases being filed across the nation, multi-district litigation, additional law firms, and the real possibility of inconsistent results. Dismissing a nationwide class at this stage will, at best, eliminate a *de minimis* amount of discovery, because there is a single product, a single marketing campaign, a single set of labeling, and all of it emanated from California. Given these profound differences between this case and *Zeiger*, *Cover*

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

and *Johnson*, this Court should not go out of its way to conduct the choice-of-law analysis on the pleadings, without the benefit of a developed record. *See, e.g., Dean v. Colgate-Palmolive Co.*, No. EDCV 15–0107 JGB, 2015 WL 3999313 at *11 (C.D. Cal. June 17, 2015) (holding that a choice-of-law analysis "is not appropriate at this stage of litigation" but rather should occur "after the parties have engaged in discovery"); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1007 (N.D. Cal. 2014) (stating that "choice of law analysis is a fact-specific inquiry which requires a more developed factual record than is generally available on a motion to dismiss"); *Kanfer v. Pharmacare US, Inc.*, 142 F.Supp.3d 1091, 1108 (S.D. Cal. 2015) (whether the differences in Florida and California consumer protections law are truly material is better suited for resolution at class certification or on a motion for summary judgment, when the Court will have the benefit of a more developed factual record).

> **b.**     **Defendant Fails To Carry Its Burden of Demonstrating That the Law of Fifty States Applies to All of Plaintiffs' Claims.**

If this Court nevertheless desires to conduct a choice-of-law analysis on the pleadings, it must apply the three-step governmental interest test. The test states:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinate to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza*, 666 F.3d at 590. Defendant has the burden of demonstrating "that foreign law, rather than California law, should apply to [the] class claims."[7] *Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D.Cal. 2016). It cannot meet its burden.

---

[7] Under California's choice of law rules, Plaintiffs bear the initial burden to show that California has "significant contact or significant aggregation of contacts" to the claims of each class member. *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001) (citations omitted). Such a showing is necessary to ensure that application of California law is constitutional. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11 (1981). Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate "that foreign law, rather than California law, should apply to class claims." *Wash. Mut. Bank*, 24 Cal. 4th at 921. Although Defendant does not

-10-

**(1)     The Law For All of Plaintiffs' Causes of Action Does Not Differ in All States.**

To carry its burden, Defendant must first establish *for all of* Plaintiffs' causes of action that the law varies across all states. Otherwise stated, if there is no variation in the law across the country for even one of Plaintiffs' causes of action, Defendant's predominance argument fails as to, at a minimum, that cause of action such that a nationwide class is properly pled—i.e., not precluded at the pleading stage—and this Court may end its choice of law inquiry. Defendant fails to carry its burden on this prong for two reasons:

Defendant argues that California law varies with the other states on six (out of ten) of Plaintiffs' Common Law causes of action—i.e., for negligent misrepresentation, unjust enrichment, "strict liability,"[8] implied warranty of merchantability, express warranty and fraud.[9] To its

> directly address this issue, Plaintiffs specifically pled, and Defendant apparently concedes, the following:
>
> > Defendants JUUL and PAX are both based in San Francisco, California. Defendants designed and implemented the unlawful and deceptive conduct described in this Complaint from their headquarters in the San Francisco Bay Area. Additionally, Defendants have more JUUL e-cigarette consumers in California than in any other state.
>
> (Dkt.# 24, ¶ 173.) District courts have held that where defendants are headquartered, and some misconduct conduct originates in defendant's home state, that is sufficient to establish "significant contact" for due process purposes and to shift the burden to defendant. *See Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012) (defendants being headquartered in California was sufficient to satisfy due process); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("Defendants are headquartered in California and their misconduct allegedly originated in California."); *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 538 (N.D. Cal. 2009) (defendant was headquartered in the state and the challenged conduct took place in California).

[8] Defendant lumps, under this heading, Plaintiffs' design defect, manufacturing defect and failure to warn claims. Defendant shortcuts the individual causes of action and analyzes only "strict liability" across different states. This too is fatal to Defendant's motion because it must show differences on each of Plaintiffs' claim, not differences across areas of law or theories of liability. *See, e.g., Zinser*, 253 F.3d at 1188 (holding California's three-part choice of law analysis must be applied to every cause of action for which certification is sought, and for every non-forum state for which the Defendant asserts has an interest.)

[9] Under this heading, Defendant apparently lumps the deceit and misrepresentation claims. *But see, e.g., Lacher v. Superior Court*, 230 Cal. App. 3d 1038, 1046-1047 (1991) (holding what distinguishes actionable (fraudulent) deceit is the element of knowing intent to induce someone's action to his or her detriment with false representations of fact. Fraud is an intentional tort; it is the

detriment, Defendant ignores several causes of action. *See, e.g., Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001) (holding that a choice of law analysis must be applied to every cause of action for which certification is sought.) Left unaddressed are Plaintiffs' causes of action for deceit and/or misrepresentation.

Moreover, Defendant only addresses purported differences between other laws and California law. It does not, however, address differences (if any) between the laws of the seven states from which the named Plaintiffs hail and the other 43 states. It states that "Plaintiffs do not specify under which state's law they purport to bring their [Common Law Claims]," and then concludes that, in such circumstances, the "law of each class member's home state will govern these claims." (Dkt.# 41, 7:17-26.) If this is true, to carry its burden, the laws of Massachusetts, Michigan, New Jersey, New York, Pennsylvania and Washington (state), i.e., the home states of the other named Plaintiffs, must also be analyzed and compared to establish a variance on each cause of action with those of absent class members. Defendant just ignores this point. Leaving this unaddressed is particularly problematic because the states might easily be groupable on one or more causes of action as having the materially identical laws. For example, at certification, the Court might certify the consumer fraud claim on a nationwide basis divided into three subclasses: (1) California plus 19 other states and (2) New Jersey plus 14 other states and (3) Michigan plus 14 other states. All states might share proof of some issues, such as whether there was a false or misleading statement; while subgroups would share proof on other issues, such as reliance or measure of damages. Another court in this District used this exact theory to certify a class for settlement purposes, but explained that that the theory would work even were the case to proceed to trial:

> The Plaintiffs have submitted extensive briefing and supplemental materials identifying the similarities and differences among state laws and setting forth why the common issues predominate and why the differences are immaterial to this litigation. Further, in circumstances where there are majority and minority rules among the states—for example, where one group of states requires proof of a particular element while another group does not, there is at least one proposed class representative from each group of states, so

element of fraudulent intent, or intent to deceive, that distinguishes it from actionable negligent misrepresentation and from nonactionable innocent misrepresentation.); *Gagne v. Bertran*, 43 Cal. 2d 481, 488 (1954) (holding while negligent misrepresentation shares four elements with fraud, it differs regarding the fifth element: mental state.)

-12-

representatives exist to prove all elements of all claims for all variations of the state laws. Were this case to proceed to trial, a verdict form could be fashioned for the jury to determine which elements had and had not been proven; it would then be a relatively simple administrative process to determine whether the causes of action had been proven under the laws of each state. For those reasons, this Court finds that common issues predominate with respect to Settlement Class.

*Koller v. Med Foods, Inc.*, Case No. 14-cv-02400-RS (N.D. Cal.) (Dkt.# 152.)

### (2)   Even Where Variances Do Exist, They Are Not True Conflicts.

Defendant next argues that the variances between California law and the laws of the other states nationwide create true conflicts of law. Although Defendant does identify differences between the consumer protection statutes of California and other states and, to a lesser degree, variances in common law claims, it fails to adequately establish that any are material or that a true conflict exists. Establishing materiality requires more than citing to cases where other defendants or courts have identified certain differences in legal requirements across the fifty states. "The second step of the governmental interest analysis" requires Defendant to "examine each jurisdiction's interest in the application of its own law *in the circumstances of the particular case* to determine whether a true conflict exists." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 91 (2010) (emphasis added). California law further requires a case-specific analysis to demonstrate a true conflict. *See In re POM Wonderful*, 2012 U.S. Dist. LEXIS 141150, at *4 (C.D. Cal. Sept. 28, 2012); *Bruno*, 280 F.R.D. at 547 ("*Mazza* did not and could not have changed state law requiring the defendant to analyze various states' laws under the circumstances of the particular case and given the particular legal issue in question."); *Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632, at *59 (N.D. Cal. Dec. 21, 2010) (holding the listing of so-called "material differences," without providing accompanying analysis, to be almost entirely unhelpful and insufficient to carry burden of showing a true conflict). Defendant never explains how or why any of the alleged variations in state law necessarily defeat predominance for *all* of Plaintiffs' claims *in this case*. Even where Defendant attempts to analyze the materiality of the difference in law as applied to *a subset of claims* in this case, its analysis is superficial and, usually, mistaken.

Defendant's failure to establish material differences in law for all states is particularly important because predominance has never required exclusively common questions; it requires only

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

that common questions outweigh (or predominate over) individual questions. *See, e.g., Mazza,* 666

F.3d at 588 (holding that "Rule 23(b)(3)'s predominance requirement" balances "common

questions against individual ones.") As noted above, other courts have found, on more complete

records, that there is significant commonality among, for example, consumer protection laws across

the country. And, where, like here, there are named plaintiffs from multiple states, courts have also

found that certification is possible for one or more (or all) claims on a nationwide or at least a

multistate basis. *See, e.g., Koller v. Med Foods, Inc.*, Case No. 14-cv-02400-RS (ND Cal.) (Dkt.#

152.), JUUL presents no reason why the same analysis cannot take place in this case at

certification. And even if Plaintiffs are eventually unable to make out the requirements for national

certification under Rule 23(b)(3), they may still be able to obtain national certification under Rule

23(b)(2) for injunctive relief or Rule 23(b)(4) for particular common issues.

(a)     **Unjust Enrichment Does Not Materially Vary Across All States.**

Defendant argues that there are "significant variations" among the 50 states' unjust

enrichment laws. It is mistaken. The laws of the fifty states regarding unjust enrichment do not

differ materially, so a nationwide class may be certified for, at a minimum, this claim.

In distilling the various states' laws down to two common elements, one court explained:

> At the core of each state's law are two fundamental elements—***the defendant
> received a benefit from the plaintiff and it would be inequitable for the
> defendant to retain that benefit without compensating the plaintiff.*** The focus
> of the inquiry is the same in each state. Application of another variation of the
> cause of action than that subscribed to by a state will not frustrate or infringe
> upon that state's interests. In other words, regardless of which state's unjust
> enrichment elements are applied, the result is the same. Thus, there is no real
> conflict surrounding the elements of the cause of action.

*Powers v. Lycoming Engines,* 245 F.R.D. 226, 231 (E.D. Pa. 2007) (emphasis added), *rev'd on*

*other grounds,* 328 Fed. Appx. 121 (3d Cir. 2009).[10] These two elements are the same for all class

---

[10] *Accord, e.g., In re Abbott Labs. Norvir Anti-Tr. Litig.*, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007) (certifying nationwide class; holding that the "variations among some States' unjust enrichment laws do not significantly alter the central issue or the manner of proof"); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 647 (S.D. Fla. 2015) ("There is general agreement among courts that the "minor variations in the elements of unjust enrichment under the laws of the various states . . . are not material and do not create an actual conflict.") (quoting *Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.,* 710 F.Supp.2d 458, 477 (D. Del. 2010)); *In re Mercedes–*

-14-

1   members, regardless of their state of residence, as all paid a price premium to Defendant to

2   purchase the JUUL products—thus, all conferred a benefit on Defendant—and none received what

3   was promised, therefore rendering it inequitable for JUUL to retain the benefit. Thus, the same

4   legal questions will predominate for all class members' unjust enrichment claims.

5       Defendant argues that several courts, including the Ninth Circuit, have held that the laws of

6   unjust enrichment materially differ among the states, but it overstates both the cases it cites and the

7   alleged differences. For example, Defendant cites *Mazza* for the proposition that "elements

8   necessary to establish a claim for unjust enrichment . . . vary materially from state to state." *Mazza,*

9   666 F.3d at 591. But *Mazza* provides no citation to support the statement and it is, at best, dicta,

10  since the real problem with nationwide certification was that there were no uniform representations

11  made to class members. *See id.* at 596 ("it is likely that many class members were never exposed to

12  the allegedly misleading advertisements, insofar as advertising of the challenged system was very

13  limited."). Here, by contrast, each JUULpod package contains uniform misstatements about

14  nicotine that go to the heart of this case. Defendant's reliance on this statement, which is repeated

15  throughout its motion, is insufficient to carry its burden of demonstrating that foreign law applies

16  and materially differs. District courts have invariably rejected wholesale reliance on *Mazza* to meet

17  a defendant's burden under the governmental interest test. *See, e.g., Andren v. Alere, Inc.*, Case No.

18  16cv1255-GPC(AGS)) 2017 U.S.Dist.LEXIS 209405, at *51 (S.D.Cal. Dec. 20, 2017) (stating

19  "courts have rejected a wholesale reliance on *Mazza* to meet a defendant's burden under the

20  governmental interest test.")

21      Although Defendant cites additional decisions finding differences across states' unjust

22  enrichment laws, it again merely parrots the statements in the cases that differences exist, but does

23  not provide any meaningful analysis as to what the differences are *in this case*, how they are

24  material *here*, and/or how such differences defeat commonality *based on the allegations in the*

25  *Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) ("While there are minor variations in
    the elements of unjust enrichment under the laws of the various states, those differences are not

26  material and do not create an actual conflict."); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D.
    605, 612 (D.S.D. 2004) ("In looking at claims for unjust enrichment, we must keep in mind that the

27  very nature of such claims requires a focus on the gains of the defendants, not the losses of the
    plaintiffs. That is a universal thread throughout all common law causes of action for unjust

28  enrichment.").

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

*complaint*. This too is fatal to Defendant's motion. *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 906 (N.D.Cal. 2018) (denying motion to strike nationwide warranty and unjust enrichment claims); *see also Petersen*, 312 F.R.D. at 581 (rejecting similar conclusory argument, "the Court notes that a close analysis of these purported differences reveal that many of them 'are insignificant, and therefore, they present no hurdle to class certification.'"); *see also Bruno*, 280 F.R.D. at 550 (holding "Defendants cannot profitably rely on the work of a different party in a different case with different facts"); *Allen*, 300 F.R.D. at 658 (C.D. Cal. 2014) ("this Court understands *Mazza*'s holding to be that, under the facts in that case, with the issue fully briefed by the parties, foreign law applied under the governmental interest test."); *Forcellati*, 876 F. Supp. 2d at 1160 ("Defendants do not even discuss the differences between the consumer protection laws of [different states], let alone address whether these differences are material based on the facts and circumstances of this case."); *Original Talk Radio Network, Inc. v. Alioto,* 2014 U.S.Dist.LEXIS 153036, at *8 (D.Or. Oct. 29, 2014, No. 1:13-cv-00759-PA) (holding "It is Defendant's burden to show that a material difference does exist, not merely that it might.")

For example, Defendant cites *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 540 (N.D. Cal. 2015), *Van Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-cv-03889-JD, 2018 U.S.Dist.LEXIS 34796 (N.D.Cal. Mar. 1, 2018), and *Andren v. Alere, Inc.*, 2017 U.S. Dist. LEXIS 209405 (S.D. Cal. Dec. 20, 2017), all of which present entirely different scenarios. In *Bias*, a class certification decision, the court unremarkably found that, unlike here, the burden was on plaintiffs to show that common questions of law, on the unjust enrichment claim, were predominant.[11] That holding offers no support to Defendant's only contention that purported differences in unjust enrichment jurisprudence defeat predominance on the pleadings in this case. *Big Heart Pets* did concern a motion to dismiss, but the court concluded only that plaintiff had failed to clearly address the

---

[11] In *Bias*, the court then defaulted to the dicta in *Mazza* and stated no court in the Ninth Circuit has "certified nationwide unjust enrichment classes" since *Mazza*. 312 F.R.D. at 540. But that observation says nothing about how the Ninth Circuit would deal with a pleading motion. The Ninth Circuit recently granted en banc review in *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679 (9th Cir. 2018), which purported to follow *Mazza* and on which Defendant heavily relies. *See In re Hyundai and Kia Fuel Economy Litigation*, 2018 WL 3597310, at *1 (9th Cir. July 27, 2018). The *en banc* decision is likely to provide further guidance on some of the *Mazza* dicta.

elements of her claims under particular state laws and relied only on the dicta in *Mazza* to dismiss nationwide claims. 2018 U.S.Dist.LEXIS 34796 at *2.

Defendant's reliance on *Andren v. Alere, Inc.,* another certification decision, underscores the inadequacy of Defendant's motion.[12] In *Andren*, the court found a material difference in the application of unjust enrichment, but in doing so, it specifically took issue with the approach of Defendant here. It stated:

> In contrast to the cases relied on by Plaintiffs where the defendants relied primarily on other cases to demonstrate the differences in the other state laws and did not conduct their own analysis, in this case, Defendants have presented not only a chart of the differences in all fifty states in their consumer protection, deceptive trade practices laws and unjust enrichment, but also they have laid out the material differences between the laws of California and laws of other states that would "spell the difference between the success and failure of a claim."

2017 U.S.Dist.LEXIS 209405, at *52-53. Here, Defendant does exactly what the court said it should not do: it exclusively relies on other cases to establish the purported differences; did not itself chart the differences; or, most importantly, apply the purported differences to the facts of this case. Further, although *Andren* concluded that there is a difference among unjust enrichment laws because some preclude recovery where a plaintiff "received the benefit of the bargain" (Dkt.# 41, p. 12.), *Andren* did not explain how the "benefit of the bargain" test creates any new or different element than already required in every state: that it would be "inequitable for the defendant to retain

---

[12] Defendant cites several additional cases but none counsel a different result. *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 667 (E.D. Mich. 2011), the court dismiss a nationwide unjust enrichment claim, but only because it could not "analyze the [plaintiffs'] undifferentiated unjust enrichment claims" based on the case as pled—i.e., without identification of under what law plaintiffs "purport to proceed." *Thompson v. Jiffy Lube Intern., Inc*., 250 F.R.D. 607, 626 (D. Kan. 2008) also concerned a class certification decision where the court found that plaintiff failed to carry their burden of proving no conflict. *Hughes v. Ester C Co.*, 317 F.R.D. 333, 353 (E.D.N.Y. 2016) is another certification decision where plaintiff failed to carry their burden. *Hughes* also contains no analysis regardng unjust enrichment other than citation to other cases. Finally, *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 920-923 (N.D. Ill. 2009) did concern a motion to dismiss, but it still provides no support to Defendant because the claims were dismissed due to pleading deficiencies, not variations in state law. Otherwise put, *Potash* is not a choice of law decision, and is thereby inapposite.

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

1    [the amount received from plaintiff] without compensating the plaintiff."[13] Many cases have

2    established that the two issues are identical: *See, e.g., One Step Up, Ltd. v. Webster Bus. Credit*

3    *Corp.*, 87 A.D.3d 1, 14 (N.Y. App. Div. 2011) ("Moreover, defendant was in no way unjustly

4    enriched. It merely received what it was entitled to under the express contracts at issue, while

5    plaintiff received the benefit of its bargain.").

6          Defendant finally mentions, again without any analysis, a few other theoretical

7    differences—e.g., the relationship of the parties and possible existence of another adequate legal

8    remedy. At best, there may be one difference among the laws in that seven states, including

9    Connecticut, Delaware, and Florida, have limited the remedy of unjust enrichment to situations

10   where the victim has no other remedy, but again, this difference is not material in this case. Courts

11   in those states have barred enrichment claims only where there is a contract between the parties that

12   would give rise to claims for breach of contract.[14] If necessary, the subclass on that claim can be

13   limited to brick-and-mortar purchasers, who would not have had a contract. *Cf. Ham v. Hain*

14   *Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) (explaining that the absence of

15   privity prevents a plaintiff from alleging breach of contract in a food labeling lawsuit). Moreover,

16   all Plaintiffs who fail to prove the elements of their consumer law claim(s) will have "no other

17   remedy" and thus will be left with their unjust enrichment claims. Likewise, if the Court concludes,

18   based on the jury's special verdict answers, that the elements for other consumer claims in a

19   particular state have not been proven, then there is "no other remedy" for the class members in that

20   state.

21   ---
     [13] Instead, the court merely relied upon a lengthy chart prepared by the defendant, that also did not
22   contain any discussion. *See Andren v. Alere, Inc*, Case No. 16-cv-1255, Dkt. 100-2, pp. 95-122.
     Here, Defendant did not even bother to chart the purported differences.

23   [14] *See, e.g., In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F.
24   Supp. 2d 1311, 1338 (S.D. Fla. 2013) (holding that Florida plaintiffs may pursue claims for unjust
     enrichment and false advertising because there was not "an express contract between the parties that
25   precludes recovery"); *Metcap Sec. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756, at *6 (Del.
     Ch. Feb. 27, 2009), *aff'd sub nom. Metcap Sec. LLC v. Pearl Sr. Care, Inc.*, 977 A.2d 899 (Del.
26   2009) (holding that in Delaware, "[b]ecause there is no contract. . .[plaintiff] does not have an
     adequate remedy at law"). *See also Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535,
27   542 (2002), *as corrected* (June 19, 2002) (holding that the doctrine of unjust enrichment does not
     apply in Arizona where there is "a specific contract"). *Accord Porter v. Hu*, 116 Haw. 42, 54
28   (2007); *Am. Towers Owners Ass'n. Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996);
     *Daugherty v. Sony Elecs., Inc.*, 2006 WL 197090, at *6 (Tenn. Ct. App. Jan. 26, 2006); *Schroeder
     v. Buchholz*, 622 N.W.2d 202, 207–08 (N.D. 2001).

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

1

           **(b)**     **Plaintiffs' Implied Warranty Claims Do Not Materially Vary Nationwide.**

2

3
      Defendant similarly argues that there are material differences across states such that

4
predominance would be defeated on Plaintiffs' implied warranty claims. But this is directly

5
contrary to a recent certification decision. In *Czuchaj v. Conair Corp.*, No. 13-cv-1901-BEN

6
(RBB)) 2015 U.S.Dist.LEXIS 178142 (S.D.Cal. Nov. 12, 2015), the court certified a nationwide

7
class for plaintiffs' implied warranty claims. *Id.* at *12. This class certification decision is

8
particularly informative because the court denied nationwide certification of plaintiffs' design

9
defect and failure to warn claims.[15] Citing *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d

10
1168, 1173-74 (9th Cir. 2010), the court found that "common questions related to Plaintiffs'

11
implied warranty claims predominate over individual questions. Whether the Model 259 was

12
defective and whether the implied warranty of merchantability was breached are two questions

13
appropriate for a class action." *Id.*, at *12. Defendant presents no reason or analysis why, based

14
solely on the pleadings, the same result could not obtain in this case. *See also Barber v. Johnson &*

15
*Johnson Co.*, No. 8:16-cv-1954-JLS-JCGx) 2017 U.S.Dist.LEXIS 53591, at *26 (C.D.Cal. Apr. 4,

16
2017) (stating "Defendants identify several differences between the warranty laws of the various

17
states, the Court concludes that deciding which of these differences are material to class

18
certification is premature where there has been no discovery and Defendants have not yet filed an

19
answer to the FAC."); *Valencia v. Volkswagen Group of Am. Inc.*, No. 15-cv-00887-HSG) 2015

20
U.S.Dist.LEXIS 105545, at *4 (N.D.Cal. Aug. 11, 2015) (rejecting motion to strike nationwide

21
implied warranty class, stating "Whether California law differs from the laws of other states in a

22
way that is material to this litigation is not a proper inquiry at the pleading stage. Such a deeply

23
factual inquiry is more appropriately addressed at the class certification stage, which was,

24
incidentally, the posture of the *Mazza* action when it was appealed to the Ninth Circuit.")

25
      Defendant argues that in another case, Judge Freeman conducted a thorough analysis and

26
found material differences in implied warranty claims. *See Darisse v. Nest Labs, Inc.*, No. 5:14-cv-

---

27
[15] The court's analysis on this issue, however, further establishes why this determination is best

28
made at certification, not on the pleading. On plaintiffs' design defect and failure to warn claims, the court found individual issues predominant due to differenes in damages theories, which likley will not be at issue in this case. 2015 U.S.Dist.LEXIS 178142, at *11-12.

01363-BLF, 2016 U.S. Dist. LEXIS 107938, at *34 (N.D. Cal. Aug. 15, 2016). Again, JUUL fails to explain why those differences would apply to the facts here, particularly, at the pleadings stage. *Darisse* is also a certification decision, in which Judge Freeman applied the differences in implied warranty jurisprudence to the facts of that case. But the sum total of Defendant's analysis is that "privity would be relevant to the claims of many of the putative class member (sic) who purchased JUUL products from third parties." (Dkt.# 41, 16:14-16.) This issue can be addressed in the scope of the (sub)class definition proposed at certification.

(c)     **JUUL Fails to Establish A True Conflict of Law For Any of Plaintiffs' Remaining Claims.**

Defendant also fails to establish a true conflict on any of Plaintiffs' remaining claims. Plaintiffs do not dispute that there are differences among state consumer laws, or even among some of the common law claims, but Defendant fails to apply any of those differences to the facts of this case such that this Court can determine on the pleading that individual issues necessarily predominate.

**Consumer Claims**. Defendant argues that there are differing requirements on reliance, scienter, and remedies for Plaintiffs' UCL, FAL, CLRA and corresponding state statute claims. Yet Defendant leaves unexplained why or how such differences necessarily defeat predominance in this case concerning an inherently dangerous product that few class members would have knowingly purchased.

**Negligent Misrepresentation**. Regarding negligent misrepresentation, JUUL argues that some states do not recognize the cause of action and others have varying requirements on economic loss and privity. But Defendant's analysis of the alleged differences as applied to the facts of this case, as pled, is limited to a single sentence: "if plaintiffs are not able to demonstrate some form of personal injury, the economic loss rule, if it applies, could bar" this claim. (Dkt.# 11, p. 11:12-13.) This begs the question: As pled, every class member can demonstrate economic and personal injury because the product is inherently dangerous. Far from an individual question, at least as pled, this is yet another predominant common question.

**Strict Liability Claims**. Here, Defendant argues that some states do not recognize strict liability and, in those that do, there are differences in comparative fault. It then suggests these differences defeat predominance because "some putative class members will admit they knew the product contained nicotine" and others may "admit to preexisting nicotine addictions." Left unexplained is why this matters. Plaintiffs plead that JUUL did not disclose, and class members were unaware of, the *level* of nicotine in the products, which was not only greater than that in cigarettes but much more addictive because of the nature of the delivery mechanism.

**Express Warranty**. Defendant argues that express warranty requirements differ across the fifty states, including in terms of privity, reliance and notice requirements. But such issues can be addressed by using subclasses or limited exclusions. Defendant again presents no argument to carry its burden of proving that such differences entirely defeat predominance.

**Fraud**. Finally, with regard to Plaintiffs' fraud claims, Defendant contends that there are differences in "mitigation, causation, damages, reliance and duty to disclose requirements." Yet it fails to explain why such differences necessarily will defeat certification in this case.

### c.   California Has The Strongest Interest In Applying Its Law In This Case.

Even if the differences between California law are deemed material, Defendant is still unable to satisfy the third requirement of the *Mazz*a test, because California, as the place of manufacture and the headquarters to JUUL, and the place where all of the false marketing and advertising materials were developed (*see* Dkt.# 2-2, ¶¶ 8, 22), has the strongest interest of any state in application of its law, with respect to some if not all claims. *See, e.g., In re DirecTV Early Cancellation Litigation*, 738 F.Supp.2d 1062, 1090 (C.D.Cal. 2010) ("when the sole defendant is a California corporation and has its headquarters in California, and a plaintiff asserts claims on behalf of a nationwide putative class, California has a greater interest than any other state."). Defendant admits that California has "some minimal interest in applying its laws because JUUL is headquartered in San Francisco." But it contends that the alleged place of the injury—i.e., where the JUUL products were purchased—"has the predominant interest." This dispute cannot be resolved on the pleadings. *See, e.g., Lewand v. Mazda Motor of Am., Inc.*, No. SACV 17-00620 JVS (JCGx)) 2017 U.S.Dist.LEXIS 219127, at

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

*18 (C.D.Cal. Nov. 8, 2017) (denying motion to strike, stating "At this stage, the parties do not even know in which jurisdictions proposed class members reside let alone whether any differences in the laws are material."); *Gerstle v. Am. Honda Motor Co*., No. 16-cv-04384-JST) 2017 U.S.Dist.LEXIS 100580, at *13  (N.D.Cal. June 28, 2017) (denying motion to strike nationwide class, stating "the Court has no factual record to use in deciding which state has a greater interest in applying its laws.")

Unlike many of the "place of the wrong" cases, this case pleads strict liability claims including design defect, manufacturing defect and failure to warn. As a California court recently stated: "The primary purpose of California's strict products liability law is to insure that the cost of injuries of defective products is borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." *Chen v. L.A. Truck Centers, LLC* 7 Cal.App.5th 757, 771 (2017) (finding California has "a strong interest in imposing its products liability law on a California defendant allegedly importing defective products for sale in California."); *see also Northrop Corp. v. American Motorists Ins. Co*., 220 Cal. App. 3d 1553, 1563 (1990); *International Harvester Co. v. Superior Court*, 95 Cal. App. 3d 652, 659 (1979) (California has a significant interest in compensating its residents for damage caused by defective products sold in this state); *In re N. Dist. of Cal. "Dalkon Shield" IUD Prods. Liab. Litig*., 526 F. Supp. 887, 916 (N.D. Cal. 1981) (stating the "Supreme Court recently affirmed California's intense commitment to protecting consumers from injuries caused by defective drugs and medical devices. This policy, which is noticeably progressive in nature, further supports the notion that California has a very strong interest in seeing that the manufacturer of a defective product be severely punished."); Flahavan, Rea & Kelly, *Cal. Practice Guide: Personal Injury*, P 2:596, p. 2-146 (listing the policy considerations underlying California's product liability law).

### B.   Defendant's 12(b)(1) Motion to Dismiss Should Also Be Rejected.

Defendant finally argues that this Court must dismiss all of Plaintiffs' state law claims for the forty-three (43) states and the District of Columbia where the named Plaintiffs currently do not reside. It contends that, as matter of law, a class plaintiff does not have standing to assert claims

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

from states in which they do not reside. Defendant both misunderstands and improperly conflates standing and certification requirements for class action plaintiffs.

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiffs have the burden of establishing that the court has subject matter jurisdiction over an action. *Assoc. of Med. Colls. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000). The court must determine whether a lack of federal jurisdiction appears from the face of the complaint itself. *See Thornhill Publ'g Co. v. General Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue." *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972). Standing under Article III of the Constitution has three basic elements: (1) an "injury in fact," which is neither conjectural nor hypothetical; (2) causation, such that a causal connection between the alleged injury and offensive conduct is established; and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)

Though not mentioned by Defendant, in *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62 (9th Cir. 2015), the Ninth Circuit adopted the "class certification approach" to standing in a class action case. "The 'class certification approach,'…holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Id*. Here, defendants do not dispute that Plaintiffs have standing to bring their own claims under their own state laws, as well as the common law, or that other individuals in the putative class did not purchase Defendant's JUUL products. Thus, whether the named Plaintiffs are appropriate class representatives must be resolved at the class certification and JUUL's "standing argument" rejected without prejudice. *See, e.g., Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 465 (N.D.Cal. 2017); *Melendres*, 784 F.3d at 1261 ("once the named plaintiff demonstrates her individual

1  standing to bring a claim, the standing inquiry is concluded"); *Ries v. Ariz. Beverages USA LLC*, 287

2  F.R.D. 523, 535-36 (N.D. Cal. 2012) ("it is improper for the court to analyze unnamed class

3  members' Article III standing where defendants do not successfully challenge the putative class

4  representative's standing.") (internal quotation marks and brackets omitted).)

5       None of the cases cited by Defendant dictate a different result. With three exceptions,

6  discussed below, each cited case pre-dates *Melendres*. For example, Defendant cites, on several

7  occasions, *In re Carrier IQ, Inc. Consumer Priv. Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. Jan. 2015). It

8  is correct that the court in *Carrier IQ* exercised its discretion to require, pre-certification, that

9  "plaintiffs to present now a named class member who possessed individual standing to assert each

10 state law's claims against the defendants." *Id.*, at 1074. But the same court later explained that after

11 "*Carrier IQ* was decided, the Ninth Circuit issued its decision in *Melendres*, …concluded that the

12 issue was better addressed as part of class certification." *Pecanha v. Hain Celestial Grp.*, No. 17-cv-

13 04517-EMC) 2018 U.S.Dist.LEXIS 11739, at *25 (N.D.Cal. Jan. 24, 2018);[16] *In re Chrysler-Dodge-

14 Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 955 (N.D.Cal.

15 2018) (same).

16       Defendant does cite three post-*Melendres* cases where nationwide class allegations where

17 dismissed at the pleading stage due to a lack of standing by the named plaintiffs, including a case

18 decided by this Court. Each case, however, can be distinguished on the facts. For example, in

19 *Hindsman v. GM LLC*, No. 17-cv-05337-JSC) 2018 U.S.Dist.LEXIS 92319, at *49 (N.D.Cal. June

20 1, 2018), the court dismissed the nationwide claim because, unlike here, it concluded that the case

21 "is a California-centric case," with only California residents, and three of the five claims alleged

22 brought under California law only. In contrast, there are seven states represented and only three (of

23 eleven) claims brought under California law and those claims are additional pursued under the

[16] Moreover, in *Pecanha*, defendant attempted to distinguish *Melendres* by arguing that, unlike *Melendres*, which involved a dissimilarity in injuries suffered (i.e., comparing the named plaintiffs with the unnamed putative class members, *Pecanha* involved named plaintiffs who cannot bring legal claims pursuant to state laws for states where they do not reside. *Id.* at *26. The court stated: "While this is a distinction between *Melendres* and the instant case, the distinction is not material for purposes of taking the class certification approach." *Id.*

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

1    analogous laws—i.e., false advertising and unfair practice in the other states. Moreover, though

2    unmentioned, of equal importance is that the defendant in *Hindsman*, unlike JUUL, was not

3    headquartered in California.

4          Similarly, in *Mollicone v. Universal Handicraft, Inc*., No. 2:16-cv-07322-CAS(MRWx)) 2017

5    U.S.Dist.LEXIS 14125 (C.D.Cal. Jan. 30, 2017), the court dismissed, without prejudice, plaintiff's

6    claims that were based on laws of states other than California and New Jersey. But the court did so

7    without any analysis. Instead, it stated that "the majority of courts to consider this question have

8    concluded that when 'a representative plaintiff is lacking for a particular state, all claims based on

9    that state's laws are subject to dismissal." In doing so, it relied on outdated authority, citing only

10   cases that pre-dated *Melendres*, including, most notably, citation to outdated Ninth Circuit cases on

11   this issue. *Id*., at *27-28.

12         Finally, in *Johnson v. Nissan N. Am., Inc*., 272 F. Supp. 3d 1168 (N.D.Cal. 2017), this Court

13   stated that "[t]here is no hard and fast rule to apply," addressed the issue on the pleadings, and

14   "require[d] that plaintiffs present named class representatives who possess individual standing to

15   assert each state law's claims against Nissan." 272 F. Supp. 3d at 1175. However, in doing so, this

16   Court found that there existed a "significant burden of nationwide discovery" and additionally relied

17   on plaintiffs' willingness "to identify additional named plaintiffs to adequately represent class

18   members in other states (they allege that the NHTSA complaints include consumers in 34 separate

19   states." In this instance, Defendant has not argued any additional burden of nationwide discovery.

20   Moreover, while Plaintiffs are willing to add additional named plaintiffs, give the above-discussed

21   similarities in law, unlike in *Johnson*, doing so will itself create (more not less) unnecessary

22   discovery burden.

23   **II.     CONCLUSION**

24         For the foregoing reasons, this Court should (i) deny Defendant's motion to strike and

25   motion to dismiss pursuant to Rule 12b1 or (ii) grant Plaintiff leave to file a second amended

26   complaint.

27   ///

28

1

Dated:  August 22, 2018

**GUTRIDE SAFIER LLP**

2

/s/ Seth A. Safier/s/
SETH A. SAFIER (State Bar No. 197427)

3

ADAM J. GUTRIDE (State Bar No. 181446)
TODD KENNEDY (State Bar No. 250267)

4

ANTHONY PATEK (State Bar No. 228964)
100 Pine Street, Suite 1250

5

San Francisco, California 94111
Telephone: (415) 639-9090

6

Facsimile:  (415) 449-6469

7

**MIGLIACCIO & RATHOD LLP**

8

Nicholas Migliaccio, admitted pro hac vice
Jason Rathod, admitted pro hac vice

9

Esfand Nafisi (State Bar No. 320119)
412 H Street NE, Suite 302

10

Washington, D.C. 20002
Telephone:  (202) 470-3520

11

Facsimile: (202) 800-2730

12

13

*Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS

**PROOF OF SERVICE**

1

2
     I, Seth A. Safier, declare:

3
     My business address is 100 Pine Street, #1250, San Francisco, California.  I am employed in the County of San Francisco, where this mailing occurs.  I am over the age of 18 years and not a party to the within cause.

4

5
     On August 22, 2018, I served the following documents:

6
**PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS PURSUANT TO FED. R. CIV. P. 12(f), 23(c)(1)(A), 23(d)(1)(D) AND TO DISMISS NATIONWIDE CLASS CLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(1)**

7

8

9
on the following person(s) in this action by placing a true copy thereof as follows:

10
Austin Schwing
Gibson, Dunn & Crutcher LLP

11
555 Mission Street, San Francisco, CA 94105-0921
Tel +1 415.393.8210 • Fax +1 415.374.8458

12
ASchwing@gibsondunn.com

13
     [x]     BY ELECTRONIC MAIL.  I caused, on August 22, 2018, said documents, to be transmitted by ECF.

14

15
     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on August 22, 2018, at San Francisco, California.

16

17
                              /S/SETH SAFIER/S/

18

19                              _____

20                              Seth A. Safier, Esq.

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO STRIKE AND FRCP RULE 12B1 MOTION TO DISMISS