**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
TODD KENNEDY (State Bar No. 250267)
ANTHONY PATEK (State Bar No. 228964)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, admitted pro hac vice
Jason Rathod, admitted pro hac vice
Esfand Nafisi (State Bar No. 320119)
412 H Street NE, Suite 302
Washington, D.C. 20002
Telephone:  (202) 470-3520
Facsimile: (202) 800-2730

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY COLGATE, KAYTLIN MCKNIGHT, M.H., a minor, by her Mother and Natural Guardian, JENNIFER HELLMAN, L.B., a minor, by her Mother and Natural Guardian, JILL NELSON, ANTHONY SMITH, COREY SMITH, KACIE ANN LAGUN, A.U., a minor, by her mother and natural guardian, LISA COMMITANTE, TOMMY BENHAM, and DAVID LANGAN on behalf of themselves, the general public and those similarly situated,,<br><br>    Plaintiffs,<br><br>        v.<br><br>JUUL LABS, INC.,<br><br>    Defendant. | CASE NO. 3:18-cv-02499-WHO<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS (CORRECTED)**<br><br>Honorable William H. Orrick<br><br>Date:  September 26, 2018<br>Time:  2:00 pm<br>Ctrm:  Courtroom 2; 17th Floor<br>Action filed:  April 26, 2018 |

# **TABLE OF CONTENTS**

I.   BACKGROUND AND SUMMARY OF ALLEGATIONS................................................. 1

  A.   JUUL Created And Patented A Fruit-Flavored E-Cigarette That Is More Potent Than
Combustible Cigarettes. ........................................................................................................ 1

  B.   JUUL Marketed To Youth Without Warning Of The Risks Of Addiction ...................... 1

II.   ARGUMENT ...................................................................................................................... 3

  A.   The Family Smoking Prevention And Tobacco Control Act Does Not Preempt Plaintiffs'
Claims. ..................................................................................................................................... 3

    1.   This Court Must Presume Against Federal Preemption of Historic State Police Powers. ........... 3

    2.   Congress Expressly Limited Preemption Under the Tobacco Control Act ................................ 4

    3.   Plaintiffs' Claims Arising From the Advertising, Sale, Promotion, Distribution, and Product
Liability Are Expressly Not Preempted. ........................................................................................ 6

    4.   The TCA Does Not Preempt Plaintiffs' Claims Arising From Misbranding and Labeling. ........ 6

      a.   Because Plaintiffs' Labeling Claims Parallel Federal Requirements, They Are Not
Preempted. ..................................................................................................................................... 8

      b.   Even if Preemption Exists, the Date of Preemption Is the Effective Date of the FDA's Final
Rule Regarding Labeling. ............................................................................................................ 11

      c.   Because JUUL Has Not Satisfied The Tobacco Control Act's Premarket Review
Requirements, the TCA's Requirements Giving Rise To Preemption Have Not Been Met. ....... 13

  B.   Plaintiffs' Claims Are Well-Pled. ...................................................................................... 15

    1.   The FAC Satisfies Rule 9(b) ....................................................................................................... 15

    2.   The FAC States a Claim Under State Consumer Protection Statutes ......................................... 18

      a.   Legal Elements ....................................................................................................................... 18

      b.   The FAC Adequately Pleads Causation and Reliance.......................................................... 19

      c.   The FAC Adequately Pleads That Reliance Was Reasonable and That Defendant's Conduct
Was Likely To Deceive. ............................................................................................................... 23

      d.   The Accused Misrepresentations are Not Puffery ................................................................ 25

      e.   Plaintiffs Have Alleged a Failure to Warn............................................................................ 26

      f.   Plaintiffs' Fraud and Negligent Misrepresentation Claims are Well-Pled............................ 28

      g.   Plaintiffs' Strict Liability Claims are Well-Pled................................................................... 29

      h.   Plaintiffs' Unjust Enrichment Claims are Well-Pled............................................................ 31

      i.   Plaintiffs' Breach of Express and Implied Warranty Claims are Well-Pled......................... 32

      j.   Plaintiffs' Breach of Implied Warranty Claims Are Well-Pled ........................................... 34

III.   CONCLUSION.................................................................................................................. 36

### **TABLE OF AUTHORTIES**

**Cases**

*Akee v. Dow Chemical*, 272 F. Supp. 2d 1112 (D. Haw. 2003)................................................. 13

*Altria Group, Inc. v. Good*, 555 U.S. 70 (2008) ......................................................................... 4

*Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102 (3d Cir. 1992)............................... 34

*Arabian v. Organic Candy Factory*, No. 2:17-cv-05410-ODW-PLA, 2018 U.S. Dist. LEXIS 45833
     (C.D. Cal. Mar. 19, 2018) ..................................................................................................... 35

*Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26,
     2011) ..................................................................................................................................... 17

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015)..................................... 7, 31

*Bates v Dow Agrosciences LLC*, 544 U.S. 431 (2005) ............................................................... 10

*Berman v. ADT LLC*, No. 12-7705 (RBK/JS), 2013 U.S. Dist. LEXIS 182994 (D.N.J. Dec. 13, 2013). 34

*Boeken v. Philip Morris, Inc.*, 127 Cal. App. 4th 1640, 26 Cal. Rptr. 3d 638 (2005) ............................ 29

*Bohac v. Gen. Mills, Inc.*, No. 12-cv-05280-WHO, 2014 U.S. Dist. LEXIS 41454 (N.D. Cal. Mar. 26,
     2014) ..................................................................................................................................... 33

*Bonfield v. AAMCO Transmissions*, 708 F. Supp. 867 (N.D. Ill. 1989)................................... 28

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989)....................................... 4

*Bruton v. Gerber Products Co.*, No. 12-cv-02412, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ........... 16

*Bullock v. Philip Morris USA, Inc.*, 159 Cal. App. 4th 655 (2008)......................................... 11

*Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682 (1954) .............................................................. 34

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ................................................. 3, 4, 6, 11

*Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-485 JM (JMA), 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013)
     .............................................................................................................................................. 34

*Cohan v. Pella Corp.*, 2015 U.S. Dist. LEXIS 144794 (D.S.C. Oct. 26, 2015) ....................... 28

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2016 U.S. Dist. LEXIS
     123455 (N.D. Cal. Sep. 12, 2016)......................................................................................... 30

Colgan v. Leatherman Tool Group, Inc. 135 Cal. App. 4th 663 (2006)....................................... 24

*Committee of Dental Amalgam Mfgs. & Dists. v. Stratton*, 92 F.3d 807 (9th Cir. 1996)....................... 14

Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351 (2003)..................... 24

*Crosby v. National Foreign Trade Council*, 530 US 363 (2000) ................................................ 3

*D.C. v. Sears, Roebock & Co.*, No. C06-5391RJB, 2007 U.S. Dist. LEXIS 53452 (W.D. Wash. July 24,
     2007) ..................................................................................................................................... 26

*Dilley v. C.R. Bard, Inc.*, No. 2:14-CV-01795-ODW, 2014 WL 2115233, at *4 (C.D. Cal. May 21,
     2014) ..................................................................................................................................... 30

*DuMont v. Litton Loan Servicing, LP*, No. 12-CV-2677, 2015 U.S. Dist. LEXIS 29787, 2015 WL 1061138 (S.D.N.Y. Mar. 11, 2015) ........................................................................................ 18

*Evans v. Lorillard Tobacco Co.*, 990 N.E.2d 997 (Mass. 2013) ............................................ 27

*Fed. Trade Comm'n v. Lunada Biomedical, Inc.*, No. CV-15-3380-MWF (PLA), 2016 WL 4698938 (C.D. Cal. Feb. 23, 2016) .................................................................................................. 17

*Fellner v. Tri-Union Seafoods, L.L.C.*, Civil Action No. 06-CV-0688 (DMC), 2010 U.S. Dist. LEXIS 36195 (D.N.J. Apr. 13, 2010) ........................................................................................ 26

*Ferrari v. Nat. Partner, Inc.*, No. 15-CV-04787-LHK, 2017 WL 76905 (N.D. Cal. Jan. 9, 2017) ......... 30

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ............................................................. 24

*Funke v. Sorin Grp. USA, Inc.*, 147 F. Supp. 3d 1017 (C.D. Cal. 2015) ................................ 14

*Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052 (C.D. Cal. 2012) ............................ 26

*Goldman v. Bayer AG*, No. 17-cv-0647-PJH, 2017 U.S. Dist. LEXIS 117117 (N.D. Cal. July 26, 2017) ............................................................................................................................. 31

*Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal. 2009).................................. 30

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014).............................. 24

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986).. 19

*Hanrahran v. Specialized Loan Servicing, LLC*, 54 F. Supp. 3d 149 (D. Mass. 2014)............... 19

*Hitt v. Arizona Bev. Co., LLC*, 2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb. 4, 2009).......... 8

*Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178 (2014) .............................................. 28

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009)............................................................... 12

*Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289 (2001)......................... 12, 14

*In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012).................................. 17, 35

*In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1091 (2008) ....................................... 8

*In re Fontem*, 2016 U.S. Dist. LEXIS 187853 (C.D. Cal. Nov. 1, 2016) ............................ 10, 12

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods., Liab., Litig.*, No. 1:15-md-2627 (AJT/TRJ), 2017 U.S. Dist. LEXIS 61362 (E.D. Va. Apr. 21, 2017) ............................................................................................................................. 35

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65 (2d Cir. 2013) ............... 27

*In re Myford Touch Consumer Litig.*, 291 F. Supp. 3d 936 (N.D. Cal. 2018)........................ 34

*In re OnStar Contract Litig.*, 278 F.R.D. 352 (E.D. Mich. 2011) .......................................... 19

*In re Tobacco Cases II*, 46 Cal.4th 298 (2009)........................................................ 4, 15, 19, 22, 28

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 170 P.3d 10 (Wash. 2007) 20

*Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168 (N.D. Cal. 2017)............................... 31

*Jones v. Rath Packing Co.*, 430 U. S. 519 (1977).................................................................. 3

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .................................................. 15

*Kimco Staffing Servs. v. Wolverine World Wide, Inc.*, No. CV-14-09880-MWF (JPRx), 2015 U.S. Dist. LEXIS 187256 (C.D. Cal. July 22, 2015) ................................................................. 26

*Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 295 P.3d 1179, 2013 Wash. LEXIS 151 2013 WL 791816 19

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852 (N.D. Cal. 2015) ................................. 26

*La Paz v. Bayer Healthcare LLC*, 159 F. Supp. 3d 1085 (N.D. Cal. 2016) ........................................... 14

*Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752 (2018) ...................................................... 7

*Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401 (E.D. Pa. 2016) ........................................... 18

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) ........................................................................ 12

*Lindh v. Murphy*, 521 U.S. 320 (1997) ...................................................................................... 12

*Lipov v. Louisiana-Pac. Corp.*, No. 1:12-CV-439, 2013 WL 3805673 (W.D. Mich. July 22, 2013) ...... 21

*Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 700 N.E.2d 303, 677 N.Y.S.2d 764 (1998) ........................... 27

*Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 10282 (N.D. Cal. 2009) ....................................... 8

*Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 U.S. Dist. LEXIS 79262 (N.D. Cal. July 27, 2007) ......................................................................................................................... 34

*Lovett v. Omni Hotels Mgmt. Corp.*, No. 14-cv-02844-RS, 2016 U.S. Dist. LEXIS 25480 (N.D. Cal. Feb. 29, 2016) ...................................................................................................................... 27

*Lucas v. City of Visalia*, 726 F. Supp. 2d 1149 (E.D. Cal. 2010) ...................................................... 30

*Mangini v. R. J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057 (1994) ...................................................... 32

*Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973 (N.D. Cal. 2014) ........................................................ 26

*Mattern Hatchery, Inc. v. Bayside Enters., Inc.*, 775 F. Supp. 803 (M.D. Pa. 1991) ........................... 34

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ................................................................. 3, 4, 8, 9

*Metzgar v. Playskool Inc.*, 30 F.3d 459 (3d Cir. 1994) .................................................................. 26

*Mitchell v. Collagen Corp.*, 126 F.3d 902, 911 (7th Cir. 1997) ...................................................... 13

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, 2015 WL 510919 (N.D. Cal. Feb. 5, 2015) 18

*Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, 2002 WL 1488861 (N.D. Ill. July 11, 2002) ................. 35

*Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014) ................................................. 22, 23

*Orlick v. Rawlings Sporting Goods Co.*, No. CV 12-6787-GHK (RZX), 2013 WL 12139142 (C.D. Cal. Feb. 20, 2013) .............................................................................................................. 16

*Perez v. VAS S.p.A.*, 188 Cal. App. 4th 658, 676, 115 Cal. Rptr. 3d 590, 604 (2010) ........................... 29

*Persad v. Ford Motor Co.*, No. 17-12599, 2018 U.S. Dist. LEXIS 117551, at *12-15 (E.D. Mich. July 16, 2018) ...................................................................................................................... 34

*Philip Morris USA Inc. v. United States FDA*, 202 F. Supp. 3d 31 (D.D.C. 2016) ................................ 14

*Pisano v. American Leasing*, 146 Cal. App. 3d 194, 194 Cal. Rptr. 77 (1983) ..................................... 35

*Riegel v. Medtronic, Inc.*, 555 U.S. 312 (2008) ........................................................................... 14

*Riegel v. Medtronic, Inc.*, No. 99-CV-0649, 2003 U.S. Dist. LEXIS 27454 (N.D.N.Y. Dec. 2, 2003)... 34

*Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 22 P.3d 818 (2001).................................... 20

*Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986 (S.D. Cal. 2015) ............................................ 24

*Sloan v. GM, LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018)...................................................................... 28

*Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002) .................................................................................. 10

*Steele v. Collagen Corp.*, 54 Cal. App. 4th 1474 (1997) ........................................................................ 13

*Stengel v. Medtronic Inc.*, 704 F.3d 1224 (9th Cir. 2013) ................................................................... 8, 9

*Stitt v. Philip Morris, Inc.*, 245 F. Supp. 2d 686 (W.D. Pa. 2002) ........................................................ 11

*Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880,
  (E.D.N.Y. Sep. 22, 2015)............................................................................................................. 19, 21

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 731 N.E.2d 608, 709 N.Y.S.2d 892 (2000) ............................ 19

*Tietsworth v. Sears, Roebuck & Co.*, No. C 09-00288 JF (HRL), 2009 U.S. Dist. LEXIS 40872 (N.D.
  Cal. May 14, 2009)........................................................................................................................... 33

*Tompkin v. American Brands*, 219 F.3d 566 (6th Cir. 2000)................................................................... 28

*U.S.A. v. Philip Morris*, Case No. 99-cv-02496, Dkt. 628  (D.D.C. Aug. 17, 2008) ..................... 2, 4, 31

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016).......................................... 15

*Valente v. Oak Leaf Outdoors, Inc.*, No. 14-12892, 2015 U.S. Dist. LEXIS 95820 (E.D. Mich. July 23,
  2015) ................................................................................................................................................. 27

*Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010)................................... 17

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008)................................................. 23, 25, 26

*Wright v. General Mills, Inc.*, 2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sept. 30, 2009)........................ 8

*Wyeth v. Levine*, 555 U.S. 555 (2009) ................................................................................................. 3, 9

*Ybarra v. Overstock*, No. 09-CV-217-H (CAB), 2010 U.S. Dist. LEXIS 150266 (S.D. Cal. Feb. 1, 2010)
  .......................................................................................................................................................... 26

**Statutes**

15 U.S.C. § 1334.................................................................................................................................... 6

ALM GL ch. 106, § 2-313 .................................................................................................................... 33

Cal. Bus & Prof. Code § 17500 .............................................................................................................. 8

Cal. Comm. Code § 2314(2)(a).............................................................................................................. 35

Family Smoking Prevention and Tobacco Control Act, 21 U.S.C. §§ 387 ....................................... passim

Federal Cigarette Labeling and Advertising Act ("FCLAA")................................................................... 6

Massachusetts Consumer Protection Act............................................................................................... 19

Michigan Consumer Protection Act....................................................................................................... 19

New York Consumer Protection Act ...................................................................................................... 21

Rev. Code Wash. (ARCW) § 62A.2-313 ................................................................. 33

Wash. Consumer Prot. Act, Wash. Rev. Code. Ann. § 19.86.120 .......................... 19

**Rules**

21 C.F.R. § 1143 ........................................................................................... 9, 10, 11

21 C.F.R. § 29006 ..................................................................................................... 11

21 CFR § 28990 .......................................................................................................... 9

81 Fed. Reg. 28974 ................................................................................................... 10

**Other Authorities**

House Committee Rep. 111-58 .................................................................................... 5

R.J. Reynolds, Cigarette Concept to Assure RJR a Larger Segment of the Youth Market (1973) ............ 1

## I.      BACKGROUND AND SUMMARY OF ALLEGATIONS

### A.      JUUL CREATED AND PATENTED A FRUIT-FLAVORED E-CIGARETTE THAT IS MORE POTENT THAN COMBUSTIBLE CIGARETTES.

Nicotine is an addictive substance. (First Amended Complaint ("FAC") ¶ 78.) The amount of nicotine a product delivers, and the speed of nicotine delivery, play a "critical role" in the product's potential for abuse and addiction. *Id.* For decades, tobacco companies worked on perfecting nicotine delivery, including by altering the pH of cigarette smoke, to increase the bioavailability of nicotine and to create a nicotine 'kick' that would appeal to youth. *Id.* ¶ 79 (citing R.J. Reynolds, *Cigarette Concept to Assure RJR a Larger Segment of the Youth Market* (1973)).

Each of Defendant's JUULpod contains 59 mg/ml of a nicotine salt solution that JUUL designed and patented. *Id.* ¶ 80; Schwing Decl., Ex. C.  This amount is ***three times*** more nicotine than is allowed in the European Union, which found that "an e-cigarette with a concentration of 20 g/ml delivers approximately 1 milligram of nicotine in 5 minutes (the time needed to smoke a traditional cigarette, for which the maximum allowable delivery is 1mg nicotine)." FAC ¶ 84. Israel's Deputy Health Minister stated that JUUL "constitutes a danger to public health and justifies immediate and authoritative steps to prevent it from entering the Israeli market." *Id.*  Further, each JUULpod contains at least 4% benzoic acid, which alters the pH of the aerosolized vapor. *Id.* ¶ 82. Independent tests have found up to 4.5% benzoic acid in JUULpods. *Id.* ¶ 83. "[A] small percentage [change of pH levels] can double, triple, or quadruple the amount of free nicotine available for inhalation." *Id.* ¶ 83 (citing *U.S.A. v. Philip Morris*, Case No. 99-cv-02496, Dkt. 628, ¶ 1598 (D.D.C. Aug. 17, 2008). Blood test results in JUUL's 2014 patent application show that JUUL's nicotine solution delivers more nicotine to the bloodstream than a Pall Mall cigarette, creates a peak nicotine blood concentration that is approximately 36% higher than a Pall Mall cigarette, and increases heart rate faster than a Pall Mall cigarette. *Id.* ¶¶ 81-82). Yet JUUL falsely and misleadingly claimed that its product is "approximately equivalent to about 1 pack of cigarettes" or delivers *less* nicotine than a cigarette. *See* ¶¶ 82-88; Mot. 3-4; Schwing Decl., Ex. A.

### B.      JUUL MARKETED TO YOUTH WITHOUT WARNING OF THE RISKS OF ADDICTION

It has long been known that **95%** of adults who smoke became hooked on smoking before reaching age 18, *id.* ¶ 93, because adolescent brains are far more susceptible to nicotine addiction. *Id.* ¶ 94. Therefore, tobacco companies for decades targeted youth between the ages of 14 to 18 as "the critical factor in the growth" of their customer base. *Id.* ¶ 95.  In a landmark racketeering action brought by the United States against big tobacco, a district court judge found "overwhelming" evidence that tobacco companies exploited and targeted adolescents for decades by: (1) employing the concept of peers in order to market to teenagers; (2) using images and themes of independence, adventurousness, sophistication, glamour, attractiveness, social inclusion, rebelliousness, and being 'cool,' in marketing campaigns that appeal to teenagers; and (3) employing advertising and promotion strategies to knowingly reach teenagers. *Id.* ¶ 96 (citing *USA v. Philip Morris*, ECF 5732, ¶¶ 2674, 2682).

JUUL used the identical marketing model. It launched with a multi-million dollar "Vaporized" marketing campaign that included a 12-panel display over Times Square, a front spread in Vice Magazine, the "#1 youth media in the world," and a series of pop-up "JUUL bars" in California and New York. FAC ¶ 98. The Vaporized advertisements relied on young, attractive models, bright colors, and no warnings, or small-print warnings against low contrast backgrounds. *Id.* ¶ 99-104 & App'x A. JUUL also engaged in a massive advertising campaign via youth-filled social media platforms like Instagram, which 76% of teenagers use, and Twitter, used by nearly half of all teens, and where JUUL tweeted almost 5,000 times in 2017. *Id.* ¶ 114. JUUL used imagery and verbiage that almost always lacked any warning or contained imagery and messages that undercut those warnings. *Id.* ¶ 104. It did not include a statement such as "Contains Nicotine. Nicotine is Highly Addictive." Nor did it warn of the severe adverse health effects from nicotine such as "increased risk of heart disease and stroke; changes in brain functionality that lead to increased susceptibility to anxiety, depression and other addictions; decreased functionality of the endocrine system; heightened risk of cancer; and negative effects on fertility." *Id.* ¶¶2-132. And it offered its product in a variety of kid-friendly flavors, including cool cucumber, fruit medley, cool mint, and mango, and crème brulee. These efforts, coupled with cross-platform social media campaigns, affiliate marketing, and targeted campaigns, caused JUUL to go viral. In a recent survey, 65% of JUUL-using youth did not know that the JUUL e-cigarette contained nicotine. *Id.* ¶ 4 Yet according to researchers, JUUL was "taking advantage" of social media

1  to "target the youth and young adults . . . because there are no restrictions on" social media advertising.

2  *Id.* ¶ 119-22.

3      JUUL prices its products to attract youth, *id.* ¶ 107-110, and it clusters its retail locations around

4  schools. *Id.* ¶ 111. In a recent survey, 6.5% of youth admitted to using a JUUL e-cigarette. Of those,

5  86% most recently used fruit medley, mango, cool mint, or crème brulee. Another study of 15-24 year

6  olds found that 8% of them had used JUUL e-cigarettes in the past 30 days. *Id.* ¶ 97. In a recent survey,

7  65% of JUUL using youth did not know that the JUUL e-cigarettes contained nicotine. FAC ¶ 4.

8  **II.**   **ARGUMENT**

9      **A.**   **THE FAMILY SMOKING PREVENTION AND TOBACCO CONTROL ACT DOES NOT PREEMPT PLAINTIFFS' CLAIMS.**

10      **1.**   **This Court Must Presume Against Federal Preemption of Historic State Police Powers.**

11

12      JUUL argues incorrectly that the Family Smoking Prevention and Tobacco Control Act, 21

13  U.S.C. §§ 387 ("TCA") preempts Plaintiffs' claims under various state consumer protection laws.

14  Federal preemption must be narrowly construed; it exists only if the language of the statute

15  demonstrates a congressional intent to preempt. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 523

16  (1992) ("we must … narrowly construe the precise language of [statute] and we must look to each

17  of petitioner's common law claims to determine whether it is preempted").[1] In fields traditionally

18  occupied by the states such as the exercise of a state's police powers, the "presumption against

19  preemption is heightened, *Riegel v. Medtronic*, Inc., 552 U.S. 312, 334 (2008) (citation omitted), and

20  Congress' intent to preempt state law must be "clear and manifest."  *Medtronic, Inc. v. Lohr*, 518 U.S.

21  470, 485 (1996); *see also Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (reiterating Medtronic's

22  presumption against preemption). The strong presumption against preemption applies both to the

23  question of whether Congress intended to preempt state law and to the scope of preemption. *See*

24  *Medtronic*, 518 U.S. at 485.  Congress' intent "primarily is discerned from the language of the

25

26  _____

[1] Although all preemption turns on statutory language, a federal statute need not expressly state that it
27  preempts state law.  A statute can also impliedly preempt state law, if Congress demonstrates an intent
that federal law "occupy the field" (i.e., "field preemption") or "where it is impossible for a private party
28  to comply with both state and federal law." (i.e. "conflict preemption"). *Crosby v. National Foreign
Trade Council*, 530 US 363, 372-73 (2000); *Jones v. Rath Packing Co.*, 430 U. S. 519, 525 (1977).

preemption statute and the 'statutory framework' surrounding it." *Lohr*, 518 U.S. at 485-86. "The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166-167 (1989).  Even "[i]f a federal law contains an express pre-emption clause, it does not immediately end the inquiry, because the question of the substance and scope of Congress displacement of state law still remains." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008).

Consumer protection laws such as the unfair competition law ("UCL"), false advertising law ("FAL"), and CLRA, and laws regulating the marketing of cigarettes and tobacco products, including the prevention of deceptive sales practices, are all within the states' historic police powers, and thus are subject to the strong presumption against preemption.  *See, e.g., In re Tobacco Cases II, Tobacco Cases II*, 46 Cal.4th 298, 327-28 (2009) (tobacco advertising subject to UCL); *Cippolone v. Liggett Group, Inc.*, 505 U.S. 504, 528-31 (1992) (federal tobacco labeling laws do not preempt state laws not specific to tobacco labeling); *Mangini v. R. J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057, 1073-74 (1994) (no preemption of tobacco advertisements targeting youth).

### 2. Congress Expressly Limited Preemption Under the Tobacco Control Act

The Tobacco Control Act leaves no doubt that Congress was aware of, and left intact, States' power to regulate the sale and marketing of tobacco products using consumer protection laws. Congress passed the TCA based on findings that "tobacco company continue to target and market to youth . . . . encourage youth to start smoking . . . . and designed their cigarettes to precisely control nicotine delivery levels and provide doses of nicotine sufficient to create addiction while also concealing much of their nicotine-related research." TCA, Findings (47)-(49) (citing *USA v Philip Morris*, No. 99-cv-2496 (D.D.C. Aug. 17, 2006).  Indeed, the portion of the TCA Defendants cites as preemptive, 21 U.S.C. §387p, is actually titled "***Preservation of State and Local Authority***." The section has a narrow preemption provision, 21 U.S.C. § 387p(a)(2)(A), sandwiched between a host of express limitations on this preemption.  Id. § 387p(a)(1), (a)(2)(B), (b), and there are two other provisions that provide even further limitation on preemption. *Id.* § 387h.

In the narrow preemption section upon which Defendant relies, which is entitled "Preemption

OF *CERTAIN* STATE AND LOCAL REQUIREMENTS," (emphasis added), Congress provided that no state may:

> establish or continue in effect with respect to a tobacco product any requirement ***which is different from, or in addition to,*** any requirement under the ***provisions of this subchapter relating to*** tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products.

21 U.S.C. § 387p(a)(2)(A) (emphasis added). In the next subsection, titled "EXCEPTION," Congress narrowed the scope of its limited preemption with a broad savings clause:

> Subparagraph A ***does not apply to requirements relating to the sale, distribution,*** possession, information reporting to the State, exposure to, ***access to, the advertising and promotion of,*** or use of, tobacco products by individuals of any age, or relating to fire safety standards for tobacco products.

*Id.* § 387p(a)(2)(B) (emphasis added). And in the immediately preceding subsection to the "PREEMPTION" section, in a section entitled "PRESERVATION," Congress stated that "Except as provided in [the limited preemption section] a state ***may*** "enact, adopt, promulgate and enforce any law, rule, regulation or other measure with respect to tobacco products" ***even if*** such law "is in addition to, or more stringent than, requirements under this subchapter." 21 U.S.C. § 387p(a)(1). In the final subsection entitled "RULE OF CONSTRUCTION REGARDING PRODUCT LIABILITY," the statute specified that "[n]o provision of this subchapter relating to a tobacco product shall be construed to modify or otherwise affect any action or the liability of any person under the product liability law of any State." *Id.* § 387p(b). Congress also included another separate section involving preemption; it gave the FDA authority to regulate tobacco products while simultaneously providing "NO EXEMPTION FROM OTHER LIABILITY. Compliance with an order [of the FDA] issued under this section ***shall not relieve any person from liability under Federal or State law*****.**" *Id.* § 387h(b) (emphasis added).

The legislative history of the TCA establishes that Congress intended to preempt only state laws that were *specific to tobacco*, not general false advertising and consumer-protection laws. The House Committee Report on the bill stated that the bill "would preempt ***state laws governing tobacco products.***" House Committee Rep. 111-58, pt. 1, at 25.  The Congressional Budget Office Report similarly concluded that the bill would only preempt "***certain state laws governing tobacco products***." This interpretation of the TCA comports with the Supreme Court's prior recognition of a distinction

between tobacco-specific requirements preempted by the Federal Cigarette Labeling and Advertising Act ("FCLAA"), and generalized duties of care that were not preempted by that statute. *See Cippolone*, 505 U.S. at 531 ("This indicates that Congress intended the phrase 'relating to smoking and health' (which was essentially unchanged by the 1969 Act) to be construed narrowly, so as not to proscribe the regulation of deceptive advertising"). Indeed, in section 203 of the TCA, Congress repeated the same reference to preemption of only "smoking and health" regulations. 15 U.S.C. § 1334.

### 3. Plaintiffs' Claims Arising From the Advertising, Sale, Promotion, Distribution, and Product Liability Are Expressly *Not* Preempted.

JUUL glosses over the TCA's preservation clause, 21 U.S.C. § 387p(a)(1), exceptions from preemption, *id.* § 387p(a)(2)(A), and its rule of construction, *id.* § 387p(a)(2)(B), which cover the overwhelming majority of Plaintiff's claims. Subsection (a)(2)(B) makes clear that all of Plaintiffs' claims about the "sale," "distribution," "access to," "advertising" and "promotion" of JUUL products are expressly *not* preempted. *Id.* § 387p(a)(2)(B). All of Plaintiffs' claims incorporate aspects of these issues. Subjection (b) also makes clear that all of Plaintiffs' "product liability" claims also are expressly *not* preempted. *Id.* § 387p(b). Defendant cannot reasonably argue otherwise.

Accordingly, at a minimum, all the causes of action in the Complaint survive to the extent they are based on JUUL's sale, distribution, advertising, and promotion, as well as for product liability.

### 4. The TCA Does Not Preempt Plaintiffs' Claims Arising From Misbranding and Labeling

Defendant is left to argue that portions of Plaintiffs' consumer claims seek to enforce state laws that relate to "misbranding" and "labeling" of the JUUL product and impose rules that are "different from" or "in addition to" the requirements of the TCA. *Id.* § 387p(a)(2)(A). This argument fails for four reasons.

First, as noted above, Congress' intent was only to narrowly preempt *tobacco-specific* laws that imposed "different" or "additional" requirements on tobacco products, not laws of general applicability like those under which Plaintiffs have sued. Congress adopted a very narrow preemption provision sandwiched between express non-preemption provisions and accompanied by reuse of the same language regarding "smoking and health" regulations, after the Supreme Court's opinion in *Cippolone* had already distinguished between specific laws about tobacco (preempted) and general advertising

laws (not preempted). By reusing that language after *Cippolone*, Congress is presumed to have agreed to and adopted the framework. *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1762 (2018) ("When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well.").

Second, even if Congress had intended to preempt more general state laws, none of the state laws under which Plaintiffs sue would impose any such "different" or additional" requirements from the TCA.  The TCA provides that "[a] tobacco product shall be deemed to be misbranded if its labeling is ***false or misleading*** in any particular."  *Id.* § 387c(a)(1) (emphasis added).  The state consumer laws that Plaintiffs seek to enforce have the *identical standard.*  Myriad cases have held that these same state consumer laws are not preempted by other federal statues that have identical "different from or in addition to" preemption language, and an identical bar against "false or misleading" labeling, including the Food Drug and Cosmetics Act (of which the TCA is a part) and the Medical Device Act. *See, e.g., Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015) (Thus, "if [Plaintiffs'] suit ultimately requires [defendant] to remove these allegedly misleading advertising statements from its product labels, such a result does not run afoul of the FDCA, which prohibits 'requirement[s]' that are 'different from,' [or] 'in addition to' or 'not identical with' federal rules.").

Third, even if there were preemption of some laws, it would only bar claims for conduct occurring after the allegedly preemptive FDA rules took effect on August 10, 2018. Defendant argues that preemption starts on the date that the FDA "deemed" that Electronic Nicotine Delivery Systems ("ENDS") would be subject to the TCA, May 10, 2016, not the date that ENDS labeling requirements actually did become effective *two-and-one half years later.*  But neither Congress nor the FDA intended to exempt ENDS before any substantive federal regulations were in effect.

Finally, Defendant has not satisfied the requirements of the premarket approval process, which are the *specific federal requirements giving rise to preemption*. In the TCA, Congress enacted detailed provisions regarding premarket approval, which should be read in conjunction with the preemption provisions, just as they have been in another FDA-entrusted statute, the Medical Device Act. Once

again, there is no basis to infer a Congressional intent to supplant state law while at the same time

permitting manufacturers to make any label claims they wished, without obtaining FDA approval.

### a.    Because Plaintiffs' Labeling Claims Parallel Federal Requirements, They Are Not Preempted.

Preemption "does not prevent a State from providing a damages remedy for claims premised on

a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal

requirements." *Riegel v. Medtronic*, 552 U.S.at 330; *see also Lohr v. Medtronic*, 518 U.S. at 495

(nothing in the Medical Device Act's preemption clause "denies [a state] the right to provide a

traditional damages remedy for violations of common-law duties when those duties parallel federal

requirements"); *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1231 (9th Cir. 2013) (reversing district court

dismissal of failure-to-warn claim on preemption grounds). Accordingly, state law labeling

requirements are only expressly preempted if: (1) the Federal Government has established labeling

requirements, *and* (2) Plaintiffs' state law claims arising are based on labeling requirements or that are

"different from, or in addition to," the federal requirements.  *See Riegel,* 552 U.S. at 322.

Plaintiffs allege that JUUL breached general state-law duties to not advertise its products in a

manner that was misleading or untrue. The same standard already exists in the federal law and in the

regulations.  *Compare* TCA § 903(a)(7) (false or misleading statements in advertisements constitute

misbranding), Cal. Bus & Prof. Code § 17500 (barring sale of a product with a statement "which is

untrue or misleading"); *see, e.g.*, *Wright v. General Mills, Inc.*, 2009 U.S. Dist. LEXIS 90576, at *6-7

(S.D. Cal. Sept. 30, 2009) (holding that "Congress has specifically indicated that it does not intend to

occupy the field of food and beverage nutritional labeling….") *citing In re Farm Raised Salmon Cases*,

42 Cal. 4th 1077, 1091 (2008) ("Congress made clear that the preemptive scope of section 343-1 was to

sweep no further than the plain language of the statute itself."); *Lockwood v. Conagra Foods, Inc.*, 597

F. Supp. 2d 1028, 1032 (N.D. Cal. 2009); *Hitt v. Arizona Bev. Co., LLC*, 2009 U.S. Dist. LEXIS 16871

at *12 (S.D. Cal. Feb. 4, 2009).

Similarly, Plaintiffs allege that JUUL violated a common-law duty to warn consumers of the

addiction risks of nicotine, an addictive chemical.  The TCA and FDA regulations have the same

requirement.  28 U.S.C. § 387; 21 C.F.R. 1143.3.  Yet JUUL did not warn of these risks before ENDS

were regulated, or even after the FDA deemed in 2016 that ENDS were subject to the TCA. Instead, JUUL waited until a few weeks ago, when the FDA's nicotine addiction warning requirements became effective. *See* 21 C.F.R. § 1143.13; https://www.fda.gov/downloads/TobaccoProducts/Labeling/Rules-RegulationsGuidance/UCM557716.pdf.

There is no reason to believe that Congress intended to allow tobacco product sellers to violate state laws against misleading and deceptive labeling by omitting this crucial information from consumers for *nearly ten years* since the TCA was adopted in 2009, until whatever date federal regulations might go into effect.  To the contrary, Congress intended that even *after* the FDA adopted regulations under the TCA, "[c]ompliance with an order [of the FDA] issued under this section shall not relieve any person from liability under Federal or State law." 21 U.S.C. § 387h(b).

Similarly, the FDA made clear that it did not intend the ENDS regulations to be a complete list of required label statements.  Nor could it, because the TCA bars all labeling that is "false or misleading in any particular." *Id.* § 387c(a)(1). The FDA therefore entitled its ENDS rules "*Minimum Required Warning Statements,*" 21 C.F.R. § 1143 (emphasis added), adding the word "minimum" to convey that the FDA does "not preclude other health warnings" and to "clarify that part 1143 is not intended to prevent product manufacturers from including truthful, non-misleading warnings on their products' packaging or advertisements voluntarily." 21 CFR 28990.  Accordingly, compliance with general state law requirements imposes no "additional" or "different" requirements from the TCA or the federal regulations, because the TCA already requires, and the regulations already contemplate, that manufacturers must refrain from deceptive conduct.

In similar situations, courts have held that state law duties to warn survive implied preemption, as the "general obligation[]" to warn is "no more a threat to federal requirements than would be a state-law duty to comply with local fire prevention regulations and zoning codes, or to use due care in the training and supervision of a work force." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1229 (9th Cir. 2013) (quoting *Lohr*, 518 U.S. at 501-02). Even in the context of drugs, where the FDA has authority over all the aspects of the drug label, the manufacturer is required to update the label with appropriate warnings of known risks. *Wyeth*, 555 U.S. at 572.  When FDA regulations permit manufacturer to unilaterally update safety warnings on their labels—as is true for both pharmaceuticals and ENDS—the

FDA's intent is to "to make it clear that manufacturers remain responsible for updating their labels," and the fact that the label otherwise complies with FDA regulations, or even has been pre-approved by the FDA, does not shield the manufacturer from state law liability. *Id.* at 573. Rather, preemption is a defense only if it would be *impossible* to comply with both the state-law duties and the federal requirements, "and impossibility preemption is a demanding defense." *Id.*[2]

JUUL's sole authority for its position that it was free to sell misbranded products and violate its duty to warn is *In re Fontem*, 2016 U.S. Dist. LEXIS 187853, at *20 (C.D. Cal. Nov. 1, 2016), an unpublished case that has not been followed or relied upon by any other court.[3] *Fontem* held that the TCA preempted state law claims for failures to warn of formaldehyde on tobacco product labels, despite the lack of any applicable federal regulations. *Id.* at *4-5. *Fontem* mistakenly concluded that the preservation clause of § 387p(a)(2)(B) was limited to relating to "exposure to" or "use of" tobacco products, even though that section's clear language also preserves state power to police the "sale, distribution, . . . advertising and promotion of" tobacco products. *Fontem* also ignored the express limitations on preemption, the implicit adoption of the *Cipollone* framework, the similar framework under the FDCA (*see supra*) and the Medical Device Act (*see infra*), and all the legislative history discussed above. *Fontem's* holding is inconsistent with Supreme Court precedent on how preemption should be analyzed, *see supra,* and it should not be followed.

JUUL—*and Fontem*—ignored, *In Greene v. Five Pawns, Inc.*, No. SACV 15-1859 DOC (DFMx), 2016 U.S. Dist. LEXIS 187866 (Aug. 30, 2016), a nearly identical case that held the TCA preempts state laws only to the extent they are in direct conflict with FDA rules. In *Greene*, the plaintiffs brought claims arising out of unlabeled chemicals other than nicotine in ENDS e-liquids. In

---

[2] Other federal regulations that provide minimum guidelines also provide no basis for federal preemption. *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 67–68 (2002) (Federal Boat Safety Act did not preempt common-law tort claims, arising out of failure to install propeller guards on motor-boat engines); *Bates v Dow Agrosciences LLC*, 544 U.S. 431, 499 (2005) (Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) did not preempt claims for defective design, defective manufacture, negligent testing, breach of express warranty, and violation of Texas Deceptive Trade Practices Act.

[3] JUUL glosses over the fact that none of the packaging or advertisements cited in the Complaint comply with ENDS rules, which require black text on a white background in at least 12 point font, on at least 30 percent of the product label and 20 percent of advertisements. Final Rule, 81 Fed. Reg. 28974, 28988; see also 21 C.F.R. § 1143.3(a)(2), (b).

---

denying defendant's express preemption argument, the court determined that the TCA's prohibition on misbranded tobacco products—i.e., products with false or misleading labels—were preempted only to the extent that they conflicted with the TCA's labeling requirements. *Greene*, at \*20-24. But the court followed the Ninth Circuit's preemption analysis in *Astiana*, and left the question of whether plaintiffs proposed labeling requirements were "different from, or in addition to," the TCA's labeling requirements for the jury to decide. *Greene*, at \*24

> **b.    Even if Preemption Exists, the Date of Preemption Is the Effective Date of the FDA's Final Rule Regarding Labeling.**

Defendant argues that preemption of labeling claims began on the Deeming Rule's effective date (May 10, 2016), and not two-and-one-half years later, on the effective date of federal nicotine warning requirements in 21 CFR § 1143.3. This argument is misguided.  Neither FDA or Congress intended to extinguish states' power to regulate ENDS before the federal regulations took effect. The FDA stated that its intent in delaying implementation of ENDS regulations was simply to provide the industry a pragmatic concession based on the "time and resources it will take for manufacturers to comply with the [FDA's] health warnings requirements." See 21 C.F.R. 29006. The FDA never said that it intended to create a regulatory vacuum during that time, in which highly-addictive products could be sold with abandon and without warnings (though that is exactly what happened).

Effectively, Defendant is arguing for retroactive application of the 2018 regulations. It was only *after* these regulations became effective a few weeks ago that previously existing state laws could be said to impose "different" or "additional" requirements from the regulations. *Before* the regulations became effective, state laws did not impose "additional" or "different" requirements from the regulations—there simply were no regulations.  And even now, the state laws impose no additional or different requirements; see *supra*.

In other tobacco litigation, courts have consistently rejected attempts to retroactively preempt failure to warn claims. In 1965, Congress passed the Federal Cigarette Labeling and Advertising Act ("FCLAA"). It amended the FCLAA on July 1, 1969, implementing new warnings for cigarette package labels and expanding the scope of the FCLAA's preemption clause. The Supreme Court rejected preemption of claims prior to the July 1, 1969 amendment date. *See, e.g., Cipollone, 505 U.S.*

---

OPPOSITION TO MOTION TO DISMISS-          11

*at 519*, (before a 1969 amendment broadening the Public Health Cigarette Smoking Act's preemption provision, the Act did not preempt state common law actions for damages); *Stitt v. Philip Morris, Inc.*, 245 F. Supp. 2d 686 (W.D. Pa. 2002) (the 1969 Act "does not preempt plaintiffs claims to the extent they are based upon defendants' actions prior to 1969"); *Bullock v. Philip Morris USA, Inc.*, 159 Cal. App. 4th 655, 688 (2008) (the Act "preempts claims based on advertising or promotional activities only to the extent that the claims are based on activities that occurred after July 1, 1969"). These holdings follow from the general rules against retroactive application of statutes.[4]

Defendant will undoubtedly point out that the court in *In re Fontem* concluded that the Deeming Rule's adoption in May 2016 triggered the TCA's preemption, preempting plaintiffs' claims.  Plaintiffs respectfully suggest that the *Fontem* court was wrong. It held that the plaintiffs' claims were preempted because "the FDA did not include language that suggest [sic] the effective date for preemption begins on" the nicotine warning requirement's Effective Date. 2016 U.S. Dist. LEXIS 187853, at *20.  The FDA's silence cannot be construed as an intent to preempt, as the FDA showed no intent to begin preemption on the effective date of the Deeming Rule. *Cf. St. Cyr*, 533 U.S. at 316 ("absent a clear indication from Congress that it intended such a result," a statute may not be applied retroactively); *Landgraf* 511 U.S. at 257 (a statement that a federal regulation "will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date").[5]

---

[4] A statute may not be applied retroactively "absent a clear indication from Congress that it intended such a result." *Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289, 316 (2001). *Compare In re Fontem*, 2016 U.S. Dist. LEXIS 187853, at *20 (C.D. Cal. Nov. 1, 2016) (applying preemption retroactively absent intent from the FDA not to apply preemption retroactively). The cases where the Supreme Court "has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation." *Lindh v. Murphy*, 521 U.S. 320, 328, n. 4 (1997)." *See, e.g.*, 116 CONG. Rec. 7922 (1970) (statement of Rep. Staggers) ("The preemption clause [of the Federal Cigarette Labeling and Advertising Act] was retroactively effective July 1, 1969 "). By contrast, a statement that a federal regulation "will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 257 (1994) (footnote omitted).

[5] When the plaintiffs in *In re Fontem* asked the court to reconsider its application of retroactive preemption, the court's conclusion did not change. No. 15-cv-01026-JVS-RAO, ECF 110, (C.D.Cal. Mar. 8, 2017). Plaintiffs respectfully submit that the court erred a second time by concluding that the Tobacco Control Act's prohibition of state labeling requirements that "continue in effect" after the Act went into effect indicated Congressional intent to retroactively preempt claims. The court relied

Even if preemption did begin with adoption of the Deeming Rule in May 2016, Plaintiffs' claims would still survive with respect to conduct before that date.  JUUL was launched in 2015. There is no basis to find a Congressional intent to preempt claims for conduct before the FDA even deemed ENDS subject to the TCA.  The TCA itself does not discuss ENDS but focuses on cigarettes and loose tobacco products.  Certainly there is no reason to believe that Congress intended to exempt from all state law the labeling of products that might *never* be subject to FDA regulations, which was the case until at least May 2016.

### c. Because JUUL Has Not Satisfied The Tobacco Control Act's Premarket Review Requirements, the TCA's Requirements Giving Rise To Preemption Have Not Been Met.

The labeling claims also are not preempted because JUUL never sought or received approval from the FDA for its label statements. Under the Medical Device Act, which contains a nearly-identical three-tiered premarket review process as the TCA and a nearly-identical preemption clause as the TCA, premarket review is required for life-sustaining medical devices or devices that pose unreasonable risks of death. For these devices, premarket review of the "design, manufacture, and labeling of the device, as approved by the FDA as safe and effective after the device has undergone the [premarket approval] process], *are the specific federal requirements giving rise to preemption*." *Steele v. Collagen Corp.*, 54 Cal. App. 4th 1474, 1489 (1997).[6] Medical devices that do not undergo premarket review do not

principally on one case, *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009), for the proposition that the Tobacco Control Act's "continue in effect" language evinced Congressional intent to retroactively preempt plaintiffs' claims. *In re Fontem*, No. 15-cv-01026 (C.D. Cal. March 8, 2018), Dkt. 110. But *Ileto* does not address the "continue in effect" language or anything like it. Instead, the Ninth Circuit in *Ileto* examined the legislative history of the statute at issue and found in the statute's legislative history not only Congress' "clear intent" to apply preemption retroactively, but also congressional intent to specifically preempt the case at bar. *Ileto*, 565 F.3d at 1136-37. ("I want the Congressional Record to clearly reflect some specific examples of the type of predatory lawsuits this bill will immediately stop[:] ... [An] example is the case of *Ileto v. Glock*, in Federal court in Los Angeles, CA"). The *Fontem* court also examined retroactive preemption in the context of the Federal Insecticide and Rodenticide Act ("FIFRA"). Though plaintiffs cited to two FIFRA cases rejecting retroactive preemption, the court reached the opposite conclusion by relying on *Akee v. Dow Chemical*, 272 F. Supp. 2d 1112, 1126 n.7 (D. Haw. 2003). *Akee* is distinguishable because the plaintiffs there filed their case decades after the preemption clause at issue had gone into effect.

[6] Through premarket review, "the federal government, it can truly be said, has 'weighed the competing interests relevant to the particular requirement in question, reached an unambiguous conclusion about

receive the benefit of the Medical Device Act's preemption of state law requirements. *See, e.g.*, *Riegel*, 555 U.S. at 322-33 (2008); *Committee of Dental Amalgam Mfgs. & Dists. v. Stratton*, 92 F.3d 807, 813-14 (9th Cir. 1996) (Proposition 65 claim not preempted by MDA because product did not undergo premarket review). Since then, courts have consistently analyzed preemption under the MDA by asking: has the device received premarket authorization, and if so are the state law requirements at issue "different from, or in addition to" the Medical Device Act's requirements? *See, e.g., La Paz v. Bayer Healthcare LLC*, 159 F. Supp. 3d 1085, 1091 (N.D. Cal. 2016); *Funke v. Sorin Grp. USA, Inc.*, 147 F. Supp. 3d 1017, 1023 (C.D. Cal. 2015) (same).

The Tobacco Control Act, like the MDA, contains exhaustive premarket review requirements to weigh the risks the new tobacco products pose. *See Philip Morris USA Inc. v. United States FDA*, 202 F. Supp. 3d 31, 38-39 (D.D.C. 2016) ("a 'new tobacco product' must first receive FDA approval before it can be introduced or delivered into interstate commerce").[7] A product subject to premarket review must be denied if: "(A) there is a lack of a showing that permitting such tobacco product to be marketed would be appropriate for the protection of the public health; (B) the methods used in, or the facilities or controls used for, the manufacture, processing, or packing of such tobacco product do not conform to the requirements of section 906(e); (C) based on a fair evaluation of all material facts, the proposed labeling is false or misleading in any particular." 21 U.S.C. § 387j(c)(2). A determination of whether a product is appropriate for the protection of the public health turns on "(A) the increased or decreased likelihood that existing users of tobacco products will stop using such products; and (B) the increased or decreased likelihood that those who do not use tobacco products will start using such products." 21 U.S.C. § 387j (c)(4).

When it deemed ENDS subject to its authority, the FDA determined that ENDS must "meet all

---

how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers.'" *Mitchell v. Collagen Corp.*, 126 F.3d 902, 911 (7th Cir. 1997).

[7] Premarketing review requires disclosure of: (A) health risks; (B) components, ingredients, additives, properties, and principles of operation; (C) manufacturing methods, facilities, and controls; (D) reference to any applicable tobacco product standard; and must provide: (E) samples of the tobacco product; (F) "specimens" of the product's proposed labeling; and (G) any other relevant information. 28 U.S.C. §387j(b)(1)(A)-(G).

the requirements for a premarket authorization in section 910 of the FD&C Act." 21 C.F.R. 28998.

ENDS manufacturers who market their products without premarket authorization are doing so "without

FDA authorization." 21 C.F.R. 29010. Although the FDA initially said premarket review would begin

in 2018, after a flurry of lobbying by Defendant,[8] the FDA pushed the date back to 2022.

Because Defendant has not undergone the detailed premarket approval process, which the FDA

estimates will cost in excess of $2,000,000 and will take thousands of hours for manufacturers to

complete, there has been no determination that its products are "appropriate for the protection of the

public health," or whether JUUL's labels are "false or misleading in any particular." 21 U.S.C.

§ 387j(c)(2)(A), (C). The FDA has not assessed "the increased or decreased likelihood that existing

users of tobacco products will stop using such products," or "the increased or decreased likelihood that

those who do not use tobacco products will start using such products." 21 U.S.C. § 387j(c)(4).  It would

be inconsistent with the Congressional intent behind the TCA to give Defendant the benefit of federal

preemption for its labels, even though no federal agency has reviewed and approved those labels.

## B.   PLAINTIFFS' CLAIMS ARE WELL-PLED.

### 1.   The FAC Satisfies Rule 9(b)

Plaintiffs have pleaded, as required, "'the who, what, when, where, and how' of the misconduct

charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). As the Ninth Circuit has

explained, the principal purpose of Rule 9(b) is "to give defendants notice of the particular misconduct

which is alleged to constitute the fraud charged so that they can defend against the charge and not just

deny that they have done anything wrong." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161,

1180 (9th Cir. 2016). This standard "does not require absolute particularity or a recital of the evidence,"

and "a complaint need not allege a precise time frame, describe in detail a single specific transaction, or

identify the precise method used to carry out the fraud." *Id.*  Identification of specific advertisements

that were viewed or relied upon is not required. *See In re Tobacco Cases II*, 46 Cal.4th 298, 327-28

(2009) (finding reliance adequately pleaded in UCL action based on tobacco advertising even though

---

[8] *See, e.g.,* http://disclosures.house.gov/ld/ldxmlrelease/2017/Q4/300927296.xml;
http://disclosures.house.gov/ld/ldxmlrelease/2017/Q3/300915568.xml;
http://disclosures.house.gov/ld/ldxmlrelease/2017/Q2/300897352.xml.

"neither [plaintiff] could point to specific advertisements").

Plaintiffs pleaded that they each purchased JUULpods during the class period (Dkt. 24 ("FAC"), ¶¶11-52) and that they would not have purchased the JUULpods had they known that JUULpods were more addictive than cigarettes due to increased nicotine potency. Plaintiffs also pleaded that they viewed JUUL's advertisements and website, through which JUUL marketed its JUULpods as "safe, candy-like products" and its e-cigarette as "the iPhone of E-cigs" using colors and images that appeal to minors and nonsmokers (FAC, ¶¶4, 7, 44, 99), without disclosing the effects of long-term nicotine addiction, including "increased risk of heart disease and stroke; changes in brain functionality that lead to increased susceptibility to anxiety, depression and other addictions; decreased functionality of the endocrine system; heightened risk of cancer; and negative effects on fertility." (FAC, ¶¶2-132.) Courts have repeatedly found allegations such as these to be sufficient. *See, e.g.*, *Ham*, 70 F. Supp. 3d at 1192 (holding that plaintiff satisfied Rule 9(b) by pleading "(i) the who: Hain; (ii) the what: 'All Natural' labeling on waffles containing SAPP, a synthetic ingredient; (iii) the when: purchases made between May 2012 and March 2014; (iv) the where: labels on the waffles, copies of which [were] attached to the complaint; (v) and the how: purchases made with reasonable reliance on the 'All Natural' statement").[9]

Defendant argues that Plaintiffs need to allege the exact dates that each Plaintiff saw the advertisements or the exact advertisements that each plaintiff saw. (ECF 40 at 24). To the contrary, "a complaint need not allege a precise time frame" to satisfy Rule 9(b). *United Healthcare Ins. Co.*, 848 F.3d at 1180. Courts have routinely found allegations of the general time frame such as Plaintiff pleads here sufficient to provide notice of which advertisements are being challenged, and thus to satisfy Rule 9(b). *Bruton v. Gerber Products Co.*, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) (precise dates not required; allegations that plaintiff purchased product throughout the class period sufficient under Rule

---

[9] That same framework can be applied here easily, as the who is Defendants, the "what" is the statement that the Products were "approximately equivalent to about one pack of cigarettes" and the omission of adequate warnings about the increased potency and addictiveness of nicotine salts and long-term adverse effects of nicotine, the "when" is "throughout the class period," the "where" is on the JUUL advertising and packages, and the "how the statements were misleading" is the allegation that reasonable consumers understand the statement to mean that the Products were less, or at least no more, addictive than cigarettes, and/or had no long-term health effects given that they did not produce "smoke," when they are actually more addictive than cigarettes, and still have adverse effects from with nicotine vapor alone.

---

9(b)); *Orlick v. Rawlings Sporting Goods Co.*, No. CV 12-6787-GHK (RZX), 2013 WL 12139142, at *3 (C.D. Cal. Feb. 20, 2013) ("It sufficiently alleges *when* Defendant made the allegedly false or misleading advertising claims (within four years prior to the filing of this action)."); *Astiana*, 2011 WL 2111796, at *6 ("The 'when' is alleged as 'since at least 2006.'"); *Ham*, 70 F. Supp. 3d at 1192 ("[T]he when: purchases made between May 2012 and March 2014."); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (between March 4, 2005 and March 4, 2009). Several plaintiffs here gave even more details; for example, C. Smith states that he is now 18 and started consuming JUUL products when he was 17. FAC, ¶41.

The Complaint is also specific enough to put JUUL on notice of the "what" and "where." Plaintiffs allege that the packages and web site are misleading because they failed to disclose that the products contain a highly addictive and dangerous chemical, nicotine, in a formula that will lead to much higher intake of nicotine than cigarettes. E.g., FAC ¶¶7, 88-90; 156; *In re ConAgra Foods, Inc.*, 908 F.Supp.2d 1090, 1099 (C.D. Cal. 2012) ("A number of courts have concluded that a plaintiff complies with Rule 9(b) if he or she asserts that allegedly misleading statements appeared on the label or packing of a consumer product."); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) (finding 9(b) satisfied where plaintiff alleged that defendants' packaging was misleading). All plaintiffs necessarily saw the packages as they have alleged purchases.  In addition, some plaintiffs (Nelson/N.B.; Lagun) cite that they viewed JUUL's web site. Dkt. 40, ¶¶29, 44. Others state that they saw advertisements in stores and/or magazines (Lagun; A.U.; Benham) or on social media such as Instagram and Twitter (A. Smith; C. Smith) that used images of young, attractive people enjoying a "hip, cool activity." *Id.*, ¶¶36, 41, 44, 47.

Tellingly, Defendant does not argue that it us unable to defend against the claims because it cannot discern which advertisements Plaintiffs allege are fraudulent. The Complaint provided samples of the advertisements Plaintiffs allege they saw, which puts JUUL on notice. *See* Dkt. 40, ¶¶4, 7, 44, 99; *Fed. Trade Comm'n v. Lunada Biomedical, Inc.*, No. CV-15-3380-MWF (PLA), 2016 WL 4698938, at *4 (C.D. Cal. Feb. 23, 2016) ("Here, by identifying and attaching representative advertisements to the FAC, the FTC has pleaded its claims with sufficient particularity to apprise Defendants of the

advertisements alleged to be deceptive and to enable Defendants to prepare a defense."); *E.g.*, *Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, 2015 WL 510919, *11 (N.D. Cal. Feb. 5, 2015) ("[E]ven though Plaintiff has not alleged that he personally relied on Defendant's website and advertising materials, these materials may be relevant to class certification and absent class members' reliance on Defendant's promotional materials.").  To the extent Defendant complains it cannot be sure which ads and packaging are relevant because they "changed over time," the argument is a canard, because Plaintiffs' are alleging that all of JUUL's advertisements and every JUULpod package was misleading, which makes all the ads and packaging during the class period relevant.

Defendant argues that Plaintiffs' allegations arising from the JUUL patent, 9,215,895 ("the '895 patent") do not support Plaintiffs' claims nor meet the requirement of 9(b), because there is no allegation that the JUUL device on sale uses the same amount of e-liquid as the device described in the patent. Defendant's argument is unintelligible and unsuited to motion to dismiss.  The FAC cites the patent to show that JUUL admitted that its device could lead to higher nicotine uptake than the most potent cigarette; the FAC buttresses those admissions with citations to (1) independent studies about the actual percentage of benzoic acid and nicotine in JUULpods being sold and (2) findings by government officials in Europe and Israel that the levels of nicotine far exceed safe standards. FAC ¶¶ 81-84.

### 2.      The FAC States a Claim Under State Consumer Protection Statutes

#### a.      Legal Elements

The plaintiffs hail from California, New Jersey, Washington, New York, Michigan, Pennsylvania, and Massachusetts.  These and other states have very similar consumer laws. To state a claim under the relevant California, New Jersey, and Pennsylvania laws, a plaintiff must allege the following elements, with some variations in the particular formulation applicable in each state: (1) a deceptive act or practice, (2) causation, and (3) actual damages. To state a claim under the relevant Pennsylvania law, a plaintiff must allege "(1) a deceptive act; (2) justifiable reliance; and (3) ascertainable loss caused by that reliance." *DuMont v. Litton Loan Servicing, LP*, No. 12-CV-2677, 2015 U.S. Dist. LEXIS 29787, 2015 WL 1061138, at *11 (S.D.N.Y. Mar. 11, 2015) (quoting *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009; *Landau v. Viridian Energy PA LLC*,

223 F. Supp. 3d 401, 415 (E.D. Pa. 2016).  In New York (N.Y. Gen. Bus. Law § 349), a plaintiff need not allege reliance; instead, he need only allege "(1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect, and (3) that the plaintiff was thereby injured." *See Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *66-67 (E.D.N.Y. Sep. 22, 2015) (citing *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608, 709 N.Y.S.2d 892 (2000)).  To prevail under Washington's Consumer Protection Act (Wash. Rev. Code. Ann. § 19.86.120) action, the plaintiff must prove "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179, 1185, 2013 Wash. LEXIS 151, *14, 2013 WL 791816 (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).  Under Michigan law, a plaintiff must allege "[(1)] that the defendant made a material misrepresentation that was false; [(2)] the defendant knowingly made the false representation with the intent that the plaintiff would act upon it; [(3)] that the plaintiff acted in reliance upon it; and [(4)] resulting damages." *In re OnStar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011) (internal citations and quotation marks omitted) (stating that "The provisions of the [Michigan Consumer Protection Act] are to be construed with reference to the common-law tort of fraud.").  The Court considers the sufficiency of the allegations as to each of the elements.  To allege a violation of the Massachusetts Consumer Protection Act ("Chapter 93A"), a plaintiff must show (1) that the defendant engaged in trade or business and committed an unfair or deceptive practice as defined by section 2 of Chapter 93A, (2) economic injury. *Hanrahan v. Specialized Loan Servicing, LLC*, 54 F. Supp. 3d 149, 153 (D. Mass. 2014).

### b.   The FAC Adequately Pleads Causation and Reliance

Contrary to Defendant's assertions, Plaintiffs have adequately pleaded reliance and causation for each of the state consumer protection law claims.  To the extent any allegations are found wanting, Plaintiffs request leave to amend.

Under the California UCL, reliance can be established by a showing that the misrepresentation

was a substantial factor in the purchasing decision. *In re Tobacco II Cases,* 207 P.3d 20, 38-41 (Cal. 2009).  Plaintiff's Colgate and McKnight alleged that they purchased JUUL products (which establishes they viewed the packaging), that their nicotine consumption increased because of those purchases, and that "if [he/she] had known the truth of the matter about JUUL, [he/she] would not have purchased JUUL products." FAC, ¶13-18. "[T]he truth of the matter" is a reference to the increased addictiveness of JUUL products compared to cigarettes, which establishes causation by the failure to warn about the increased addictiveness of nicotine salts in JUULpods.  Plaintiff L.B. pleaded that the JUUL package contained no warnings about nicotine "or that JUUL was specifically designed to put extremely high doses of nicotine into the bloodstream." FAC ¶27-31. She also alleged that she visited the JUUL web site, which the Complaint establishes also does not contain a warning about the highly addictive nature of nicotine salts.  FAC, ¶29, 123-127.  Although the FAC contains no explicit statement that L.B. would not have purchased JUUL products if she had known of the increased nicotine delivery and addictiveness, this is an inadvertent omission as all other plaintiffs' allegations contain such a statement.

The FAC also establishes causation under Washington's Consumer Protection Act ("CPA"). "[K]nowing failure to reveal something of material importance is 'deceptive' within the CPA." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,* 170 P.3d 10, 18 (Wash. 2007) (citing *Robinson v. Avis Rent A Car Sys., Inc*., 106 Wn. App. 104, 116, 22 P.3d 818 (2001).  The Washington Plaintiffs (A. Smith; C. Smith) pleaded that they purchased JUUL products, which establishes that they saw the product packaging. FAC, ¶¶35-42. They also pleaded that they viewed JUUL advertisements (*id.*), none of which warned of the particularly addictive nature of JUUL's nicotine salts (FAC, ¶77).  And as JUUL admits, the package would have stated each JUULpod contained an amount of nicotine roughly equivalent to a pack of cigarettes. Dkt. 40, 24:15-17. The Complaint also pleads that all of JUUL's advertisements portray vaping with JUUL e-cigarettes as an attractive, stylish activity, rather than a means of delivering an addictive drug with long-term adverse health effects (FAC, ¶¶98-104), which is inherently unfair.  Both Washington plaintiffs allege that they would not have purchased JUUL products if they had been warned they were more addictive than cigarettes. This establishes causation under Washington's CPA. *See Indoor Billboard/Washington, Inc.*

*v. Integra Telecom of Washington, Inc.,* 170 P.3d 10 (Wash. 2007) (causation established if affirmative misrepresentation is "but for" cause of injury).

New York minor plaintiff A.U. has pleaded that she was "attracted to the fruit flavors" of the JUULpods and did not realize that JUULpods contained nicotine when she purchased them at a local smoke shop at age 14. FAC, ¶47. Causation is satisfied under New York's Consumer Protection Act if the plaintiff alleges that they saw the misleading statements of which they complain before coming into possession of the product. *Stoltz*, 2015 U.S. Dist. LEXIS 126880, at *67. A.U.'s allegations establish that she saw the JUUL packaging (which has no nicotine warning or warning that nicotine benzoate is especially addictive) prior to purchase and was misled by those omissions.

Michigan plaintiff Benham similarly pleaded that he saw posters, magazine ads, and Facebook ads that attracted him to JUUL products and led him to believe that JUUL would be appropriate for weaning himself from cigarettes. FAC, ¶¶49-50. He also pleaded that he found JUUL's nicotine salts "even more addictive than cigarettes," and would not have purchased them if he had known that they were more addictive. *Id.* This adequately pleads that JUUL's omission of a warning about the particularly addictive nature of nicotine salts was misleading and caused him to purchase their product. It easily distinguishes this case from *Lipov v. Louisiana-Pac. Corp.*, No. 1:12-CV-439, 2013 WL 3805673, at *4 (W.D. Mich. July 22, 2013), where the Plaintiff failed to allege that he saw *any* of the accused advertising materials.

New Jersey minor plaintiff M.H. pleaded that she began using JUUL products at the age of 15. FAC, ¶¶14-19. This establishes exposure to JUUL packaging, which adequately pleads causation for the same reasons discussed for other plaintiffs.

Massachusetts plaintiff Langan and Pennsylvania plaintiff Lagun each pleaded exposure to JUUL advertisements (FAC, ¶¶44, 52), which the Complaint establishes failed to warn about the particularly addictive nature of nicotine salts and portrayed the JUUL products as sleek and stylish, rather than as a means of delivering a particularly potent and addictive form of nicotine.  In Lagun's case, this led to her view the JUUL web site, which was similarly misleading.  FAC, ¶44. This establishes causation for the same basic reasons cited above for other plaintiffs.

In considering whether the above allegations are sufficient to establish reliance, it is worth noting that, under law of California if not all states, Plaintiffs can eliminate the need to plead reliance by establishing exposure to a long-term advertising campaign. *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1047 (N.D. Cal. 2014) ("'[W]here, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.'") (quoting *In re Tobacco II cases*, 46 Cal.4th 298, 328 (2009)). In *Opperman*, the court identified six factors that determine whether or not to apply the longstanding advertising rule, each of which is met here.

"First, to state the obvious, a plaintiff must allege that she actually saw or heard the defendant's advertising campaign." *Id.* at 1048. Plaintiffs Colgate, McKnight, and L.B. alleged facts sufficient to show that each purchased a JUUL product in 2017, which establishes that each was exposed to the product package.  FAC ¶¶ 13, 17, 27. Plaintiffs A. Smith, C. Smith, Lagun, Benham, and Langan each allege facts sufficient to establish both that they viewed the JUUL packages, and that they saw JUUL advertisements. FAC, ¶¶ 36-38, 41, 44, 49, 52.

"Second, the advertising campaign at issue should be sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require the plaintiff to plead each misrepresentation she saw and relied upon." *Opperman*, 87 F. Supp. 3d at 1048. The Court noted that this is a "fact-intensive inquiry," but that a national television advertisement campaign that lasted four years would qualify. *Id.* at 1048–49. Plaintiffs alleged that Defendant has engaged in a nationwide advertising campaign for at least the past three years, including pop-up JUUL parties, magazine and billboard ads, in-store posters, and an extensive social media campaign. FAC, ¶¶3-10, 98-104.

"Third, a plaintiff seeking to take advantage of the exception should describe in the complaint, and preferably attach to it, a 'representative sample' of the advertisements at issue in order adequately to notify the defendant of the precise nature of the misrepresentation claim." *Opperman*, 87 F. Supp. 3d at 1049. Plaintiffs have done that here. FAC ¶¶98-104.

"Fourth, the degree to which the alleged misrepresentations contained within the advertising campaign are similar to each other, or even identical, is also an important factor." *Opperman*, 87 F.

Supp. 3d at 1049. This is also easily satisfied here. Plaintiffs allege that neither the JUUL packaging nor any of the JUUL advertisements disclose that nicotine benzoate salts are more potent and addictive than freebase nicotine and tobacco, or that nicotine consumption is associated with numerous health problems. Plaintiffs further allege that JUUL's "VAPORIZED" campaign uniformly depicts JUULpods being used by fit, healthy attractive people, using bright colors designed to appeal to young audiences, in addition to failing to include warnings about the addictiveness of nicotine and its long-term health effects. FAC ¶¶98-104.

"Fifth . . . a complaint subject to Rule 9(b)'s requirements should plead with particularity, and separately, when and how each named plaintiff was exposed to the advertising campaign." *Opperman*, 87 F. Supp. 3d at 1049. All the Plaintiffs satisfy this with respect to the JUUL product packaging, and Plaintiffs A. Smith, C. Smith, Lagun, Benham, and Langan satisfy this with respect to advertisements. FAC ¶¶12-52. Plaintiff Smith alleged that he saw JUUL ads on social media including Twitter depicting people young enough to be in high school using JUUL products.  FAC, ¶36.  Plaintiff C. Smith similarly alleged that he saw JUUL ads prior to his first purchase on social media such as Instagram.  FAC, ¶41. Plaintiff Lagun saw a JUUL advertisement when buying cigarettes (i.e., presumably at a local store), and then went to JUUL's web site.  FAC, ¶44.  Plaintiff Benham stated that he saw JUUL ads in as posters and in magazines and on Facebook. FAC, ¶49. Plaintiff Langan states that he viewed advertising materials describing the fruity and menthol flavors of JUULpods.  FAC, ¶52.

"Sixth, the court must be able to determine when a plaintiff made her purchase or otherwise relied in relation to a defendant's advertising campaign, so as to determine which portion of that campaign is relevant." *Opperman*, 87 F. Supp. 3d at 1051. Here, Plaintiffs each allege that they have been addicted (i.e., have been purchasing and consuming) JUUL products for a period of 1-3 years, viewed JUUL advertisements over the same time frame, and were attracted to JUUL products by those advertisements. FAC ¶¶38; 41; 45; 49-50; 52.

> **c.    The FAC Adequately Pleads That Reliance Was Reasonable and That Defendant's Conduct Was Likely To Deceive.**

To state a claim under California's UCL, FAL, and CLRA, a plaintiff need only plead that the

defendant's actions, statements, and omissions were likely to deceive a reasonable consumer. *See, e.g., Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (holding that plaintiff need only "show that members of the public are likely to be deceived"); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 679 (2006); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003) (conduct that is "likely to mislead a reasonable consumer" violates the CLRA). "This standard also applies to common law fraud and negligent misrepresentation claims." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). "Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss," although "in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Id*. This is not one of those "rare circumstances."

Defendant objects to Plaintiffs' allegation that reasonable consumers are misled by the label claim, arguing that the "actual label" does not state that the product is made from "exactly the same nicotine content as a pack of cigarettes," and asserting that Plaintiff cannot, therefore, show a misrepresentation. (Dkt. 40 at 24.) Defendant misses the mark. Plaintiff has not alleged that Defendant promised "exactly" the same nicotine as cigarettes but rather that it misled people about the contents of the product and their strength, by using fruit flavors and high-potency nicotine salts and omitting warnings. Plaintiffs' allegations are plausible; a plethora of major news articles has quoted young people all over the country with the same impressions.  FAC, ¶¶133-135. At the motion to dismiss stage this Court must accept Plaintiffs' factual allegation as true. *See Corinthian Colleges*, 655 F.3d at 991; *see also Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 998 (S.D. Cal. 2015) ("What a reasonable consumer would believe is rarely an appropriate subject for a motion to dismiss.") Plaintiffs' allegation is plausible because there is "more than a sheer possibility" (*Corinthian Colleges*, 655 F.3d at 991) that reasonable consumers would expect a product that declares it is "equivalent" to a cigarette to deliver no more addictive nicotine than a cigarette. *See Sandoval*, 145 F. Supp. 3d at 998 ("Plaintiff alleges, among other things, that the IntenseX labeling represents to consumers that the product has aphrodisiac effects,

when it has none. Defendant did not explain why no reasonable consumer could be deceived by such representations. Hence, the Court declines to dismiss Plaintiff's claims on this basis.")

Defendant similarly contends that no reasonable consumer would view the statement that purchasers may cancel autoship of JUULpods at "anytime" as a representation about whether JUUL products themselves are addictive. But the allegations regarding JUUL's subscription service is just one aspect of a widespread marketing campaign that portrayed JUUL's products as cool, hip, and youthful while failing to disclose the full extent of those products' addictiveness. The alleged advertising shows that Defendant intends for consumers to believe that the Products are "cool" and consistent with a healthy, young lifestyle, rather than a means of creating or satisfying a nicotine addiction. On top of all that, the Complaint alleges that JUUL offers discounts to consumers who (i) refer others to purchase JUUL products (i.e., for getting introducing new users to JUUL's addictive product) or (ii) subscribe to JUUL deliveries (i.e., purchase the nicotine supplements in quantities likely to reinforce addiction without even having to think about it). This is like a heroin dealer giving free samples to addicts who introduce the drug to new users, or giving a discount to addicts who buy in bulk. It takes advantage of the addictive nature of the underlying product to hook users into exacerbating their own addiction, as well as addict others. In this context, a statement that the heroin user can "stop anytime" would be misleading. The same is true here with respect to JUUL's "cancel anytime" nicotine subscription service. Both of these practices are unfair. JUUL's "pop-up JUUL bars," billboard advertising, and social media promotion made it appear that the product was not an addictive tobacco product, as such activities not allowed for tobacco products. Compare FAC , ¶98 (JUUL bars) with ¶138 (no sponsorship of cultural events allowed for tobacco products). Given that these practices have already been deemed to be misleading, unfair, and/or unlawful with respect to tobacco, it is reasonable to conclude that they are for JUUL products as well.

### d.    The Accused Misrepresentations are Not Puffery

Defendants claim that their advertising slogan "a satisfying alternative to cigarettes" is "the archetype of puffery." ECF 40 at 23. But the statement must be read in context with the other marketing activities. Even if the statement could arguably constitute puffery "standing on [its] own," it

"certainly contributes . . . to the deceptive context of the packaging as a whole." *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008). Plaintiffs allege Defendant labels its product with the phrase "equivalent to about 1 pack of cigarettes" to deceive reasonable consumers into believing that nicotine benzoate is just like freebase nicotine, when it is not. Courts regularly conclude that similar advertising campaigns are not mere puffery. *E.g.*, *Williams*, 552 F.3d at 939 n.3 ("Given the context of this statement, we decline to give Gerber the benefit of the doubt by dismissing the statement as puffery. 'It is not difficult to choose statements, designs, and devices which will not deceive.'"); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015) ("A reasonable consumer reading these statements in the context of Uber's advertising campaign could conclude that an Uber ride is objectively and measurably safer than a ride provided by a taxi or other competitor service."); *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1070 (C.D. Cal. 2012) ("Although these statements, standing alone, might constitute puffery, they cannot be dismissed as 'generalized, vague and unspecific assertions' when read in the context of Bradley's February 9, 2011 statements as a whole.").

### e.     Plaintiffs Have Alleged a Failure to Warn.

Defendant incorrectly asserts that JUUL e-cigarettes, which have only existed for three years, present an "obvious danger" to any reasonable person that insulates Defendant from potential liability on a failure to warn theory.  As a matter of law, the alleged obviousness of a danger is reserved for disposition at trial on a full factual record, not in a motion to dismiss on the pleadings.  *Kimco Staffing Servs. v. Wolverine World Wide, Inc.*, No. CV-14-09880-MWF (JPRx), 2015 U.S. Dist. LEXIS 187256, at *7 (C.D. Cal. July 22, 2015) (denying motion to dismiss); *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 990 (N.D. Cal. 2014) (denying summary judgment on "whether Plaintiff can be charged with knowledge of the dangerous propensity" of product because, among other reasons, "adequacy of a warning is usually a question of fact for the jury"); *Ybarra v. Overstock*, No. 09-CV-217-H (CAB), 2010 U.S. Dist. LEXIS 150266, at *6-8 (S.D. Cal. Feb. 1, 2010); *Fellner v. Tri-Union Seafoods, L.L.C.*, Civil Action No. 06-CV-0688 (DMC), 2010 U.S. Dist. LEXIS 36195, at *25-28 (D.N.J. Apr. 13, 2010) (collecting authority from various state and federal courts for the proposition that determining an obvious danger "is typically an issue of fact that is not appropriately resolved on the pleadings.");

*Metzgar v. Playskool Inc.*, 30 F.3d 459, 465-66 (3d Cir. 1994) (collecting authority for the same proposition); *D.C. v. Sears, Roebock & Co.*, No. C06-5391RJB, 2007 U.S. Dist. LEXIS 53452, at *17 (W.D. Wash. July 24, 2007) (denying summary judgment on same issue); *Valente v. Oak Leaf Outdoors, Inc.*, No. 14-12892, 2015 U.S. Dist. LEXIS 95820, at *28-36 (E.D. Mich. July 23, 2015) (same); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 124 (2d Cir. 2013) (affirming jury verdict on failure to warn claim despite obvious danger defense).

Even if the Court were to credit Defendant's argument, "the obviousness of potential danger cuts against [JUUL]," because Defendant marketed and sold its e-cigarettes as a safe *alternative* to traditional cigarettes.  *See Lovett v. Omni Hotels Mgmt. Corp.*, No. 14-cv-02844-RS, 2016 U.S. Dist. LEXIS 25480, at *22-25 (N.D. Cal. Feb. 29, 2016) (denying summary judgment on failure to warn claim because obviousness of the risk involved only confirmed plaintiff's theory that the defendant should have done more to mitigate the known risk with a warning).  Moreover, factually, it is reasonable to infer that end users would not attribute the same risks to JUUL e-cigarettes as traditional cigarettes, given that: (1) JUUL is sold in flavors including "'cool' cucumber," "fruit medley," "cool" mint, "mango," and "crème brulee"—flavors which Congress banned in cigarettes,[10] (2) until a few weeks ago, JUUL bore no nicotine or other warning on the device packaging itself, unlike cigarettes, (3) the JUUL device contains a light that illuminates in the colors of the rainbow rather than appearing to combust any material, FAC ¶ 69, and (4) JUUL produces almost no vapor, thereby making it appear that one is merely inhaling air. Several plaintiffs have alleged that they had no idea the product contained nicotine.  FAC ¶¶ 21, 27, 47.  Plaintiff Nelson has alleged that she initially thought her 13-year-old daughter's JUUL device was a pencil lead container, FAC ¶ 31, and her neighbor's teenage son duped her into searching his JUUL on the pretense that he had misplaced a USB drive full of important schoolwork. FAC ¶¶ 31-32. *See Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 242, 700 N.E.2d 303, 677 N.Y.S.2d 764 (1998) ("[T]he open and obvious defense generally should not apply when there are aspects of the hazard which are concealed or not reasonably apparent to the user."); *Evans v. Lorillard Tobacco Co.*, 990 N.E.2d 997, 1022-24 (Mass. 2013) (reasonable jury could find that the risks of cigarette smoking were not obvious even after they warned that cigarettes may be hazardous to

---

[10] 21 U.S.C. § 387g.

health because, among other reasons, cigarette manufacturers "engaged in a calculated effort through advertising and public statements" to cast doubt on the risks").  Defendant's small print statement that a JUULpod is equivalent to a pack of cigarettes is also insufficient because, among other things, Plaintiffs have alleged that a JUUL delivers a much more potent, dangerous dose of nicotine.  *See Tompkin v. American Brands*, 219 F.3d 566, 572 (6th Cir. 2000) ("The 'common knowledge' requirement is emasculated if a defendant may show merely that the public was aware that a product presented health risks at some vague, unspecified, and undifferentiated level.").  Moreover, unlike in the case of cigarettes, where the user retains the package to carry the cigarettes and is likely to see the warning every time she takes out a cigarette, the JUUL package plays no functional role and would be discarded soon after purchase; no warning appears on the device itself.

### f.    Plaintiffs' Fraud and Negligent Misrepresentation Claims are Well-Pled

Defendant is wrong to argue that each of the states requires Plaintiffs to "prove" actual reliance at the motion to dismiss stage for their fraud and negligent misrepresentation claims.  *See* Def. Br. at 27.  Preliminarily, at least for the omission-based claims, most courts relax the pleading requirements because "[l]ike Sherlock Holmes' dog that did not bark in the night, an actionable omission obviously cannot be particularized as to 'the time, place and contents of the false representations' or 'the identity of the person making the misrepresentation.'"  *Bonfield v. AAMCO Transmissions*, 708 F. Supp. 867, 875 (N.D. Ill. 1989); *see also Cohan v. Pella Corp.*, 2015 U.S. Dist. LEXIS 144794, at *10 (D.S.C. Oct. 26, 2015) (collecting authority for the proposition from across the country).  And with reliance, Plaintiffs need only show that "one would have behaved differently, which 'can be presumed, or at least inferred, when the omission is material.'"  *Sloan v. GM, LLC*, 287 F. Supp. 3d 840, 874 (N.D. Cal. 2018) (quoting *Daniel*, 806 F.3d at 1225).  As the California Supreme Court said in the *Tobacco II Cases*, which is particularly apropos given the facts here, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material," adding that "[a] misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant

that the jury could not reasonably find that a reasonable man would have been influenced by it." *Tobacco II Cases*, 207 P.3d at 39 (internal quotation marks omitted); *see also Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1193–94 (2014) (reliance on omission sufficiently pled where plaintiff alleges that "had the omitted information been disclosed, [she] would have been aware of it and behaved differently.").

As explained above, Plaintiffs have: (1) pled that Defendant omitted material information and misrepresented material facts about JUUL e-cigarettes, including on the label itself, (2) pled that had Defendant provided truthful information about products – particularly their addictiveness – Plaintiffs would not have purchased the products. Nothing more is required. Nonetheless, Plaintiffs have also pled that Defendant marketed its products to youth in ways that encouraged youth to use their products, and that Defendant designed its products with youth-friendly flavors and created a nicotine formula specifically designed to create and sustain addiction. This is the very sort of fraudulent conduct at issue in *USA v. Philip Morris*, No. 99–2496 (GK) (August 17, 2006). The fact that the defendants in that case used combustible, instead of electronic, cigarettes is of no moment. The aim in both cases was the same: create addiction for commercial gain.

### g.     Plaintiffs' Strict Liability Claims are Well Pled

Defendant faults Plaintiffs for "conclusorily assert[ing]" their strict liability design defect claims, but this is not so. *See* Def. Br. at 29-30.  Plaintiffs plead under the "consumer expectation" test and, in the alternative, the "risk-utility" test. *See* FAC, ¶¶ 236-247; Fed. R. Civ. P. 8(e)(2) (allowing pleading in the alternative).  Under the former, "a product is defective in design if the plaintiff proves that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Perez v. VAS S.p.A.*, 188 Cal. App. 4th 658, 676, 115 Cal. Rptr. 3d 590, 604 (2010).  The facts pled here are similar to those in *Boeken v. Philip Morris, Inc.*, 127 Cal. App. 4th 1640, 1668, 26 Cal. Rptr. 3d 638 (2005), where the court found that there was substantial evidentiary support for a jury verdict for the plaintiff alleging that Marlboro Light cigarettes were defective under the consumer expectations test. *See id.* at 60.  There, the court credited testimony that most consumers believe light cigarettes are safer than regular cigarettes and that the Marlboro Light cigarettes were actually less safe than regular cigarettes since they, among other things, delivered

higher levels of nicotine.  *Id.* at 1669;[11] *see also Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1041 (C.D. Cal. 2009) (denying summary judgment when "Plaintiff's evidence suggests that Defendants' nicotine manipulation contributed to her addiction and caused her to smoke more cigarettes.").  Here, Plaintiffs present similar allegations, describing in detail that "JUUL is delivering doses of nicotine that are several time[s] higher than those allowed in normal cigarettes," and the dangers this nicotine consumptions poses, all while consumers were told by JUUL that a single JUULpod contains an amount of nicotine about equal to a pack of cigarettes, and otherwise perceive e-cigarettes to be a healthier alternative to traditional cigarettes.  *See, e.g.*, FAC, ¶¶ 7, 8, 84, 89, 128.  Hence, Plaintiffs' claim should be allowed to proceed.

Even if Plaintiffs had not adequately alleged a design defect claim under the consumer expectations test, Plaintiffs' design defect claims are stated under the alternative risk-benefit test.  The risk-benefit test deems a product design defective if "the product's design proximately caused injury and the defendant fails to prove, in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design." *Perez*, 188 Cal. App. 4th at 676.  Plaintiffs have alleged that they suffered injury by becoming severely addicted to JUUL e-cigarettes and JUULpods after purchasing and using them because of the products' design, which delivers extreme levels of nicotine.  *See* FAC., ¶¶ 7, 8, 13-15, 17-18, 21-25, 27-31, 36-39, 41-42, 44-45, 46-47, 49-50, 52, 84, 89, 128.  Defendant does not, and cannot, challenge these facts.  Because Plaintiffs have alleged that the design proximately caused their injuries, "the burden shifts to Defendant to establish that the benefits of the challenged design, when balanced against such factors as the feasibility and cost of alternative designs, outweigh its inherent risk of harm." *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2016 U.S. Dist. LEXIS 123455, at *56 (N.D. Cal. Sep. 12, 2016) (internal citations and quotations omitted).  Defendant has failed to carry its burden.  *See id.* at *56-57.  The claims must proceed, as they have in scores of other factually analogous suits.  *See, e.g., Izzarelli v. R.J. Reynolds Tobacco Co.*, 321 136 A.3d 1232, 1251-54 (Conn. 2016) (collecting cigarette cases from other jurisdictions in which plaintiffs were permitted to proceed on their strict

---

[11] The Court also rejected the argument that Defendant makes here that the design defect is simply a failure to warn claim, and therefore preempted.  *Id.* at 1669.

liability theories well beyond the pleading stage).[12]

As for Plaintiffs' manufacturing defect claim, Plaintiffs submit that because they have not yet had the opportunity for discovery, they cannot conclusively characterize the excessive nicotine or benzoic acid in JUUL e-cigarettes as the result of a design defect, rather than a manufacturing defect. Plaintiffs' facts do, however, underscore the seriousness of the problem, and "are sufficient to establish their right to discovery to investigate the potential causes." *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1177-78 (N.D. Cal. 2017).

### h. Plaintiffs' Unjust Enrichment Claims are Well Pled.

Defendant suggests that Plaintiffs have not alleged any wrongdoing on the part of the defendant such that defendant's retention of the benefit would be unjust. Mot. at 27. "Unjust enrichment and restitution describe the theory underlying a claim that the defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request' and it is the return of that benefit which is the remedy sought in a quasi-contract action." *Goldman v. Bayer AG*, No. 17-cv-0647-PJH, 2017 U.S. Dist. LEXIS 117117, at *23 (N.D. Cal. July 26, 2017) (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015). In *Goldman*, cited by Defendant, the court held that purchasers of gummy vitamins sold under the "One A Day" brand name had not stated a claim for unjust enrichment because the gummy vitamins' labels stated that the daily dose was two gummy vitamins. In dismissing all of plaintiff's claims, the court relied on two nearly identical cases against the One A Day brand, holding that no reasonable consumer would be deceived because the "labeling explicitly tells consumers what they need to know about a product." *Goldman*, at *8.

Here, Plaintiffs allege, and Defendant concedes, that every JUULpod package states that a JUULpod contains as much nicotine as a pack of cigarettes. FAC ¶ 89; Schwing Decl., Ex. A. Plaintiffs

---

[12] Defendant's citations to *Ferrari v. Nat. Partner, Inc*., No. 15-CV-04787-LHK, 2017 WL 76905 (N.D. Cal. Jan. 9, 2017); *Dilley v. C.R. Bard, Inc*., No. 2:14-CV-01795-ODW, 2014 WL 2115233, at *4 (C.D. Cal. May 21, 2014); and *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149 (E.D. Cal. 2010) do not help its cause. In those cases, the plaintiff broadly alleged a design defect without any reference to the consumer expectations or risk-benefits test, let alone facts to support either theory. By contrast, here, Plaintiff has pled both (in the alternative), and articulated detailed and concrete facts to support claims under the theories.

have alleged that this nicotine equivalency statement was intended to—and did—mislead consumers into purchasing a product that, by design, delivers far more nicotine to the bloodstream than a cigarette in a manner that has a more potent narcotic effect than a cigarette, increasing the risk of abuse and addiction. FAC ¶¶ 81-84.

Plaintiffs have also alleged that Defendants created marketing campaigns that would appeal to youth in order to stimulate youth initiation, FAC ¶¶ 98-104, distributed those campaigns using youth-filled social media networks, *id.* ¶ 114-122, created a youth-friendly pricing model. FAC ¶ 107-110, and misrepresented or omitted warnings of the risks its products posed. *Id.* ¶¶ 85-92. On nearly identical facts, this conduct has been held to be unlawful. *See USA v. Philip Morris*, No. 99-cv-2396, ECF 5732, ¶ 3692. And the Supreme Court of California has recognized the validity of an unjust enrichment claim arising from cigarette advertisements targeting youth:

> As early as 1891, the Legislature cared deeply enough about smoking and minors that it prohibited the sale of cigarettes to them, just as it earlier had banned minors from houses of prostitution and would later ban them from prizefights. For over a century, with watchful eye, in its role as *parens patriae*, it has maintained a paternalistic vigilance over this vulnerable segment of our society. It is now asserted that plaintiff's effort to tread upon Tobacco Road is blocked by the nicotine wall of congressional preemption. The federal statute does not support such a view. Congress left the states free to exercise their police power to protect minors from advertising that encourages them to violate the law. Plaintiff may proceed under that aegis.

*Mangini v. R. J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057, 1073-74 (1994), *overruled on other grounds by In re Tobacco II Cases*, 41 Cal. 4th 1257 (2007).

### i.   Plaintiffs' Breach of Express and Implied Warranty Claims are Well-Pled

JUUL argues that Plaintiffs (1) failed to specify the representations giving rise to JUUL's breaches of express warranties; and (2) an express warranty specific to the JUUL device (which is the only JUUL product subject to an express warranty) governs breaches of JUULpod warranties. Mot. at 31-32.  Each of these arguments is misplaced.

Plaintiffs have pleaded specific breaches of express warranties in connection with the labeling and marketing of JUUL products, including that JUUL use delivers less nicotine to the bloodstream than a cigarette, that JUULpods are equivalent to a pack of cigarettes, and that 10 puffs of a JUUL was

equivalent to smoking a cigarette. FAC, ¶¶ 263 – 267; *see also* Schwing Decl., Ex. A (JUULpod label). And, as detailed in paragraphs 86 – 90 of the FAC, JUUL's affirmations of fact about the nicotine content of JUULpods are more than sufficient to raise Plaintiffs' right to relief above the speculative level. *See*, e.g., *Bohac v. Gen. Mills, Inc.*, No. 12-cv-05280-WHO, 2014 U.S. Dist. LEXIS 41454, at *28-30 (N.D. Cal. Mar. 26, 2014) (finding similarly specific affirmative representations created express warranties). For this reason, JUUL is wrong to argue that Plaintiffs have not provided the "exact terms of the warranty" and to rely upon *Tietsworth v. Sears, Roebuck & Co.*, No. C 09-00288 JF (HRL), 2009 U.S. Dist. LEXIS 40872, at *6 (N.D. Cal. May 14, 2009). Here, Plaintiffs' claims do not arise out of an express warranty against defects in materials and workmanship, and the FAC details the specific affirmations of fact and promises giving rise to their claims.[13]

Rather than address Plaintiffs' warranty claims head-on, JUUL argues that Plaintiffs' claims arise out of JUUL's Limited Warranty, which JUUL argues is incorporated by reference into the FAC, and that Plaintiffs' claims fail because of the disclaimer contained in the warranty. Schwing Decl., Ex. G. JUUL is wrong for at least three reasons. *First*, the express warranties Plaintiffs' incorporated into the FAC are representations of fact made on JUUL's packaging and marketing materials. Defendant wrongly attempts to incorporate its warranty by reference when Plaintiffs' claims do not arise out of that warranty. Mot. at 31, fn. 19. *Second*, JUUL's Limited Warranty *solely applies* to the JUUL device. It does not apply to the JUULpods, which are sold separately from the JUUL device ("JUULpods themselves are not covered by this warranty"). Schwing Decl., Ex. C.. Relatedly, the Limited Warranty does not conceivably insulate JUUL from false or misleading claims made in the marketing or labeling of JUULpods. *Third*, even assuming that the warranty in the JUUL device's disclaimer applied to

---

[13] JUUL argues that Plaintiffs' breach of express warranty claims under Massachusetts and Washington law must be dismissed because Plaintiffs have not properly alleged reliance. JUUL misses the mark. The Official Commentary to Washington Revised Code makes clear that actual reliance is not required to state a claim under Rev. Code Wash. (ARCW) § 62A.2-313 where, as here, affirmations of fact are made on the product's packaging as detailed herein: "affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." Rev. Code Wash. (ARCW) § 62A.2-313 (Official Comment, ¶ 3). The Official Commentary to the Annotated Laws of Massachusetts provides identical language. *See* ALM GL ch. 106, § 2-313 (Official Comment, ¶ 3).

---

1   Plaintiffs' claims, a disclaimer of liability is valid only if "the buyer has knowledge or is chargeable

2   with notice of the disclaimer before the bargain is complete." *Burr v. Sherwin Williams Co.*, 42 Cal. 2d

3   682, 693 (1954). Whether Plaintiffs had actual or constructive knowledge of JUUL's disclaimer is a

4   fact-dependent question, and JUUL has not established any facts about the timing or manner of

5   warranty delivery. *See, e.g.*, *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-485 JM (JMA), 2013 WL

6   5816410, at *15 (S.D. Cal. Oct. 29, 2013) (denying motion to dismiss where plaintiff lacked reasonable

7   opportunity to view disclaimer prior to purchase).[14] Accordingly, JUUL's motion to dismiss Plaintiff's

8   express warranty claims should be denied.

9          **j.**    **Plaintiffs' Breach of Implied Warranty Claims Are Well-Pled**

10        Defendant's motion to dismiss Plaintiffs' implied warranty claims misses the mark.  Products

11   can be found unmerchantable under the Uniform Commercial Code when they possess features or

12   defects that "so affect[] their safety, reliability, or operability as to render them unfit." *In re Myford*

13   *Touch Consumer Litig.*, 291 F. Supp. 3d 936, 947 (N.D. Cal. 2018); *see also Persad v. Ford Motor Co.*,

14   No. 17-12599, 2018 U.S. Dist. LEXIS 117551, at *12-15 (E.D. Mich. July 16, 2018) ("Plaintiffs need

15   only allege that the defect at issue impacts the safe operation of the [product]."); *Altronics of*

16   *Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992) (implied warranty of

17   merchantability is designed "to protect buyers from loss where the goods purchased are below

18   commercial standards."). Plaintiffs have sufficiently alleged that the operation of JUUL products so

19   compromise consumer safety as to breach the implied warranty of merchantability.  *See* FAC ¶¶ 2-10,

20   14, 17, 24, 31, 37-38, 41, 44, 47, 49-50, 52, 71-92, 133-135.  To the extent Defendant believes

21   otherwise, "that evidence is for the trier of fact to consider and weigh against Plaintiffs' competing

22   evidence." *In re Myford Touch Consumer Litig.*, 291 F. Supp. 3d at 949.

---

24   [14] The cases that JUUL cites do not compel a contrary conclusion. In each case JUUL cites, unlike here,

25   the disclaimer applied to the one and only product or service that was the subject of the litigation, and
there were no questions surrounding the circumstances of the disclaimer's communication to plaintiffs.

26   *See, e.g.*, *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 U.S. Dist. LEXIS 79262, at *17
(N.D. Cal. July 27, 2007), *Berman v. ADT LLC*, No. 12-7705 (RBK/JS), 2013 U.S. Dist. LEXIS 182994,

27   at *12 (D.N.J. Dec. 13, 2013), *Riegel v. Medtronic, Inc.*, No. 99-CV-0649, 2003 U.S. Dist. LEXIS
27454, at *8 (N.D.N.Y. Dec. 2, 2003), and *Mattern Hatchery, Inc. v. Bayside Enters., Inc.*, 775 F. Supp.

28   803, 808 (M.D. Pa. 1991).

Defendant also ignores that a breach of implied warranty of merchantability claim is stated under other prongs of the UCC, namely that the product "pass without objection in the trade under the contract description," Cal. Comm. Code § 2314(2)(a), and "conform to the promises or affirmations of fact made on the container or label if any." *Id.* § 2314(2)(f).[15]  With the former, "[c]rucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade. This determination may depend on testimony of persons familiar with the industry standards and local practices and is a question of fact." *Pisano v. American Leasing*, 146 Cal.App.3d 194, 198, 194 Cal. Rptr. 77 (1983).  For example, a claim was stated under this prong when a consumer alleged that one brand's "Gummy Cubs" did not contain real ingredients even though similar products from others in the industry did contain real ingredients or had different labeling.  *See Arabian v. Organic Candy Factory*, No. 2:17-cv-05410-ODW-PLA, 2018 U.S. Dist. LEXIS 45833, at *22-24 (C.D. Cal. Mar. 19, 2018).  Here, "JUUL is delivering doses of nicotine that are several times higher than those allowed in normal cigarettes," an amount that is three times the legal limit in the European Union, and far higher than its competitors. *See* FAC ¶¶ 4, 84-92.  This is enough to state a claim under the "passing without objection in the trade" prong.  *See Arabian*, 2018 U.S. Dist. LEXIS 45833, at * 22-24.

Plaintiffs also state a claim under the "conform to the promises or affirmations of fact made on the container or label" prong because JUULpods do not match representations on their labels, rendering them unmerchantable.  *See, e.g., In re ConAgra Foods, Inc*., 908 F. Supp. 2d 1090, 1112 (C.D. Cal. 2012) (denying motion to dismiss on this prong); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods., Liab., Litig.*, No. 1:15-md-2627 (AJT/TRJ), 2017 U.S. Dist. LEXIS 61362, at *85-89 (E.D. Va. Apr. 21, 2017) (denying summary judgment on this claim under the state law implied warranty of merchantability provisions); *Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, 2002 WL 1488861, at *2 (N.D. Ill. July 11, 2002) (permitting breach of implied warranty claim against sellers based on label suggesting products were made by Native Americans and finding that fitness of product for ordinary use was irrelevant).  Specifically, Plaintiffs have clearly pled that the representation of JUULpods as "approximately equivalent to 1 pack of cigarettes" is false, breaching the implied warranty of merchantability.  *See* FAC ¶¶ 86-90.

---

[15] All of the states at-issue have adopted these provisions.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's motion dismiss or grant Plaintiff leave to file a second amended complaint.

Dated:  August 22, 2018

**GUTRIDE SAFIER LLP**

/s/ Seth A. Safier/s/
SETH A. SAFIER (State Bar No. 197427)
ADAM J. GUTRIDE (State Bar No. 181446)
TODD KENNEDY (State Bar No. 250267)
ANTHONY PATEK (State Bar No. 228964)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, admitted pro hac vice
Jason Rathod, admitted pro hac vice
Esfand Nafisi (State Bar No. 320119)
412 H Street NE, Suite 302
Washington, D.C. 20002
Telephone:  (202) 470-3520
Facsimile: (202) 800-2730

*Attorneys for Plaintiffs*