UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY COLGATE, et al., | Case No. 18-cv-02499-WHO |
| Plaintiffs, | |
| v. | **ORDER PARTIALLY GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE** |
| JUUL LABS, INC., | |
| Defendant. | Re: Dkt. Nos. 40, 41 |

Plaintiffs are adults and minors from seven states bring class claims against defendant JUUL Labs, Inc. ("JUUL"), a market leader in the burgeoning electronic cigarette industry, for various state law violations related to JUUL's advertising and labelling of its electronic cigarettes. JUUL argues that the Tobacco Control Act, 21 U.S.C. § 387 et seq. ("TCA") preempts plaintiffs' claims. It is partially correct concerning its product labelling, because the TCA is very detailed about what must appear on the label. But claims that JUUL misrepresents the amount of nicotine in its product are not preempted. JUUL also moves to dismiss plaintiff's First Amended Complaint (FAC), because it fails to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements, to state a claim, and to identify applicable state laws. As discussed below, I grant in part and deny in part JUUL's motion to dismiss, with leave to amend. JUUL's motion to strike plaintiffs' nationwide class allegations pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D) is not ripe and is denied.

### BACKGROUND

Plaintiffs are thirteen individuals from seven states: California, New Jersey, Washington, Pennsylvania, New York, Michigan, and Massachusetts. First Amended Complaint ("FAC") [Dkt. No. 24] ¶¶ 12-52. Plaintiffs fall into two categories, (1) adults who use JUUL's electronic nicotine

delivery systems ("ENDS") and (2) minors who use JUUL's ENDS.  Plaintiffs Bradley Colgate, Kaytlin McKnight, Anthony Smith, Corey Smith, Kacie Ann Lagun, Tommy Benham, and David Langan fall into the first group.  ("Adult Plaintiffs") Id.  Except for McKnight, the adult plaintiffs smoked cigarettes prior to using JUUL's ENDS.  The second group consists of M.H. and her mother and natural Guardian Jennifer Hellman, A.U. and her mother and natural guardian Commitante, and Jill Nelson, who appears to bring claims on behalf of her daughter L.B.  ("Minor Plaintiffs") Id.

JUUL is a Delaware corporation with its principal place of business in San Francisco, California.  Id. ¶ 53.  PAX Labs, Inc. ("PAX") is also a Delaware corporation with its principal place of business in San Francisco, California.  Id. ¶ 54.  JUUL originally operated under the name PAX Labs, Inc.  Id. ¶ 53.  In 2017, it was renamed JUUL Labs, Inc. and a new company was spun out as Pax Labs, Inc.  Id.

# I. JUUL'S PRODUCTS

JUUL manufactures an ENDS about the size and shape of a pack of chewing gum.  Id. ¶ 67.  The ENDS consists primarily of a rechargeable battery and heating element.  Id.  Consumers purchase disposable pre-filled pods of JUUL's patented nicotine solution ("pods") which attach to the ENDS.  Id.  JUUL's ENDS and pods are proprietary and do not work with other ENDS systems.  Id.  A user "vapes" from the ENDS by inhaling through it, triggering a sensor that activates the heating element, converting the liquid nicotine contained in the pod to an inhalable vapor.  Id. ¶ 68.  Pods are sold in packs of four and in a variety of flavors, including mango, cool cucumber, fruit medley, cool mint, and crème brulee.  Id. ¶ 70.

The formulation in JUUL's pods combines benzoic acids with nicotine to produce nicotine salts.  Id. ¶ 80.  Plaintiffs allege that nicotine salts are absorbed into a user's body faster and create a more pronounced effect than the nicotine in traditional cigarettes.  Id. ¶¶ 79-82.  They cite a study by James F. Pankow ("Pankow Study") finding that JUUL's pods contain 6.2% nicotine salt, rather than the 5% nicotine advertised.  Id. ¶ 83.  They also cite the same study to claim that JUUL uses a higher level of benzoic acid in their retail pods than was tested when JUUL applied for patent No. 9,215,895 ("the '895 patent").  Id.  They quote JUUL's website that "JUULpod is

designed to contain approximately 0.7mL with 5% nicotine by weight at time of manufacture which is approximately equivalent to 1 pack of cigarettes or 200 puffs." *Id.* ¶ 89.

Plaintiffs allege that JUUL's packaging has changed multiple times since 2015. *Id.* ¶ 77. The packaging bears a California Proposition 65 nicotine warning indicating that the product contains a substance known to cause cancer, and a warning to keep pods away from children and pets. *Id.* There is no nicotine warning on the ENDS or pods themselves. *Id.* The product labeling does not contain any information about the known effects, or unknown long-term effects, of vaping/inhaling nicotine salts. *Id.*

## II. JUUL'S ADVERTISING

In June 2015, JUUL launched its multimillion-dollar "Vaporized" advertising campaign to promote its new product. *Id.* ¶ 98. JUUL advertised on a 12-panel display over Times Square in New York City, as well as in the front spread of Vice magazine's cover issue. *Id.* The advertisements featured young men and women using JUUL's ENDS. *Id.* JUUL also launched a number of "pop-up JUUL bars" in Los Angeles, New York City, and the Hamptons. *Id.* Plaintiffs allege that JUUL's ads utilize the same themes that tobacco companies used to advertise to young people, including "independence, adventurousness, sophistication, glamour, . . . social inclusion, sexual attractiveness, thinness, popularity, rebelliousness, and being 'cool'". *Id.* ¶ 99. They state that to the extent that the "Vaporized" advertisements disclosed that JUUL products contained nicotine, the warnings were in small print against low-contrast backgrounds. *Id.* ¶ 103.

JUUL also advertised on a number of social media platforms including Twitter, Instagram, and Facebook. *Id.* ¶ 114. Plaintiffs cite a study that found that JUUL grew nearly 700% despite spending "no recorded money" on major advertising channels and only $20,000 on business to business advertising. *Id.* ¶ 116. The study concluded that JUUL was taking advantage of the reach and accessibility of social media "because there are no restrictions" on social media advertising. *Id.* ¶ 121.

## III. JUUL'S SALES

Plaintiffs allege that JUUL's products are primarily sold out of gas stations. *Id.* ¶ 111. They claim that JUUL's retail locations do not provide signs, warnings, or other indicators

concerning the existence, danger, or amount of nicotine in JUUL products. *Id.* ¶ 112. A pack of four JUUL pods cost approximately $13. *Id.* ¶ 108. JUUL offers a 15% discount to purchasers who refer others to purchase JUUL's ENDS or pods. *Id.* ¶ 109.

JUUL also owns and operates www. juullabs.com and www.juulvapor.com. *Id.* ¶ 123. Customers may purchase the ENDS or pods from JUUL's websites. *Id.* ¶ 124. Plaintiffs allege that although JUUL represents that it uses state-of-the-art age verification for website purchases, it has been improperly implemented and numerous minors have been able to purchase products or obtain warranty service. *Id.* ¶ 127.

JUUL also offers a 15% discount to purchasers who join their pod subscription service. *Id.* ¶ 110. It asserts states that consumers may cancel their subscription at any time. *Id.* ¶ 129.

Minor Plaintiffs allege that they were able to obtain JUUL's products, despite the prohibition on the sale of ENDS to those under the age of 18. M.H., L.B. and A.U. state that they have purchased pods at nearby stores which readily sell JUUL's products to minors. *Id.* ¶¶ 23, 30, 47. M.H. also asserts that pods are sold in her school by older students. *Id.* ¶ 23. L.B. claims that, at the age of 14, she was able to obtain a warranty replacement through JUUL's website in November 2017. *Id.* ¶ 29.

## LEGAL STANDARD

### I. MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss if a claim fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555,

570.

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

In deciding a motion to dismiss for failure to state a claim, the court accepts all of the factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## II. MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). In addition, courts often require some showing of prejudice by the moving party before granting a motion to strike. *Hernandez v. Dutch Goose*, Inc., No. C 13-03537 LB, 2013 WL 5781476, at *5 (N.D. Cal. Oct. 25, 2013).

"If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits." *Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv., Inc.*, 994 F. Supp. 2d 1082, 1090-91 (E.D. Cal. 2014). In resolving a motion to strike, I view the pleadings in a light most favorable to the nonmoving party. *Platte Anchor Bolt*, 352 F.

Supp. 2d at 1057.

**DISCUSSION**

Plaintiffs bring 11 causes of action: (1) False Advertising; (2) Violation of Consumers Legal Remedies Act, California Civil Code §§ 1750, et seq., and similar laws of other states; (3) Fraud; (4) Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200 and similar laws of other states; (5) Unjust Enrichment, (6) Strict Liability – Failure to Warn; (7) Strict Product Liability – Design Defect; (8) Strict Liability – Manufacturing Defect; (9) Breach of Implied Warranty of Merchantability; (10) Breach of Express Warranty; and (11) Negligent Misrepresentation. They propose to define the class as "[a]ll persons who purchased, in the United States, a JUUL e-cigarette and/or JUULpods." *Id.* ¶ 162. They also allege a subclass consisting of "[a]ll class member[s] who at the time of their purchase were under the age of 18. *Id.* ¶ 163.

JUUL moves to dismiss for three reasons. First, they argue that plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA") as amended by the TCA, which provides the Food and Drug Administration ("FDA") with exclusive authority to promulgate regulations on ENDS labeling. Second, they contend plaintiffs' fraud claim fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. Third, they assert that plaintiffs' failed to allege sufficient facts to plausibly satisfy the elements of any of their claims.

**I. EXPRESS PREEMPTION**

JUUL argues that plaintiffs' false advertising claim must be dismissed because it is expressly preempted by the FDCA as amended by the TCA and the relating implementing regulations. Motion to Dismiss ("Mot. to Dismiss") [Dkt. No. 40] at 9-13. JUUL contends that under the TCA's preemption provision, 21 U.S.C. § 387p(2)(A), the labelling requirements for ENDS are prescribed solely by 81 Fed. Reg. at 28988. *Id.*

**A. Relevant Statutes and Regulations**

The FDCA was enacted in 1938 and prohibits the misbranding of food. 21 U.S.C. § 301 et

seq.  In 2009, Congress enacted the TCA to grant the FDA authority to regulate tobacco products

under the FDCA.  *See* 21 U.S.C. § 387a(a).  In enacting the TCA, Congress found that nicotine is

an addictive drug and that it was in "the public interest for Congress to adopt legislation to address

the public health crisis created by actions of the tobacco industry[.]"  Pub. L. 111-31, Div. A, § 2

(codified at 21 U.S.C. § 387a)(2009)).

On May 10, 2016, the FDA issued a final rule titled "Deeming Tobacco Products To Be

Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking

Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco

Products and Required Warning Statements for Tobacco Products."  ("FDA Rule") 81 Fed. Reg. §

28974 (May 10, 2016) (codified at 21 C.F.R. pts. 1100, 1140, 1143).  The FDA Rule found that

ENDS were deemed "covered tobacco products" and fell under the FDA's regulatory authority.

81 Fed. Reg. §§ 28974, 28976.  Covered tobacco products, such as ENDS, may not be sold to

individuals under the age of 18.  81 Fed. Reg. § 28974.

**B. Preemption Under the TCA**

Express preemption occurs when there is "language in the federal statute that reveals an

explicit congressional intent to pre-empt state law."  *Barnett Bank of Marion Cnty., N.A. v.

Nelson*, 517 U.S. 25, 31 (1996).  When presented with the task of interpreting a statutory provision

that expressly preempts state law, courts must "start with the assumption that the historic police

powers of the States were not to be superseded by the Federal Act unless that was the clear and

manifest purpose of Congress."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal

citations omitted).  "The purpose of Congress is the ultimate touchstone in every pre-emption case

and any understanding of the scope of a pre-emption statute must rest primarily on a fair

understanding of congressional purpose."  *Id.* at 485-86 (internal quotation marks and citations

omitted).  Courts must look primarily to the "language of the pre-emption statute and the statutory

framework surrounding it" . . . as well as the "structure and purpose of the statute as a whole" and

how the "surrounding regulatory scheme [affects] business, consumers, and the law."  *Id.* at 486.

The TCA contains an explicit preemption provision:

No State or political subdivision of a State may establish or continue in effect with

7

> respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labelling, registration, good manufacturing standards, or modified risk tobacco products.

21 U.S.C.A. § 387p(2)(A). Labelling is defined by the FDCA as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). A label is defined as a "display of written, printed, or graphic matter upon the immediate container of an article[.]" 21 U.S.C. § 321(k).

The FDA Rule requires precise language and placement of warnings labels on covered tobacco products, such as ENDS. The FDA Rule states that packaging for ENDS must display a warning that states: "WARNING: This product contains nicotine. Nicotine is an additive chemical." 81 Fed. Reg. § 28988; 21 C.F.R. § 1143.3(a)(1). The FDA Rule contains strict requirements for how the warning is displayed, including, among other things, that it "must appear directly on the package, be clearly visible underneath any cellophane or other clear wrapping; . . . be located in a conspicuous and prominent place on the two principal display panels of the package and the warning area must comprise at least 30 percent of each of the principal display panels; and . . . must be in at least 12-point font size [with] the required warning statement [occupying] the greatest possible proportion of the warning area set aside for the required text." 21 C.F.R. § 1143.3(a)(2).

The FDA has unambiguously put forth the required language and placement of the nicotine warning label, down to the font and placement of the label. Considering the statutory and regulatory scheme in its entirety, I find that the FDA, through its authority under the TCA has prescribed the precise language and placement of warning labels on covered tobacco products such as ENDS under 21 C.F.R. §§ 1143.3(a)(1)(2). The specificity of the labelling requirements strongly supports such an interpretation of the statutory scheme. I also find that under the TCA's preemption provision, states and political subdivisions of states may not enact labeling requirements or warnings contrary or in addition to those prescribed under 21 C.F.R. §§ 1143.3(a)(1)(2). *See also In re Fontem US, Inc.*, No. SACV 15-01026, 2016 WL 6520142, at *3 (C.D. Cal. Nov. 1, 2016).

### C. Plaintiffs' Claims Relating to More Thorough Warnings as Compared to Claims Relating to Nicotine Percentage Based on Product Labelling

Plaintiffs' labelling claims essentially relate to two alleged misrepresentations by JUUL. First, plaintiffs allege that that JUUL should have warned consumers that the pharmacokinetics of JUUL's nicotine formulation contained in JUUL's pods utilizes benzoic acid to create nicotine salts, delivering an exceptionally potent dose of nicotine compared to traditional cigarettes. FAC ¶¶ 78-92. Second, plaintiffs allege that JUUL mislabels the dosage of nicotine on its pods at 5% when, in actuality, the dosage of nicotine is higher than 5%. *Id.* ¶ 83.

I find that Congress has intended to expressly preempt labeling requirements on ENDS packaging as shown by the preemption clause in the TCA and the specificity of the FDA Rule on labeling. 21 U.S.C.A. § 387p(2)(A); 21 C.F.R. §§ 1143.3(a)(1)(2). Plaintiffs believe that JUUL should be required to warn consumers of the pharmacokinetics, i.e. greater potency its benzoic acid and nicotine salt formulation delivers. If plaintiffs' claims were allowed to go forward in this respect, it would constitute a usurpation of the power vested in the FDA by Congress to regulate the content of the warnings on covered tobacco products. Plaintiffs' labelling claims are preempted to the extent that they are related to JUUL's failure to warn consumers that pharmacokinetics of their formulation, even at a similar percentage of nicotine, is more potent than it would be in a traditional cigarette due to its chemical makeup. JUUL may only be required to comply with the labeling requirements as articulated by 21 C.F.R. §§ 1143.3(a)(1)(2). To the extent that plaintiffs' claims are based on the product label failing to disclose the greater potency and addictiveness of JUUL's benzoic acid and nicotine salt formulation, JUUL's motion to dismiss is granted. These claims are necessarily dismissed with prejudice.

To the extent that plaintiffs' causes of action are based on the allegation that JUUL mislabels the dosage of nicotine on its pods at 5% when the dosage of nicotine is higher than 5%, these causes of action are not preempted by the TCA and FDA Rule. Plaintiffs allege that the actual percentage of nicotine contained in JUUL's pods is 6.2%. *Id.* ¶ 83. This difference would constitute over 20% more nicotine than JUUL claims its products deliver. Using JUUL's representation that each pod contains an amount of nicotine "about" equal to a pack of cigarettes, a 20% increase in nicotine would be the equivalent of a pack of cigarettes containing 24 cigarettes

9

instead of 20. This difference, if proved, would be significant. An individual who believes they might wean themselves off of traditional cigarettes by using JUUL's products may, in fact, be consuming the equivalent of four more cigarettes per pod.

JUUL argues that plaintiffs misread JUUL's '895 patent and the Pankow Study. Opposition [Dkt. No. 55] at 17. At the motion to dismiss stage, I must accept all the factual allegations as true and draw all reasonable inferences in favor of the plaintiffs. *Usher*, 828 F.2d at 561. For the purposes of this motion, I accept plaintiffs' factual allegation that JUUL's pods contain 6.2% nicotine, rather than the 5% JUUL represents on the packaging. To the extent that plaintiffs' labelling claims are based on JUUL's alleged mislabeling of the strength of nicotine in their pods, JUUL's motion to dismiss is denied.

**D. Retroactivity of the FDA RULE**

One court has already addressed whether the FDA Rule preempts plaintiffs' claims arising before and after the promulgation of the rule on August 8, 2016. Order Granting in Part and Denying in Part Plaintiffs' Motion for Clarification, Reconsideration, Entry of Judgment, or Certification for Interlocutory Appeal, *In Re Fontem US, Inc. Consumer Class Action Litig.*, 15-CV-01026 (C.D. Cal. March 8, 2017), Dkt. No. 110. In that case, Judge Selna found that the preemption clause of the TCA contained clear congressional intent favoring retroactivity. *Id.* at 5-10. The TCA states that "[n]o State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement . . .relating to tobacco product . . . labeling[.]" 21 U.S.C. § 387p(a)(2)(A). To allow plaintiffs to pursue claims on conduct preempted by the TCA and FDA Rule which took place before August 8, 2016, would continue in effect policies preempted by federal law. *Id.* (citing *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1138 (9th Cir. 2009)). I agree with Judge Selna. Plaintiffs may not pursue their claims for conduct preempted under the TCA which took place before August 8, 2016.

**E. What Claims Survive Preemption?**

Plaintiffs' claims are essentially based on either JUUL's labelling and advertising. As discussed above, I find that only claims based on the allegation that the product labelling fails to

warn consumers that JUUL's nicotine formulation is more addictive than other methods of

nicotine ingestion are expressly preempted. Any claims based on the mislabeling of the

percentage of nicotine per pod are not preempted.

Further, I find that this distinction does not extend to advertisements. The TCA contains a

subsection titled "EXCEPTION" which states:

> [The preemption clause] does not apply to requirements relating to the sale,
> distribution, possession, information reporting to the State, exposure to, access to,
> the advertising and promotion of, or use of, tobacco products by individuals of
> any age, or relating to fire safety standards for tobacco products.

21 U.S.C.A. § 387p(2)(B). The exception clause expressly excepts advertisements from

preemption and no aspect of plaintiffs' claims based on an allegedly misleading or fraudulent

advertising is preempted by the TCA, including the issue of warning consumers about the potency

and addictiveness of JUUL's benzoic acid and nicotine salt formulation. Resolving all inferences

in favor of the non-moving party, this would apply to any plaintiffs who may have seen an

advertisement but failed to closely read the label. *Ries v. Arizona Beverages USA LLC*, 287

F.R.D. 523, 531 (N.D. Cal. 2012).

Plaintiffs' causes of action based on advertisements or the mislabeling of the amount of

nicotine contained in each pod are not preempted by the TCA.

## II. RULE 9(b)'S HEIGHTENED PLEADING STANDARD

Plaintiffs' claims based on labelling meet's Rule 9(b)'s particularity requirements. I now

turn to whether plaintiffs' allegations based on JUUL's advertisements meet Rule 9(b).

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the

circumstances constituting fraud or mistake," including "the who, what, when, where, and how of

the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

(internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of

fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule

8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011). The purpose

of Rule 9(b)'s heightened specificity requirement is "to give defendants notice of the particular

misconduct which is alleged to constitute the fraud charged so that they can defend against the

charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). In order to meet the Rule 9(b) standard "a plaintiff must identify 'the time, place, and content of [the] alleged misrepresentation[s],' as well as the 'circumstances indicating falseness' or 'manner in which the representations at issue were false and misleading.'" *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1005 (N.D. Cal. 2014) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 (9th Cir.1994)).

JUUL argues that plaintiffs have failed to meet the heightened pleading requirement for claims sounding in fraud under Federal Rule of Civil Procedure 9(b) because they failed to identify what particular advertisements they saw; as a result, they cannot allege with specificity how those advertisements were false or misleading. *Id.* at 14-15. It asserts that plaintiffs have also failed to state when they saw the advertisements, where they saw them, or how they were influenced by them. *Id.*

Plaintiffs contend that they have sufficiently alleged that they saw the package labelling when they purchased JUUL's products, but labelling is not at issue here. Oppo. 17. They also cite *In re Tobacco Cases II*, 46 Cal.4th 298, 327-28 (2009) to argue that they do not need to identify specific advertisements in their complaint. Oppo. 15. But *In re Tobacco Cases II* was a California state law case not subject to Rule 9(b)'s heightened pleading requirements. Plaintiffs further argue, without support, that it is sufficient to state that all of JUUL's advertisements during the class period were misleading. *Id.* at 18. If I were to accept this argument, it would eviscerate Rule 9(b)'s particularity requirement.

Plaintiffs have failed to specifically identify what the advertisements they saw and, as a result, neither I nor JUUL can determine precisely what statements were allegedly false, misleading, or unfair. They have also failed to state where, other than on social media, they saw JUUL's advertisements.

Plaintiffs cite a number of cases to argue that they are not required to state exactly when they saw the advertisements, only that they saw the advertisements during the class period. Oppo. 16-17 (*see e.g. Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *13 (N.D. Cal. Jan. 15, 2014)). I agree. Plaintiffs have sufficiently alleged that they saw JUUL's

advertisements during the class period for the purposes of surviving JUUL's motion to dismiss. Nevertheless, because plaintiffs have not identified which advertisements they saw during the class period, or where they saw them (outside of social media), I grant JUUL's motion to dismiss plaintiffs false advertising, CLRA and laws of similar states, fraud, and UCL and laws of similar states claims. These claims are dismissed with leave to amend insofar as they relate to claims based on JUUL's advertisements.

## III. FAILURE TO STATE A CLAIM UNDER STATE CONSUMER PROTECTION STATUTES

JUUL seeks dismissal of plaintiffs' claims for violation of the Consumer Legal Remedies Act of California and Similar Laws of other states as well as for violations of the Unfair, Unlawful and Deceptive Trade Practices, Business and Professions Code § 17200. Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A, §§ 1, et seq.; Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.903, et seq.; New Jersey Consumer Protection Act, N.J. Stat. Ann. § 56:8-1, et seq.; Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-2 & 201-3, et seq., New York General Business Law, N.Y. Gen. Bus. Law §§ 349, et seq., Washington Consumer Protection Act, Wash. Rev. Code Ann. §§ 19.86.020, et seq., and the laws of all other states and the District of Columbia.

First, JUUL argues that dismissal of plaintiffs' claims based on unidentified consumer protection statutes is justified because plaintiffs have failed to identify the subsections of the various states' (besides California's) consumer protection laws they are seeking to invoke. Mot. to Dismiss 19-20. I agree. Plaintiffs' second cause of action only identifies the relevant laws of Massachusetts, Michigan, New Jersey, Pennsylvania, New York, and Washington for the definition of "persons." FAC ¶ 188. It is not my role to search for unidentified state statutes and their relevant subdivisions. Plaintiffs have only identified California's Consumer Legal Remedies Act with specificity. Plaintiffs' claims under the laws of other states are dismissed with leave to amend. Should plaintiffs choose to amend their claim, they must identify the state laws they seek to invoke.

Second, JUUL seeks dismissal of the identified state consumer protection statutes in

plaintiffs second and fourth causes of action for: (1) failure to plead causation or reliance by not alleging exposure to misleading representations (2) failure to plead reasonable reliance or a likelihood of deception. Mot. to Dismiss 20-26. JUUL argues that plaintiffs have not identified a particular misrepresentation or that any JUUL's representations would not deceive reasonable consumers.

With regards to JUUL's product labelling, JUUL is incorrect on both counts and its motion is denied. Plaintiffs have sufficiently alleged that at least Plaintiff Colgate relied on JUUL's representation that the pods contained a formulation of 5% nicotine when plaintiffs have sufficiently alleged that the pods contain a formulation of 6.2% nicotine. FAC ¶ 13. I find that Colgate's reliance on JUUL's representation of the amount of nicotine in each pod to be approximately equivalent to the amount of nicotine in a pack of cigarettes was reasonable.

JUUL's motion to dismiss plaintiffs' identified consumer protection statutes in plaintiffs' second and fourth causes of action based on JUUL's product labelling is denied**.**

As applied to JUUL's advertisements, plaintiffs have not specifically identified what advertisements they saw and what statements in the advertisements were allegedly false, misleading, or unfair. This lack of specificity is insufficient to state a claim under the identified state consumer protection statutes. JUUL's motion to dismiss plaintiffs' identified consumer protection statutes in plaintiffs' second and fourth causes of action based on JUUL's advertisements is granted with leave to amend**.**

## IV. FAILURE TO STATE A CLAIM FOR UNJUST ENRICHMENT

JUUL argues that plaintiffs' claim for unjust enrichment fails because plaintiffs cannot allege any wrongdoing on JUUL's part, such that JUUL's retention of any benefit would be considered unjust. Mot. to Dismiss. 27-28. It contends that because plaintiffs' other claims fail, the unjust enrichment claim would be duplicative and must necessarily fail.

As I have found that several plaintiffs' claims survive JUUL's motion to dismiss, plaintiffs' unjust enrichment claim is not duplicative. JUUL's motion to dismiss plaintiffs' fifth cause of action for unjust enrichment is denied**.**

# V. FAILURE TO STATE A CLAIM FOR DESIGN DEFECT

Pursuant to California law, a design defect may be established under either of two alternative tests: (1) the consumer expectation test or (2) the risk-benefit test. *See Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 432 (1978). Under the consumer expectation test, "a product may be found defective in design if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Id.* Alternatively, under the risk-benefit test, a product may be found "defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design." *Id.* "In a products liability case, a plaintiff has met his burden if he establishes that there was a defect in the manufacture or design of the product and that such defect was a proximate cause of the injury." *Dimond v. Caterpillar Tractor Co.*, 65 Cal. App. 3d 173, 177 (Ct. App. 1976).

JUUL argues that plaintiffs have not plausibly alleged a design defect claim because they have stated only conclusory allegations and that their ENDS operates as intended, as a device to ingest nicotine and other aerosolized constituents of JUUL's nicotine solution. Mot. to Dismiss at 29-30. However, I find that under the consumer expectation test, plaintiffs have stated a claim for design defect based on the allegation that JUUL's pods contain 6.2% nicotine salt, rather than the 5% nicotine advertised. FAC ¶ 83. Plaintiffs have sufficiently alleged that JUUL's pods do not perform as safely as an ordinary consumer would expect because each inhalation would deliver 20% more nicotine than they would reasonably expect from JUUL's representations.

JUUL argues that since the pods contains nicotine, a known addictive substance, there cannot possibly be a product defect any more than vodka is defective because it contains alcohol. While this may be true in a general sense, the alleged design defect is not that JUUL's products contain nicotine, it is that they contain more nicotine than users expect. JUUL's motion to dismiss plaintiffs' design defect claim is denied**.**

# VI. FAILURE TO STATE A CLAIM FOR MANUFACTURING DEFECT

Under the "manufacturing defect" theory, generally a "manufacturing or production defect

is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 430 (1978). The "manufacturing defect" theory posits that "a suitable design is in place, but that the manufacturing process has in some way deviated from that design." *In re Coordinated Latex Glove Litigation*, 99 Cal.App.4th 594, 605 (2002).

JUUL argues that plaintiffs have failed to state a claim for manufacturing defect because they have not alleged any variations among JUUL's ENDS or pods. Plaintiffs allege that JUUL routinely added more nicotine salt and benzoic acid to their pods than represented. FAC ¶¶ 250-251. While plaintiffs may not have alleged that a particular pod differs from identical ones from JUUL, plaintiffs have plausibly alleged that these pods differ from the product that JUUL intended to sell, i.e. pods with 5% nicotine. *See Johnson v. Nissan N. Am., Inc*., 272 F. Supp. 3d 1168, 1177 (N.D. Cal. 2017). This could be due to a defect in manufacturing rather than a design defect. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010); *see also Marshall v. Hyundai Motor Am*., 51 F. Supp. 3d 451, 467 (S.D.N.Y. 2014) ("Whether the[ ] alleged defects arose from a faulty design, faulty materials or faulty workmanship cannot be ascertained absent discovery, since any information concerning the true origin of the alleged defect is within the sole possession of the defendant.") (citations omitted).

It is too early to dismiss this theory. Plaintiffs allege a defect that could be attributed to either a design or manufacturing defect. As a result, they have pleaded facts sufficient to state a claim for manufacturing defect. Accordingly, I deny JUUL's motion to dismiss plaintiffs' manufacturing defect claim.

## VII. FAILURE TO STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY

JUUL argues that plaintiffs have failed to state a claim for breach of implied warranty because the implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Mot. to Dismiss at 32-33. Rather, the implied warranty provides only for a minimum level of quality. *Id.* JUUL contends that plaintiffs have

not plausibly alleged facts showing a breach, and that they have only pleaded conclusory allegations that JUUL's products were not fit for their intended purpose. *Id.*

"Unless excluded or modified [ ], a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Comm. Code § 2314(1). Unlike express warranties, "liability for an implied warranty does not depend upon any specific conduct or promise on [the defendant's] part, but instead turns upon whether the[ ] product is merchantable under the code." *Hauter v. Zogarts*, 534 P.2d 377 (1975). The Commercial Code does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Id.* A plaintiff who claims a breach of the implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App. 4th 402, 406 (2003) (citing Cal. Comm. Code § 2314(2)). A product may also be unmerchantable if it fails to "conform[ ] to the promises or affirmations of fact made on the container or label," a product may be unmerchantable based on a showing that the facts about the product did not match the representations on the container or label. *See Hauter*, 534 P.2d at 384-87.

JUUL argues that its alleged misrepresentation of the percentage of nicotine contained in its pods does not render their products unmerchantable for failure to conform to the promises or affirmations made on their containers because plaintiffs have misread the '895 patent and Pankow Study. *Reply* 19. But at the motion to dismiss stage, I must accept all of the factual allegations as true and draw all reasonable inferences in favor of the plaintiffs. *Usher*, 828 F.2d at 561. For the purposes of this motion, I accept plaintiffs' factual allegation that JUUL's pods contain 6.2% nicotine, rather than the 5% JUUL represents on the packaging. I find that plaintiffs have successfully stated a claim for implied warranty of merchantability based on the allegation that the percentage of nicotine in JUUL's pods does not match the represented amount of nicotine on JUUL's containers. JUUL's motion to dismiss plaintiffs' implied warranty of merchantability claim is denied**.**

**VIII. FAILURE TO STATE A CLEAIM FOR BREACH OF EXPRESS WARRANTY**

California Commercial Code section 2313 applies a three-step inquiry for a breach of express warranty claim: "First, the court determines whether the seller's statement amounts to 'an affirmation of fact or promise' relating to the goods sold. Second, the court determines if the affirmation or promise was 'part of the basis of the bargain.' Finally, if the seller made a promise relating to the goods and that promise was part of the basis of the bargain, the court must determine if the seller breached the warranty." *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) (citations omitted); *see also Elias v. Hewlett–Packard Co.*, 903 F.Supp.2d 843, 849 (N.D. Cal. 2012); *Weinstat v. Dentsply Intern.*, Inc., 103 Cal.Rptr.3d 614, 626 (Ct. App. 2010).

JUUL argues that plaintiffs cannot state a claim for breach of express warranty based on advertising and other descriptions of the product, rather than breach of a written contractual warranty, without alleging the exact terms of the warranty. Mot. to Dismiss 31-32. It also contends that the provisions of its express Limited Warranty necessarily bar plaintiffs' breach of warranty claim as it only provides a limited one-year warranty.

Plaintiffs allege that "Defendants' foregoing affirmations of fact and promises made in the marketing of JUUL e-cigarettes became part of the basis of the bargain between Defendant and plaintiffs' and all Class members, thereby creating express warranties that these products would conform to Defendants' affirmation of fact, representations, promises, and descriptions." FAC ¶ 264. But they have not "allege[d] the exact terms of the warranty" that the JUUL breached. Without "pleading exact terms as required by California law," they have "not met the pleading requirement" under Rule 8. *Biennis v. Hewlett–Packard Co.*, No. C 07–00333–JF, 2008 WL 818526, at *2 (N.D. Cal. March 25, 2008).

JUUL's motion to dismiss plaintiffs' breach of express warranty claim is granted**.** Plaintiffs' breach of express warranty claim is dismissed with leave to amend.

**IX. FAILURE TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION**

To state a claim for negligent misrepresentation, a plaintiff must allege: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing

it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (Ct. App. 1986). *Tarmann v. State Farm Mut. Auto. Ins. Co.*, makes clear that a negligent misrepresentation claim must be based on a misrepresentation of past or existing material facts and not on a promise or prediction as to future events. 2 Cal. Rptr. 2d 861, 864 (Cal. Ct. App. 1991); *see also Stockton Mortgage, Inc. v. Tope*, 233 Cal. App. 4th 437, 458 (2014) ("Although a false promise to perform in the future can support an intentional misrepresentation claim, it does not support a claim for negligent misrepresentation.").

JUUL argues that plaintiffs' negligent misrepresentation claim fails because plaintiffs have not proved reasonable or justifiable actual reliance. Mot. to Dismiss 27. Plaintiffs have alleged that JUUL misrepresented the pharmacokinetics of their ENDS, the nicotine content of their pods, and the role of benzoic acid in the nicotine formulation. As stated above, allegations relating to the pharmacokinetics and role of benzoic acid are preempted by the TCA and FDA Rule. For the purposes of deciding this motion to dismiss, I accept as true that JUUL has misrepresented the amount of nicotine in each pod. The question here is whether plaintiffs have shown that they reasonably or justifiably relied on JUUL's representation that the pods contained a formulation of 5% nicotine when they alleged that the pods contain a formulation of 6.2% nicotine. Plaintiff Colgate asserts that he relied on JUUL's representation that a JUUL pod had an equivalent amount of nicotine as a pack of cigarettes when he purchased JUUL's ENDS and pods in an effort to curtail his nicotine addiction and quit smoking. FAC ¶ 13. Because Colgate has sufficiently pleaded reliance on JUUL's representation on the amount of nicotine in the pods, JUUL's motion to dismiss plaintiffs' negligent misrepresentation claim is denied**.**

## X. DISMISSAL OF MINOR PLAINTIFFS' CLAIMS ARGUMENT RAISED IN THE REPLY

JUUL asked that I dismiss the Minor Plaintiffs' claims in its reply brief. Reply 20. It is improper to raise a new argument in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *In re Capacitors Antitrust Litig.*, No. 14-CV-03264-JD, 2017 WL 897340, at *1 (N.D. Cal.

Mar. 7, 2017).  I will not consider JUUL's motion to dismiss the Minor Plaintiffs' claims at this

time.

## XI. THE MOTION TO STRIKE

JUUL moves to strike plaintiffs' nationwide class allegations pursuant to Federal Rules of

Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D).  JUUL argues that a nationwide class would

be inappropriate because material variations among the laws of the many states would require

detailed inquiries into the legal elements, recognized defenses, and remedies applicable under each

state's laws, overwhelming common issues and precluding predominance.

This motion is premature. For one thing, the pleadings are not settled and plaintiffs

indicated at oral argument that they will amend with sufficient specificity to allow all of their

claims to proceed.  Second, the Hon. Richard Seeborg's observation *Morris v. SolarCity Corp.*,

No. 15-cv-05107-RS, 2016 WL 1359378, *3 (N.D. Cal. Apr. 6, 2016) is apt: "While class

allegations may be stricken at the pleading stage in the appropriate case, doing so is not warranted

here.... [as defendant] has not presented any argument that would completely preclude class

certification."  JUUL's motion to strike plaintiffs' nationwide class allegations is denied**.**

### CONCLUSION

For the reasons outlined above, JUUL's motion to dismiss is granted in part and denied in

part**.**  Insofar as plaintiffs' claims are based on misrepresenting the pharmacokinetics of JUUL's

nicotine formulation on the product labelling, they are preempted and dismissed with prejudice**.**

Plaintiffs' claims based on JUUL's alleged misrepresentation of the percentage of nicotine on the

labelling of JUUL's pods are not preempted.

Plaintiffs' claims based on JUUL's advertising which sound in fraud fail to meet the

heightened pleading requirements of Rule 9(b) and are dismissed with prejudice.

To the extent that plaintiffs' remaining claims are based on mislabeled nicotine percentage

on the packaging for JUUL's pods, JUUL's motion to dismiss is granted only as to the breach of

express warranty claim and the unidentified state law consumer protection statutes claim.  These

claims are dismissed with leave to amend.

JUUL's motion to strike plaintiffs' nationwide class allegations is denied as it is not ripe at

this stage of the litigation.

**IT IS SO ORDERED.**

Dated: October 30, 2018



William H. Orrick
United States District Judge