**GUTRIDE SAFIER LLP**
Adam J. Gutride (State Bar No. 181446)
Seth A. Safier (State Bar No. 197427)
Marie A. McCrary (State Bar No. 262670)
Anthony Patek (State Bar No. 228964)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469
adam@gutridesafier.com
seth@gutridesafier.com
marie@gutridesafier.com
anthony@gutridesafier.com

Matthew T. McCrary (admitted *pro hac vice*)
265 Franklin St, Suite 1702
Boston, MA 02110
matt@gutridesafier.com

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, admitted *pro hac vice*
Jason Rathod, admitted *pro hac vice*
Esfand Nafisi (State Bar No. 320119)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (202) 470-3520
Facsimile: (202) 800-2730
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
enafisi@classlawdc.com

*Attorneys for Plaintiffs and Interim Class Counsel*

(additional counsel on signature page)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE: JUUL LABS, INC. PRODUCTS LITIGATION | CASE NO. 3:18-cv-02499-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Hon. William H. Orrick<br><br>Date: May 22, 2019<br>Time: 2:00 pm<br>Ctrm: Courtroom 2; 17th Floor |

1

# TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................................1

II.  FACTUAL CIRCUMSTANCES SURROUNDING JUUL'S ARBITRATION
     CLAUSE.......................................................................................................2

    A.  JUUL's Product Labeling, Warranty, and In-The-Box Documentation .................2

    B.  JUUL's E-Commerce Website Discloses its Terms on Only One Screen:
        The User Portal..........................................................................................2

        1.  JUUL's User Portal .............................................................................3

        2.  Once through the User Portal, users receive no notice of JUUL's
            Terms...........................................................................................3

    C.  JUUL Terms of Service at the Time of Plaintiffs' Alleged Assent. ........................4

    D.  Plaintiffs' Use of the JUUL Website ................................................................5

        1.  Plaintiff Hasnat Ahmad ......................................................................5

        2.  Plaintiff David Masessa ......................................................................6

        3.  Plaintiff Ron Minas ...........................................................................6

        4.  Plaintiff Jack Roberts ........................................................................6

        5.  Plaintiff Michael Viscomi ...................................................................6

III.  ARGUMENT ...................................................................................................7

    A.  The Arbitration Agreement is Not Binding on Plaintiffs Because They Did
        Not  Receive Adequate Notice of the Terms or Assent to Them............................7

    B.  The Hyperlink to JUUL's Terms of Service on the User Portal Was
        Intentionally Hidden and Did Not Display as a Hyperlink......................................9

    C.  JUUL does not present its hyperlinked Disclosure on its website
        Transaction Screens. ....................................................................................10

        1.  JUUL Does Not Provide Users With Sufficient, Further Notice of its
            Terms During or After Purchase.......................................................... 13

        2.  JUUL Does Not Provide Evidence that Plaintiff Ahmad Agreed to
            JUUL's Terms and Conditions........................................................... 15

        3.  Plaintiffs Ahmad and Roberts, as Minors, Lacked Capacity to Enter
            Into Any Agreements with JUUL and Any Such Agreements Have Been
            Properly Disaffirmed.......................................................................... 16

        4.  JUUL's Notice Disclosure Did Not Appear on the Screen of Plaintiff
            Minas' iPhone 5 When He Allegedly Assented to JUUL's Terms. ....................18

5.   JUUL's Website Does Not Put Users Seeking Warranty Service, Such as Plaintiffs Minas and Viscomi, on Notice of its Terms..........................................19

6.   Plaintiffs Roberts and Masessa, as Returning Users to JUUL.com, Never Agreed to JUUL's Terms and Conditions. .................................................. 20

D.   Plaintiffs Ahmad and Roberts' Claims Against JUUL Accrued Before They Visited the JUUL Website or Allegedly Agreed to the Terms. .............................22

E.   The Arbitration Agreement is Unenforceable Under Generally Applicable Contract Defenses............................................................................23

1.   Any Agreements between JUUL and Plaintiffs Should Be Set Aside for Fraud, Duress, and Undue Influence. ....................................................23

2.   A Public Injunctive Relief Waiver is Unenforceable.......................................24

IV.   CONCLUSION.............................................................................25

# CASES

*Alaska Packers Asso. v Domencio*, 117 F. 99 r (9th Cir. 1902) ........................................20

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ...................................... 23

*Berg v. Traylor,* 148 Cal.App.4th 809, 56 Cal.Rptr.3d 140 (2007) ...............................17, 18

*Blair v. Rent-A-Ctr., Inc.*, Case No. 17-cv-02335-WHA, 2017 U.S. Dist. LEXIS
    163979, 2017 WL 4805577(N.D. Cal. Oct. 25, 2017) .......................................... 25

*Brown v. Pierce*, 74 U.S. 205, 207 (1868)...........................................................24

*Burnand v. Irigoyen*, 30 Cal.2d 861, 186 P.2d 417 (1947) ...................................... 16

*Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ...................... 12

*Celli v. Sports Car Club of America, Inc.,* 29 Cal. App. 3d 511 (1972)............................ 18

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126 (9th Cir. 2000) ..........................7

*Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165 (N.D. Cal. 2002) ...................................... 16

*Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018) ........................................ 10

*Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611 (11th Cir. 2001).........................20

*Dornaus v. Best Buy Co., Inc.*, No. 18-cv-04085-PJH, 2019 U.S.Dist.LEXIS 24522
    (N.D.Cal. Feb. 14, 2019) ........................................................................ 26

*E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F.Supp.2d 894 (S.D.Ill. 2012) ................................ 16

*First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938 (1995).........................................7

Friedman v. Guthy-Renker, No. 2:14-cv-06009-ODW(AGRx), 2015 U.S. Dist.
    LEXIS 24307 (C.D. Cal. Feb. 27, 2015) ........................................................ 19

*Fteja v. Facebook*, 841 F. Supp. 2d 829 (2d Cir. 2012) ........................................10, 12

*Goldberg v. Superior Court,* 23 Cal.App.4th 1378, 28 Cal.Rptr.2d 613 (1994) ........................... 17

*I.B. ex rel. Fife v. Facebook*, Inc., 905 F. Supp. 2d 989 (N.D. Cal. 2012)......................... 17

*In re Henson*, 869 F.3d 1052 (9th Cir. 2017) ...........................................................7

*In re Marriage of Baltins*, 212 Cal.App.3d 66 (Cal. App. 1989) ...................................24

*Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522 (N.D. Cal. 1995) ..................................... 24

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) ..................................................... 7

*Le Baron v. Berryessa Cattle Co.,* 78 Cal.App. 536 (1926) ........................................................... 18

*Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016) ..................................... 7, 10, 12, 22

*LWT, Inc. v. Childers*, 19 F.3d 539 (10th Cir. 1994) ..................................................................... 20

*McArdle v. AT&T Mobility LLC*, Case No. 09-cv-01117-CW, 2017 U.S. Dist.
LEXIS 162751, 2017 WL 4354998 (N.D. Cal. Oct. 2, 2017) .................................................. 25

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) ........................................................................... 25

*McKee v. Audible, Inc.*, No. CV 17-1941-GW, 2017 U.S. Dist. LEXIS 174278 (C.D.
Cal. July 17, 2017) ......................................................................................... 10, 19, 21

*Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017) ................................................ 10, 12

*Mitchell v. U-Haul Co. of Cal.*, No. 16-cv-04674-JD, 2017 U.S. Dist. LEXIS 79064
(N.D. Cal. May 23, 2017) ...................................................................................... 7, 16

*Nguyen v. Barnes & Noble, Inc.* 763 F.3d 1171, 1177 (9th Cir. 2014) ....................................passim

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016) .............................................. 10, 14

*Niemann v. Deverich,* 98 Cal.App.2d 787, 793, 221 P.2d 178 (1950) ........................................... 17

*Norcia v. Samsung Telecomms. Am.*, LLC, No. 14-cv-00582-JD, 2014 WL 4652332
(N.D. Cal. Sep. 18, 2014), *aff'd, Norcia v. Samsung Telecomms. Am., LLC*, 845
F.3d 1279 (9th Cir. 2017) ....................................................................................... 7, 13

*Odorizzi v. Bloomfield School Dist.*, 54 Cal.Rptr. 533 (Cal. App. 1966) ....................................... 24

*Par-Knight Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51 (3d Cir. 1980) ......................... 16, 19

*Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (2012) ............................................ 23

*Rehbock v. Reservoir Hill Gasoline Co.* (App. 2 Dist. 1936) 14 Cal.App.2d 233, 57
P.2d 1357 .......................................................................................................... 24

*Roberts v. AT&T Mobility LLC*, Case No. 15-cv-03418-EMC, 2018 U.S. Dist.
LEXIS 42235, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018) ............................................... 25

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015) ....................................... 23

*Scollan v. Gov't Employees Ins. Co.,* 222 Cal.App.2d 181 (1963)....................................18

*Sgouros v. Transunion Corp.*, 816 F.3d at 1035 (7th Cir. 2015) ....................................12

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17(2d Cir. 2002) ........................................ 7, 11, 13

*Spencer v. Collins,* 156 Cal. 298, 303 (Cal.1909)....................................18

*Starke v. Squaretrade*, 913 F.3d 279 (2d Cir. 2019) .............................................passim

*State Farm Gen. Ins. Co. v. Watts Regulator Co.*, 17 Cal. App. 5th 1093, 1100 (2017) ..................23

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011)....................................12

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)....................................19

*Webb v. Saunders*, 79 Cal.App.2d 863 (Cal. App. 1947)....................................24

## STATUTES

Cal. Fam. Code § 6500 ....................................22

Cal. Fam. Code § 6701(c) ....................................22

Cal. Fam. Code § 6710 ....................................23

# I.      INTRODUCTION

The arbitration clause JUUL asks this Court to enforce appears nowhere on the packaging, labeling or other materials that come with JUUL products. It is also absent from JUUL's warranty, which is included in a pamphlet with each JUUL device and posted prominently on JUUL's website. When users go to JUUL's website to obtain warranty service (which is the only place warranty service can be obtained) or purchase JUUL's highly addictive products, the screens on which users consummate these transactions are wholly silent as to arbitration. How, then, did Plaintiffs assent to be bound?

JUUL asserts that Plaintiffs agreed to arbitrate when they visited a transitional page—the only page—on JUUL's website that contained a disclosure with a hyperlink to JUUL's Terms of Service.  This browsewrap hyperlink, which JUUL altered to look like plain text, was written in the smallest font on the page, buried at the bottom of the page, and was not visible on smartphones. JUUL's success in concealing its hyperlink terms spells out its failure to put users on notice of the contract it now seeks to enforce.

Under controlling Ninth Circuit authority, browsewrap agreements such as JUUL's Terms cannot be enforced unless: (i) the hyperlinked agreement is conspicuous and conspicuously placed; and (ii) the text of the hyperlink notifies users that taking a specified action will demonstrate assent to those terms. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014). JUUL's disclosure of its Terms of Service failed to comply with these requirements and its Terms are therefore unenforceable. First, the hyperlink to JUUL's Terms of Service that appeared on 'JUUL's sign-in page (the User Portal) was inconspicuous by design. Second, the notice did not appear on the page where Plaintiffs took the only specified action that could possibly indicate assent (i.e., the registration page). Third, JUUL seeks to compel arbitration of Plaintiffs' claims relating to their purchase of JUUL products but JUUL did not provide Plaintiffs with notice of its Terms at the time of sale.

Even if JUUL provided new website registrants with the bare minimum notice required (which it did not), none of the Plaintiffs actually agreed to arbitrate their claims. First, JUUL does not provide any evidence that Ahmad registered an account on the JUUL website or agreed to the Terms. Second, Plaintiffs Ahmad and Roberts were minors on the dates JUUL[RP1] claims they agreed to the Terms and, as such, they lacked the capacity to form a legally binding agreement;

alternatively, they disaffirm any agreement with JUUL. Third, Plaintiffs Roberts and Masessa registered accounts on the JUUL website prior to the effective date of the Terms.  On the date JUUL alleges that Masessa and Roberts accepted the Terms, they merely logged in, and thus did not take the action (i.e., registering) that indicates assent.  Fourth, Plaintiff Ron Minas did not see JUUL's hyperlinked text at all because the text was either below the viewable screen of his iPhone or blocked by its digital keypad.  Fifth, Plaintiffs Minas and Viscomi visited JUUL's site solely to obtain warranty service, and thus had the reasonable expectation that any terms relevant to them would be within the scope of JUUL''s warranty.  Sixth, all of the Plaintiffs purchased JUUL products in stores before they allegedly agreed to JUUL's website Terms subject to no notice at all, and JUUL's website arbitration agreement does not apply retroactively to claims arising from these purchases.

There was no contract formed between Plaintiffs and JUUL so the arbitration agreement cannot be enforced against them. But even if there were an agreement, Plaintiffs' state law contract defenses invalidate it. First, Plaintiffs entered the agreement under undue influence and duress. Second, to the extent the agreement includes a public injunctive relief waiver, that provision is unenforceable. JUUL's motion to compel arbitration should thus be denied in its entirety.

## II.     FACTUAL CIRCUMSTANCES SURROUNDING JUUL'S ARBITRATION CLAUSE

### A.     JUUL's Product Labeling, Warranty, and In-The-Box Documentation

JUUL sells devices and nicotine pods in stores and on its website. The labeling of JUUL's device and pod packages makes no reference to arbitration or JUUL's Terms. Though JUULpods do not include any in-the-box paperwork, each JUUL' device comes with a warranty booklet. See Nafisi Decl. ¶, Ex. F.  JUUL's warranty booklet makes no reference to arbitration or JUUL's Terms. Similarly, the warranty posted on JUUL's website makes no reference to arbitration or JUUL's Terms. Dkt. 98-6.

### B.     JUUL's E-Commerce Website Discloses its Terms on Only One Screen: The User Portal

JUUL's website is an e-commerce platform that promotes, sells, and provides warranty service for JUUL devices and pods, which combine to form electronic nicotine delivery systems (ENDS).

Visitors to JUUL's site may browse JUUL's products, fill a shopping cart, or troubleshoot non-functional devices without encountering JUUL's Terms. If JUUL's troubleshooting guide indicates that warranty service is needed, a user is prompted to register the device and obtain warranty service, which requires users to pass through JUUL's User Portal. Dkt. 98-4, 98-5. Similarly, when a user with items in her shopping cart clicked a checkout button on JUUL's website, she was taken to JUUL's User Portal—the one and only place on JUUL's site where its Disclosure is presented. '

### 1.   JUUL's User Portal

On the dates JUUL alleges Plaintiffs agreed to the Terms, there were two headings on JUUL's User Portal: Log In at the top of the page and New to JUUL? Sign Up around the middle of the page. Dkt. 98-4, 98-5. Under the Log In heading were text fields where registered users could enter their account information (i.e., email and password), a blue, underlined **Forgot password**? hyperlink, and a large blue button labeled "LOG IN."  Under the New to JUUL? Sign Up heading were fields for new users to enter an email and password, and a large blue button labeled Sign Up. Clicking Sign Up did not consummate registration; it simply took new users to subsequent screens where they could enter the information needed to create an account with JUUL (the Registration Screen).

Beneath the Sign Up button, in the smallest text on the page, (which was not visible on a smartphone), was  the following message: [b]y registering with JUUL Labs, Inc., you agree to our Terms and Conditions and Privacy Policy. (the Disclosure) *Id.* On the dates Plaintiffs Ahmad, Masessa, Roberts and Viscomi allegedly agreed to JUUL's Terms, none of the text in the Disclosure was in blue, underlined, bolded, or otherwise distinct from plain text. Dkt. 98-3. Moreover, nothing on the User Portal instructed Plaintiffs to read the Terms or click a hyperlink, and there was no checkbox Plaintiffs could tick to indicate that they were aware that binding hyperlinked contract terms were being presented. Dkt. 98-3 and 98-4.

### 2.   Once through the User Portal, users receive no notice of JUUL's Terms

#### a)   JUUL's Registration Screen

After clicking the Sign Up button on the User Portal, a new user was next taken to a page requiring users to provide a name, address, date of birth, and submit to age verification by submitting the last four digits of a Social Security Number or a valid photo ID such as a driver's

3

license. Nafisi Decl. Ex. C. pgs. 9-10. Without completing this process, a user could not proceed to the JUUL online store to purchase products, access the My Account page, register a device purchased in-store, submit a warranty claim, or visit any other part of the site that was restricted to registered users. Nafisi Decl. ¶ 2. The Disclosure appeared nowhere on the Registration page. *See, e.g.,* Nafisi Decl. Ex. C, p. 9-10.

         **b)**    **The Warranty Screens do not reference JUUL's Terms**
                  **or arbitration**

There were several ways to file a warranty claim from JUUL's homepage but all of them require creating a user account—a requirement not disclosed in JUUL's warranty. Only after passing through a User Portal could a user start a five-step warranty process, requiring: (1) completing the Register Product screen (assuming a user had not already registered the device); (2) viewing a screen that confirmed the nature of the claim; (3) passing through the Start Warranty Claim screen; (4) completing the Claim Warranty Screen; and (5) completing the Confirmation Screen (the Warranty Screens). *See, e.g.,* Nafisi Decl. Ex. C, 10-15 . JUUL provides no disclosure of its Terms on any of JUUL's Warranty Screens. *Id.*

         **c)**    **JUUL's Purchasing Screens do not reference JUUL's**
                  **Terms or arbitration**

After a user browsed JUUL's site, added items for purchase to a cart, clicked checkout, and passed through the User Portal (either by signing in or creating a new account and visiting the registration page), JUUL's website presented four purchase screens before an order could be finalized: (1) shopping cart summary, (2) shipping address confirmation, (3) shipping options, and, finally, (4) the purchase screen with a PLACE ORDER button (the Purchase Screens). *See, e.g.,* Nafisi Decl. Ex. B, 3-6. JUUL did not present the Disclosure on any of the Purchase Screens.

**C.**    **JUUL Terms of Service at the Time of Plaintiffs' Alleged Assent.**

If a user happened to click on the words Terms and Conditions in the Disclosure (even though they did not appear as a hyperlink), the user would be taken to a document titled JUUL Labs Terms of Service. ECF 98-5. JUUL asserts that the Terms were effective June 29, 2017, and in effect through August 2018. ECF 98-2, ¶ 4. The arbitration clause, which appears in Section 16 of the Terms of Service, provides the scope of arbitration, and does not purport to apply to

disputes involving purchases of JUUL products that occurred: (i) prior to JUUL's adoption of the Terms of Service or (ii) offline at brick and mortar retail stores or online retailers other than JUUL:

> [W]e each agree to resolve any claim, dispute, or controversy (excluding any claims for injunctive or other equitable relief as provided below) arising out of or in connection with or relating to these Terms, or the breach or alleged breach thereof (collectively, Claims), by binding arbitration by JAMS, under the Optional Expedited Arbitration Procedures then in effect for JAMS, except as provided herein…

Dkt. 98-5, pg. 11.

### D.   Plaintiffs' Use of the JUUL Website

JUUL does not allege or offer any evidence that *any* of the Plaintiffs actually viewed the Terms. *See* ECF 98-2;  Nor does JUUL contend that the Terms of Service were provided with Plaintiffs' warranty replacements or purchases. *Id.* Each of the Plaintiffs alleges that he did not see or click on JUUL's Terms hyperlink and he did not see, let alone read, JUUL's Terms. Ahmad Decl. ¶¶ 5, 6; Masessa Decl. ¶¶ 5, 6; Minas Decl. ¶¶ 6, 8; Roberts Decl.  ¶ ¶ 2, 5; Viscomi Decl. ¶ 5, 6.

#### 1.   Plaintiff Hasnat Ahmad

Plaintiff Ahmad alleges that he began using JUUL in October 2017. Compl. App. A, p. 3, ¶ 2. He further alleges that he was already addicted to nicotine when, at the age of 17, he purchased a Basic Kit JUUL's website on February 27, 2018. Ahmad Decl. ¶ 3; Compl. App. A, p. 4, ¶ 6.  JUUL does not offer any evidence that Ahmad registered an account on JUUL's website. *See* ECF 98-2. Ahmad disaffirms any agreement he may have formed with JUUL while he was a minor. Ahmad Decl. ¶ 10.

#### 2.   Plaintiff David Masessa

JUUL alleges that Plaintiff Masessa registered an account on JUUL's website on January 22, 2015. ECF 98-2, ¶ 3. JUUL does not contend that it required Masessa to re-register for an account after the Terms of Service became effective (i.e., after June 29, 2017), that it notified Masessa of the Terms, or required Masessa to take any action to indicate his acceptance of the Terms. *See* ECF 98-2. Rather, JUUL alleges that Masessa agreed to the Terms by accessing his existing JUUL account on 3 dates in early 2018, at a time when Masessa was already addicted to the nicotine salts in JUUL products.   The products Masessa purchased from JUUL's website, like

the products he purchased in-store, were unaccompanied by any reference to arbitration or JUUL's Terms.

### 3.   Plaintiff Ron Minas

On August 4, 2018, Minas suffered from aggravated nicotine addiction from JUUL's products when he visited JUUL's website to obtain warranty service for a JUUL device he had purchased in a local gas station. Minas Decl. ¶ 6. JUUL alleges that Minas registered an account on that date and, in so doing, agreed to JUUL's Terms. ECF 98-2, ¶ 3. When Minas arrived at JUUL's User Portal, the Terms and Conditions hyperlink did not display on the screen of his iPhone 5.  Minas Decl. ¶ 5. Minas was able to enter his e-mail address and password and click Sign Up without the hyperlink appearing on screen. Minas Decl. ¶ 5.

### 4.   Plaintiff Jack Roberts

Plaintiff Roberts first used JUUL in November 2017 at age seventeen.  Compl. App. A, p. 66, ¶ 345.  On November 7, 2017, Roberts visited JUUL's website to complete a survey because a card in a Starter Kit he purchased promised a $30 Visa Card for completing JUUL's survey. Roberts Decl. ¶ 3. Though Roberts' pleading stated that Roberts mailed in a registration card, this was incorrect. *See Id.* The card inside his Starter Kit was a coupon offer that prompted him to visit JUUL's website.)  JUUL contends that Plaintiff Roberts registered a JUUL account on November 7, 2017 and agreed to JUUL's Terms when he later accessed his account on March 25, 2018. ECF 98-2, ¶ 3.  On March 25, 2018, when Roberts allegedly accessed the JUUL account he created in 2017, and, JUUL alleges, agreed to JUUL's terms, he was 17 years old and addicted to the nicotine in JUUL's products.  Roberts Decl. ¶¶ 2, 5  Roberts disaffirms any agreement he may have formed with JUUL while he was a minor.

### 5.   Plaintiff Michael Viscomi

On March 7 ,2018, Plaintiff Viscomi visited JUUL's website to obtain warranty service for a JUUL device he had purchased in a local store.  Viscomi Decl. ¶ 4. JUUL alleges that he also registered an account at that time. ECF 98-2, ¶ 3.

## III.   ARGUMENT

### A.   The Arbitration Agreement is Not Binding on Plaintiffs Because They Did Not Receive Adequate Notice of the Terms or Assent to Them.

[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *In re Henson*, 869 F.3d 1052, 1059 (9th Cir. 2017). In

determining whether a party has agreed to arbitrate, federal courts apply ordinary state-law principles that govern the formation of contracts. *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The Federal Arbitration Act (FAA) is not relevant to this threshold issue and there is no thumb on the scale in favor of finding an arbitration agreement to exist. *Norcia v. Samsung Telecomms. Am.*, LLC, No. 14-cv-00582-JD, 2014 WL 4652332, at, *4 (N.D. Cal. 2014), *aff'd, Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). To form a valid contract under California law, the parties must demonstrate mutual manifestation of assent, which applies with equal force to arbitration provisions contained in contracts purportedly formed over the Internet. *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862, (2016) (citing *Nguyen*, 763 F.3d 1171, 1177 (9th Cir. 2014)).  JUUL, as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Mitchell v. U-Haul Co. of Cal.*, No. 16-cv-04674-JD, 2017 U.S. Dist. LEXIS 79064, at *1 (N.D. Cal. May 23, 2017) (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

Assent to an electronic arbitration agreement can be demonstrated by showing either that: (i) the consumer had actual knowledge of the arbitration provision when a transaction was consummated, or (ii) a conspicuous notice that would have put a reasonably prudent user on inquiry notice of the terms of the contract. *Nguyen*, 763 F.3d at 1177. *See also Long*, 245 Cal. App. 4th at 865, 306 F.3d 17, 35 (2d Cir. 2002)(applying California law). Here, it is undisputed that none of the Plaintiffs had actual knowledge of JUUL's arbitration provision (or more generally JUUL's Terms). *See* ECF 98-2 ¶ 3; Ahmad Decl. ¶ 6; Masessa Decl. ¶ 10; Minas Decl. ¶ 8; Roberts Decl. ¶ 9; Viscomi Decl. ¶ 6.  Thus, Plaintiffs could not have assented to the arbitration provision unless JUUL's Disclosure put them on constructive notice of the Terms. *See id.* On this point, California law is clear—an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious. *Long*, 245 Cal. App. 4th at 862. (internal citation and quotation omitted).

The Ninth Circuit has explained that agreements formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use,  and

'browsewrap' agreements, where a website's terms and conditions are generally posted on the website via a hyperlink at the bottom of the screen. *Nguyen*, 763 F.3d at 1175-76. The defining feature of browsewrap agreements is that the user can continue to use the web site or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists. *Id.* It is undisputed that JUUL's Terms of Service falls into the browsewrap category. *See* ECF 98-2 at ¶ 3. Thus, its validity turns on whether (1) the conspicuousness and placement of the 'Terms of [Service]' hyperlink, (2) other notices given to users of the terms of use, and (3) the website's general design would put a reasonably prudent user [on] inquiry notice of a browsewrap agreement. *Id.* at 1177.

In *Nguyen*, the Court considered a hyperlink clearly labeled Terms of Use, which was presented in an underlined, green (color-contrasting) typeface on the bottom left-hand corner of every page on Barnes & Noble's website, including the online checkout page. *Id.* at 1174. The Ninth Circuit held that this was insufficient to provide constructive notice of the arbitration clause in the terms because the website did not prompt users of the need to review or pay attention to the terms and conditions. *Id.* at 1179. The Court found that Barnes & Noble's disclosures were not enough to overcome courts' traditional reluctance to enforce browsewrap agreements against individual consumers . . . . *Id.* at 1178. Absent sufficient notice of binding terms and conditions, the court found no basis to apply the general rule that a failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract. *Id.* at 1179. The onus must be on website owners to put users on notice of the terms to which they wish to bind consumers. Given the breadth and the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound. *Id.* (citing *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 11, 534 N.E.2d 824, 537 N.Y.S.2d 787 (1988).

As explained below, Plaintiffs cannot be bound to the arbitration provision in the Terms of Service because they neither had notice of nor assented to them.

**B.     The Hyperlink to JUUL's Terms of Service on the User Portal Was Intentionally Hidden and Did Not Display as a Hyperlink.**

The inconspicuous presentation of JUUL's Disclosure—and the hyperlink within it—suggests an effort to deter users from examining the Terms.  JUUL's Disclosure is written in plain

text in the smallest font on the User Portal and tucked away at the bottom of the page. Courts routinely find that such disclosures provide insufficient notice of a website's terms. *See, e.g.*, *McKee v Audible, Inc.*, No. CV 17-1941-GW, 2017 U.S. Dist. LEXIS 174278, at *24 (C.D. Cal. July 17, 2017) (finding insufficient notice of arbitration clause where disclosure below operative button appeared in small, undifferentiated font); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016)) (refusing to enforce arbitration clause where message 'By placing your order, you agree to [Defendant's] . . . conditions of use' is not bold, capitalized, or conspicuous in light of the whole webpage).

Further, the Terms hyperlink that was on the User Portal when Plaintiffs Ahmad, Masessa, Roberts and Viscomi allegedly agreed to the Terms was modified to ensure it remained hidden in plain sight—that is, it was not a different color, underlined, italicized, or in any way visually distinct from surrounding text. Dkt. 98-2 ¶ 3, 98-3. A review of the User Portal's coding reveals that JUUL deliberately changed the default style of the hyperlink (i.e.,  bold and underlined) to make it less conspicuous. Kennedy Decl. ¶ 3.  Specifically, the text-decoration property of the hyperlink was set to none, which removed the default underlining from the hyperlink, and the color property was set to inherit, which ensured that the hyperlink would be the same color as surrounding text, rather than bright blue default color that is typical of hyperlinks.  *Id*. And the text size was set to small. *Id*. The end result was a hyperlink even less conspicuous than those that have been rejected by other courts.  *Berkson,* 97 F. Supp. 3d at 404 (finding that terms of use were not made readily and obviously available to [the consumer] where the hyperlink to the 'terms of use' was not in large font, all caps, or in bold and noting [b]y contrast, the 'SIGN IN' button is very user-friendly and obvious, appearing in all caps, in a clearly delineated box in both the upper right hand and the lower left hand corners of the homepage); *Rushing v. Viacom Inc,* 2018 U.S. Dist. LEXIS 176988, *6-7 (N.D. Cal. Oct. 15, 2018) (refusing to enforce arbitration clause inside browsewrap link website user was unlikely to see).

The inconspicuousness of JUUL's Terms hyperlink is compounded by the presence of the bolded and underlined phrase **Forgot password?** on the User Portal. Dkt. 98-2 ¶ 3, 98-3; *see Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018) (finding that a hyperlink was insufficiently conspicuous where the presence of other terms on the same screen with a similar or larger size, typeface, and with more noticeable attributes diminished the hyperlink's capability to grab the

user's attention).  The inconspicuousness of JUUL's Terms hyperlink, both on its own and within the context of the User Portal's general design, thus forecloses the enforcement of the arbitration clause.

The cases from the Second Circuit that JUUL cited confirm that JUUL failed to provide the requisite notice. In *Meyer v. Uber Technologies, Inc.*, the hyperlink at issue was highlighted, underlined and the operative text appeared in all caps. 868 F.3d 66, 77-78 (2d Cir. 2017). In *Fteja v. Facebook*, the hyperlink was underlined, an indication that the phrase is a hyperlink, a phrase that is 'usually highlighted or underlined.' 841 F. Supp. 2d 829 (2d Cir. 2012) (citations omitted). Because conspicuous hyperlinks are an indispensable element of notice in online contracts under California law, *see Nguyen*, at 1177, JUUL's efforts to conceal the hyperlink foreclose enforcement of the Terms.

By August 2018, when Plaintiff Minas visited JUUL's website, the text of hyperlink had been changed to light blue, Dkt. 98-4, but was still too inconspicuous to put Minas on notice of the Terms. The CSS file for this later version of the User Portal shows that the default underlining was again removed from the hyperlink and that its color property was set to a shade of blue that is lighter than the default color for a hyperlink.  Kennedy Decl. ¶ 4.  Given the light blue background of the User Portal, JUUL's color choice *actually made the text less conspicuous* than it had been previously. Though color is an essential indicia of a hyperlink, courts typically refuse to enforce terms presented through colored hyperlinks that are nevertheless inconspicuous.  *See Long*, 245 Cal. App. 4th at 866 (2016) (rejecting as inconspicuous hyperlinked terms in light green text against website's lime green background); *Applebaum v. Lyft,* 263 F.Supp. 3d 454 (S.D.N.Y. June 26, 2017) (finding light blue hyperlink insufficient to put users on notice where the hyperlink lacked 'familiar indicia to inform consumers that there was in fact a hyperlink that should be clicked and that a contract should be reviewed, such as words to that effect, underlining, bolding, capitalization, italicization, or large font.').  The facts here compel the same result.

## C.   JUUL does not present its hyperlinked Disclosure on its website Transaction Screens.

In addition to conspicuous hyperlinks, *Nguyen* also requires browsewrap agreements to sufficiently notify users that taking a specified action will demonstrate assent to the hyperlinked terms. 763 F.3d at 1179. JUUL does not present its Disclosure on the Registration Screen. Because

10

this Disclosure is not temporally or spatially coupled to the Registration Screen—or the Purchase Screens—JUUL's Disclosure fails under this essential element of the *Nguyen* analysis.

When Plaintiffs passed through the User Portal to register new user accounts on the Registration Screen, or purchase products on the Purchasing Screens, they received no notice of JUUL's Terms nor did they demonstrate assent to the Terms. JUUL insists that purchasers had already affirmatively assented to the disclosure on JUUL's User Portal, (Mot. at 9), which states that [b]y **registering**…you agree to be bound by JUUL's Terms & Conditions, and links to a document called JUUL Labs Terms of Service. Honig Decl. Exs. B, C (emphasis supplied). JUUL's argument fails because *no button on the User Portal registered a new user*. Per JUUL's Terms of Service, registration is not completed by clicking the User Portal's Sign up button. Instead, the Terms require users to submit to an age verification check and provide their name, address, e-mail address, phone number and date of birth, all of which happens on the Registration Screen after a user leaves the User Portal. Dkt. 98-5, 2-3. Thus, even if a user subjectively (and incorrectly) believed that clicking Sign Up meant he was accepting JUUL's Terms, he had not yet registered and therefore could not yet accept the hyperlinked terms linked to the act of registration. JUUL, as the designer of its website, knew that registering and purchasing all took place on different pages of JUUL's website, and it chose not to provide notices on those pages or a method to assent to the Terms on those pages. JUUL's argument is that a hyperlink on one webpage can create a contract when a user clicks a button on a different webpage, but this argument has been repeatedly rejected. *See, e.g., Specht*, 306 F.3d 17, 29-30 (2d Cir. 2002) (Sotomayor, J.) (applying California law and refusing to enforce hyperlinked term that was off-screen when the user clicked the transactional button); *Nguyen*, 763 F.3d at 1179 (consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound, so the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers); *Sgouros v. Transunion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2015) (rejecting clickwrap agreement presented at beginning of transaction where the web pages on which [plaintiff] completed his purchases contained no clear statement that his purchase was subject to additional terms and conditions of sale.).

The cases on which JUUL relies to argue that Plaintiffs assented to the Terms on JUUL's User Portal eviscerate JUUL's position. Consistent with Ninth Circuit guidance, each of JUUL's

cases involves a disclosure that conspicuously appears directly beneath the final transactional button and admonish[es] users that by clicking a button to complete the transaction 'you agree [to the] terms and conditions in the [agreement].' *Long*, 245 Cal. App. 4th at 865 (citing *Nguyen*, 763 F.3d at 1178 & fn. 1). For example, in *Meyer*, 868 F.3d 66, 78 (2d Cir. 2017), the notice of hyperlinked terms came on the final screen of the registration page, simultaneous[ ] to enrollment, and the notice was directly beneath the final Registration button, leading the Second Circuit to conclude that the notice was temporally and spatially coupled to the mechanism for manifesting assent to be bound—i.e., the final Register button.[2] JUUL's argument that its User Portal disclosure is temporally and spatially coupled to transactions that take place on other pages was recently rejected by the Second Circuit, which revisited the *Meyer* decision in *Starke v. Squaretrade*, 913 F.3d 279 (2d Cir. 2019). There, the Second Circuit found that notice was insufficient because the 'Terms & Conditions' hyperlink was spatially decoupled from the transaction because it was not provided near the portion of the Amazon purchase page actually requiring Starke's attention (that is, the Add to Cart button), or indeed anywhere on the purchase page. *Starke*, 913 F.3d at 294. *See also id.* at 292 (noting that in *Meyer*, the hyperlinks to the Terms of Service appeared directly below, i.e., were spatially coupled to the registration button, and the register button was 'temporally coupled' with the hyperlink—i.e., the consumer was *notified of the terms at the time of sale*.) (emphasis added).

Here, when Plaintiffs completed their registration, JUUL did not disclose that this action would bind them to any contract terms (much less arbitration). In the absence of conspicuous on-screen notice at the moment of the registration, there could be no r affirmative assent to JUUL's

---

[2] The same was true in other opinions approving of browsewrap agreements. *See, e.g.*, *Cordas v. Uber Technologies., Inc.*, 228 F. Supp. 3d at 988–89 (notice of terms linked near the same page as the Done button user clicked to complete the sign-up process); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834-841 (S.D.N.Y. 2012) (where hyperlinked notice of terms appeared on the final registration screen and indicated that user accepts terms by clicking Sign Up, court held notice was sufficient because user was informed of the consequences of his *assenting click* and he was shown, immediately below, where to click to understand those consequences); *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, at *2, *3–5 (N.D. Cal. Apr. 1, 2005) (notice of terms appeared on every page of website); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 911–12 (N.D. Cal. 2011) (notice providing that use of service manifested agreement to terms was presented the first time user accessed the service).

Terms. *Id. See also Specht*, 306 F.3d 17, 29-30 (2d Cir. 2002) (under California law, a consumer's clicking on a [] button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the [] button would signify assent to those terms.). Thus, any subjective intent by JUUL to bind users to Terms not presented on JUUL's Registration Screen is, at best, an offer that no reasonable person would recognize as a proposal." *Norcia*, 2014 WL 4652332, at *8 (N.D. Cal. 2014). Such offers "do[] not count." *Id.*

> **1.     JUUL Does Not Provide Users With Sufficient, Further Notice of its Terms During or After Purchase.**

JUUL's notice was wholly inadequate to put purchasers on notice that they were agreeing to arbitrate claims relating not only to the use of the JUUL website, but also to the purchase or use of JUUL's products, including purchases made in brick and mortar retail stores, which were accompanied by no notice of JUUL's arbitration clause. JUUL's packaging, labeling, and in-the-box paperwork, including JUUL's warranty, made absolutely no reference to an arbitration clause or JUUL's terms. And nothing in JUUL's website Notice indicates that by using JUUL's website, JUUL intends to wholly modify the contractual relationship set forth in the warranty documents.

> **a)     JUUL provides no notice to online purchasers of its terms**

Contracts to arbitrate may not be formed through stealth tactics. *Norcia*, 2014 U.S. Dist. LEXIS 131893, at *21 (N.D. Cal. Sep. 18, 2014) (citing *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992-93, 101 Cal. Rptr. 347 (1972) (an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains, but when the offeree does not know that a proposal has been made to him this objective standard does not apply). Here, the only terms to which a reasonable purchaser would expect to be bound are those contained in the purchase transaction documents. Yet the terms that JUUL asserts govern purchases (and all other aspects of its relationship with consumers) were neither present nor disclosed on the product pages of JUUL's website, the Purchase Screens, or on or in the product's packaging. This is a total failure of notice. *See Starke*, 913 F.3d at 294 (2d Cir. 2019) (rejecting notice based on hyperlink decoupled from portion of the Amazon purchase page actually requiring Starke's attention (that is, the 'add to cart' button)). Unsurprisingly, JUUL cites to no case upholding an arbitration clause that was not presented with the product itself or at the time of purchase. Courts attach great importance to the presence of

conspicuous notice in sales of goods. *See Nicosia*, 834 F.3d 220, 237 (2d Cir. 2016)) (Reasonable minds [could] disagree whether notice on purchase screen stating that [b]y placing your order, you agree to Amazon.com's . . . conditions of use sufficient to give rise to notice).

**b)  JUUL provides no notice to in-store purchasers of its terms.**

Each Plaintiff brings claims that arise, wholly or in part, from the use of JUUL products purchased from traditional brick and mortar retailers.  Ahmad Decl. ¶¶ 3, 4; Masessa Decl. ¶¶ 2, 6; Minas Decl. ¶¶ 2, 5; Roberts Decl. ¶¶ 3, 6; Viscomi Decl. ¶¶ 2, 4.  Although JUUL's website Terms were not part of the contracts that governed these purchases, JUUL nevertheless asserts that the Terms apply to all of Plaintiffs' claims.  This attempt to apply an online arbitration clause to brick-and-mortar purchases represents an affront to reasonable consumer expectations and an ineffective cure for JUUL's failure to provide notice of its Terms at the time of sale.  See *Norcia*, 2014 WL 4652332, at *7 (California law bars contract formation through …stealth tactics).  Moreover, there is nothing in the Terms themselves to suggest that they apply to offline purchases.

It is indisputable that JUUL provided no notice of the Terms through its in-store advertising, packaging, in-box inserts, or any other materials associated with Plaintiffs'' brick-and-mortar purchases.  Courts in this Circuit have held that, where an on-the-box or in-the-box arbitration disclosure is lacking, an electronic notice is wholly inadequate to remedy the failure. For example, in *Norcia v. Samsung*, this Court refused to enforce an arbitration clause in a smartphone's product warranty, which was provided: (1) on Samsung's website, (2) in a warranty booklet that came with the device, and (3) disclosed on the product's packaging. No. 14-cv-00582-JD, 2014 U.S. Dist. LEXIS 131893, at *27 (N.D. Cal. Sep. 18, 2014).The court found that because the notices on and in Samsung's packaging failed to put users on notice of arbitration and that the web page is not sufficient by itself to constitute inquiry notice – among other things, it is an additional step removed from the actual [document in the box], which the Court has already found insufficient. *Id.*  Even where an attempt at notice is made, courts hold contracts for the sale of goods to different standards than contracts involving social media platforms or other online services.  For example, in *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1297 (N.D. Cal. 2018), the Court found that an on-the-box notice stating that

14

Device purchase subject to additional Samsung terms and conditions was insufficient notice of an arbitration clause in a pamphlet included in the box because the pamphlet, though titled Important Information with references to legal information, failed to list arbitration in the booklet's numbered page labels. *Id.* at 1297 (citing *Norcia v. Samsung*, 845 F.3d at 1282 (9th Cir. 2017); *see also Dang v. Samsung Elecs*. Co., 673 F. App'x 779 (9th Cir. 2017). Where, as here, there is no evidence that offline consumers received *any* notice of the manufacturer's terms at the time of purchase, the case against arbitrability is all the more compelling.

Even if Plaintiffs read JUUL's website Terms (which they did not), there was nothing in the arbitration agreement that would lead a reasonable consumer to believe that it also applied to activities taking place entirely offline (i.e., purchases in retail stores). Unsurprisingly, JUUL cites to no case in which a court has enforced an online arbitration clause against an offline purchaser. Indeed, insofar as the cases JUUL cites deal with agreements arising from the use of online services, these authorities undermine JUUL's argument for enforcement of the arbitration clause against purchasers of goods from brick-and-mortar retailers.  *See Meyer*, 868 F.3d 66 (2d Cir. 2017) (agreement arising from use of online car-sharing application); *Cordas*, 228 F.Supp. 3d 985 (N.D. Cal. 2017) (same); *Fteja*, 841 F. Supp. 2d 829, 834-841 (S.D.N.Y. 2012) (forum selection clause arising from use of social media platform); *Swift*, 805 F. Supp. 2d 904, 908, 911–12 (N.D. Cal. 2011) (agreement arising from use of online gaming platform).

### 2.   JUUL Does Not Provide Evidence that Plaintiff Ahmad Agreed to JUUL's Terms and Conditions.

While the Declaration of Jake Honig states that [JUUL] accounts have been created and registered on behalf of David Masessa, Ron Minas, Jack Roberts, and Michael Viscomi, it nowhere affirmatively states and offers no evidence that Ahmad ever created and registered such an account or that he ever agreed to JUUL's Terms of Service. Thus JUUL has failed to meet its burden of providing the existence of an agreement with Ahmad. *See, Mitchell*, No. 16-cv-04674-JD, 2017 U.S. Dist. LEXIS 79064, at *1; *Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1171-72 (N.D. Cal. 2002) (the FAA require[s] production of a record that the parties have entered into an agreement and evidence of the terms and conditions contained in such agreement.); *Par-Knight Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980) (party seeking to compel arbitration bears an initial summary-judgment like burden of establishing that it is entitled to arbitration). JUUL's

decision to withhold Transaction Screen documents also amounts to a willful failure to meet its burden.

### 3. Plaintiffs Ahmad and Roberts, as Minors, Lacked Capacity to Enter Into Any Agreements with JUUL and Any Such Agreements Have Been Properly Disaffirmed.

Even if Plaintiffs entered an enforceable contract with JUUL, the arbitration agreement in the Terms of Service is unenforceable against Plaintiffs Ahmad and Roberts because they were minors at the time of the alleged contract formation and lacked the capacity to agree to the Terms of Service. If the contract is enforceable against them, they disaffirm it.

California law defines minors as all persons under eighteen, Cal. Fam. Code § 6500, and restricts minors from entering into certain contracts, including a contract relating to any personal property not in the immediate possession or control of the minor. Cal. Fam. Code § 6701(c). Such a contract is void *ab initio* and no act of disaffirmance is required to avoid it. *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F.Supp.2d 894 (S.D.Ill. 2012) (citing *Burnand v. Irigoyen*, 30 Cal.2d 861, 186 P.2d 417 (1947)). Ahmad was under the age of eighteen on February 27, 2018 when he purchased a JUUL Basic Kit from the JUUL website. Ahmad Decl. ¶ 4. Roberts was also under the age of eighteen both when he registered an account with JUUL on November 2017 and when he later accessed his account on March 25, 2018. Roberts Decl. ¶¶ 2, 3, 6. Pursuant to Cal. Fam. Code § 6701(c), no contract was created between Ahmad or Roberts and JUUL, and neither is subject to JUUL's Terms of Service and any possibly enforceable arbitration provision those Terms may have contained.

Even if this Court were to find that a contract was created between Ahmad and JUUL and/or Roberts and JUUL, each has the right to disaffirm this contract, rendering it void. *See I.B. ex rel. Fife v. Facebook*, Inc., 905 F. Supp. 2d 989 (N.D. Cal. 2012) (Under California law, a minor may disaffirm all obligations under a contract, *even for services previously rendered,* without restoring consideration or the value of services rendered to the other party.) (citation omitted) California Family Code section 6700 provides that, except for contracts void under section 6701, a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance provided by section 6710. California law permits a minor to disaffirm a contract during minority or within a reasonable time after reaching majority. Cal. Fam. Code § 6710 (Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a

1
2
3
4

reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative.). California courts recognize that sound policy considerations support this provision. *Berg v. Traylor,* 148 Cal.App.4th 809, 818, 56 Cal.Rptr.3d 140 (2007). As explained by the Court:

5
6
7
8
9
10

> The law shields minors from their lack of judgment and experience and under certain conditions vests in them the right to disaffirm their contracts. Although in many instances such disaffirmance may be a hardship upon those who deal with an infant, the right to avoid his contracts is conferred by law upon a minor for his protection against his own improvidence and the designs of others. It is the policy of the law to protect a minor against himself and his indiscretions and immaturity as well as against the machinations of other people and to discourage adults from contracting with an infant. Any loss occasioned by the disaffirmance of a minor's contract might have been avoided by declining to enter into the contract.

11
12
13

*Id.* (quoting *Niemann v. Deverich,* 98 Cal.App.2d 787, 793, 221 P.2d 178 (1950) (internal quotation marks omitted)). Simply stated, one who provides a minor with goods and services does so at her own risk. *Id.* (citing *Goldberg v. Superior Court,* 23 Cal.App.4th 1378, 1382–1383, 28 Cal.Rptr.2d 613 (1994)).

14
15
16
17
18
19
20
21
22
23
24
25

Ahmad and Roberts have disaffirmed any contract with JUUL, rendering those contracts void. Ahmad Decl. ¶ 10; Roberts Decl. ¶ 12. Contracts made by a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect. *Spencer v. Collins,* 156 Cal. 298, 303 (Cal.1909). Express notice to the other party is unnecessary. *Berg,* 148 Cal. App. 4th at 820 (citing *Celli v. Sports Car Club of America, Inc.,* 29 Cal. App. 3d 511, 517 (1972)). Disaffirmation by a minor rescinds the entire contract, rendering it a nullity. *Scollan v. Gov't Employees Ins. Co.,* 222 Cal.App.2d 181, 183–84 (1963). An action for disaffirmation is one in equity, governed in many respects by the rules relating to rescission of contracts, and the trial court is vested with a broad discretion to see that equity is done. *Le Baron v. Berryessa Cattle Co.,* 78 Cal.App. 536, 548 (1926). Ahmad and Roberts have properly disaffirmed any contract they may have entered into with JUUL and their claims cannot be subject to arbitration. Ahmad Decl. ¶ 10; Roberts Decl. ¶ 12.

26
27
28

**4.      JUUL's Notice Disclosure Did Not Appear on the Screen of Plaintiff Minas' iPhone 5 When He Allegedly Assented to JUUL's Terms.**

Where courts have enforced online browsewrap agreements, the hyperlink to the website's terms, at the very least, appeared on screen.  In contrast, on the date Ron Minas is alleged to have agreed to JUUL's arbitration clause, JUUL's Terms hyperlink was simply not in view.  As Minas did not see JUUL's Terms hyperlink, he was not on notice of the arbitration clause and did not agree to it.

When Plaintiff Ron Minas reached JUUL's User Portal on August 4, 2018, the hyperlinked terms disclosure did not appear on the screen of his iPhone 5. Minas Decl. ¶ 6.   Rather, the very bottom part of the log-in page, which included the hyperlinked disclosure, was submerged and thus only viewable if Minas scrolled down, which he did not do.  *Id.* There was no message on the page informing Minas to scroll down and he did not need to scroll down in order to progress past the User Portal.  *Id.* Furthermore, even if Minas had scrolled down, he would not have received notice of JUUL's terms, because as soon as he tapped the blank field to enter his e-mail, a digital keyboard popped up, covering the the bottom part of his screen, including the Terms hyperlink.  *Id.*  This digital keyboard remained on screen while Minas entered his e-mail and password, and then clicked Sign Up.  *Id.*  Accordingly, JUUL's Terms hyperlink did not appear on the screen of Plaintiff Minas' iPhone even momentarily while he was using the User Portal.  Thus, JUUL cannot credibly argue that it provided a reasonably conspicuous notice its terms as required by *Nguyen*. See *McKee v. Audible, Inc.*, 2017 U.S. Dist. LEXIS 21739 (C.D. Cal. 2017) (finding user was not put on notice where a pop up screen immediately obscured a website's terms disclosure from view as soon as the user began to enter the information the site requested). Because Plaintiff Minas did not have any notice of JUUL's Terms of Service, Minas could not have agreed to them.  At a minimum, the facts Plaintiff Minas alleges create a genuine issue of fact concerning the formation of the agreement, which in turn requires denial of JUUL's attempt to force him to arbitrate his claims. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

**5.     JUUL's Website Does Not Put Users Seeking Warranty Service, Such as Plaintiffs Minas and Viscomi, on Notice of its Terms.**

JUUL's website failed to put consumers seeking warranty service, such as Plaintiffs Minas and Viscomi, on notice of its arbitration clause. JUUL's warranty page informs consumers that, to obtain either service or replacement, they should register their JUUL devices. Dkt. 98-6. When a user clicks the underlined word register on JUUL's warranty page, he is taken to the User Portal, where JUUL's terms disclosure states that the user agrees to JUUL's terms [b]y registering with JUUL.  The similarity in language between the warranty and the terms disclosure would lead a reasonable consumer to conclude that registering refers to device registration, not account registration. See *Friedman v. Guthy-Renker*, No. 2:14-cv-06009-ODW(AGRx), 2015 U.S. Dist. LEXIS 24307 (C.D. Cal. Feb. 27, 2015) (finding no notice where a reasonable consumer could believe that the phrase Agree to terms next to a checkbox referred to terms of a credit card authorization and not the Terms & Conditions that appeared in an adjacent hyperlink). As such, a reasonable user would think that the Terms referenced in the disclosure are the warranty itself or, in any event, terms that fall within the scope of the warranty.  Thus, even if Minas and Viscomi had seen the hyperlink to JUUL's Terms (which they did not), they would not have been put on notice of a clause that required them to arbitrate claims outside the scope of warranty they sought to enforce. See also Norcia, 845 F.3d 1279, 1289 (9th Cir. 2017) (refusing to enforce an arbitration clause in a warranty booklet where no reasonable person would be on notice that it contained a freestanding [arbitration] obligation outside the scope of the warranty).; Starke v. Squaretrade, 913 F.3d 279 (2d Cir. 2019) (refusing to enforce arbitration clause that was only presented to consumer after the purchase had been completed.)[5]

---

[5] A consumer who wants to make a claim under JUUL's limited warranty must first register an account at JUUL's website, a process that entails, or so JUUL asserts, agreeing to JUUL's Terms of Service, including its arbitration clause.  This is problematic for reasons that go beyond notice. First, the registration requirement effectively smuggles JUUL's arbitration clause into the warranty in clear violation of the one document rule of the Magnuson Moss Warranty Act. See *Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611 (11th Cir. 2001) (refusing to enforce an arbitration clause that appeared in sales contract but was not included in warranty document itself). Second, the registration requirement is a limitation on the warranty that is unenforceable if not presented at the time of purchase.  *See LWT, Inc. v. Childers*, 19 F.3d 539,

1

### 6.     Plaintiffs Roberts and Masessa, as Returning Users to JUUL.com, Never Agreed to JUUL's Terms and Conditions.

2

3

Plaintiffs Masessa and Roberts registered JUUL accounts in 2015 and 2017, respectively.

JUUL does not argue that these Plaintiffs agreed to JUUL's Terms of Service or to arbitrate their

4

claims when they registered. Instead, JUUL wrongly asserts that when they *logged in* to their

5

accounts in 2018, Masessa and Roberts agreed to the Terms of Service, even though they were

6

never prompted to re-register subject to the Terms or assent to the Terms. First, there is nothing

7

in the arbitration agreement that discloses that it retroactively applies to purchases made by the

8

user before the effective date of the Terms. Therefore, at a minimum, Masessa and Roberts did not

9

agree to arbitration for any claims they have for purchases prior to the dates they are alleged to

10

have agreed to JUUL's Terms.

11

Second, as returning users, Plaintiffs logged in to their accounts using the Log In button and

12

accompanying text fields above it, where there was no hyperlink to, or disclosure of, JUUL's

Terms of Service. The disclaimer on the User Portal does not provide that by using JUUL's

13

website, users agree to the Terms, but instead, that by registering an account on JUUL's website,

14

users agree to the Terms. Neither Masessa nor Roberts registered an account online during the

15

effective date of the Terms. Courts have found that users were not put on notice where a disclosure

16

states that a certain act manifests agreement to terms, but the user does not perform that act. For

17

example, in *McKee v. Audible, Inc.*, 2017 U.S. Dist. LEXIS 21739 (C.D. Cal. 2017), a website alleged

18

that the Plaintiff agreed to arbitration by clicking a Start Now above a terms disclosure that read by

19

completing your purchase, you agree to [Defendant's] Conditions of Use. *Id.* at *2. The Court

20

found it significant that clicking the 'Start Now' button did not make a purchase, and that Plaintiff

21

541 (10th Cir. 1994)([s]ince the Code requirements regarding disclaimer are imposed for the

22

purpose of protecting a buyer from unexpected and unbargained surprises, a limitation or

disclaimer of warranties will be given effect only if it formed part of the basis of the bargain when

23

the sales contract was entered into. (footnotes omitted).  Finally, by requiring users to register

24

accounts before they could receive warranty service, JUUL essentially refused to perform its

existing obligations under one agreement (i.e. the warranty) unless users agreed to enter into a

25

subsequent agreement (i.e., JUUL's Terms).  This is a classic hold-up situation that forecloses

26

enforcement of the second agreement.  See *Alaska Packers Asso. v Domencio*, 117 F. 99 r (9th Cir.

1902) (A promise by a party to do what he is bound in law to do is…is the same as no

27

consideration at all, and is merely void).

28

did not make a purchase on the date he was alleged to have agreed to [Defendant's] terms. *Id.* at *12. Thus, even if the disclosure provided notice that 'making a purchase' would bind the Plaintiff to a contract, it fail[ed] to provide notice that selecting the Start Now button . . . bound him to anything. *Id.* Here, the dispositive fact is indisputable: Plaintiffs did not register accounts on the dates they are alleged to have agreed to JUUL' terms, they only logged in. Therefore, following the reasoning in *McKee*, even if JUUL's disclosure provided notice that registering would bind Plaintiffs to a contract, it failed to provide notice that logging in bound them to anything. *Id.*

But even if the disclaimer at the bottom of the User Portal could be interpreted as meaning that the user assented to the terms each and every time they created and/or logged into their online accounts as JUUL asserts, JUUL failed to sufficiently notify users such as Masessa and Roberts of this. The largest and most-prominent elements of JUUL's Sign In page were the two headings, Log In and New To JUUL? Sign In, which directed returning users to the top half of the page and new users to the bottom half. Dkt. 98-3. The top half of the page had everything returning users needed to access their accounts: interactive fields for e-mails and passwords, a Forgot password? hyperlink and a Log In button. *Id.* The bottom half of the page, as its heading suggests, was relevant only to those who were New to JUUL. *Id.* As returning users, Plaintiffs had no reason—and no duty—to search far flung corners of the webpage for terms that might bind them. *See Nguyen* 763 F.3d at 1176 (courts routinely find notice lacking [w]here the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it); *Starke*, 913 F.3d at 294 (finding user was not put on notice where hyperlink to terms was spatially decoupled from the transaction because it was not provided near the portion of the [webpage] actually requiring [user's] attention . . . .).

For all returning users, JUUL's Disclosure—at the very bottom of the screen— was in the least conspicuous location on JUUL's sign-in page.[6] To find JUUL's disclosure, a returning user

---

[6] JUUL misleadingly claims that the Disclosure is immediately below the 'Log In' and 'Sign Up' buttons. While it is trivially true that the Disclosure is below everything else on the screen - Log In button included - the word below itself only indicates relative position, not proximity. And the assertion that the Disclosure is immediately (def: with no intervening objects or space between) below the Log In button is plainly false. JUUL's Disclosure is immediately below the Sign Up button, and only the Sign Up button. The Log In button is half a page away, in a different section

would have needed to (1) remove his attention from the fields he must complete to log in, (2) look below the <u>Forgot password?</u> hyperlink, (3) continue below the Log In button (the only relevant button for returning users), (4) look below the email and password fields for new users, and (5) continue past the Sign Up button for new users. Only then would the user see a small-print disclosure containing an invisible hyperlink that clearly addresses only new users. In *Long*, the California Court of Appeals held that a website failed to put users on notice of its terms under almost identical circumstances. 245 Cal. App. 4th at 866 (2016) (refusing to enforce a website's arbitration clause where, to find a Terms of Use hyperlink…a consumer placing an order must (1) remove his attention from the fields in which he is asked to enter his information; (2) look below the buttons he must click to proceed with the order; (3) look even further below a … logo and notification … which itself includes a hyperlink; (4) look still further below a thick dark green bar with a hyperlink for SITE FEEDBACK; and (5) finally find the TERMS OF USE  hyperlink situated to the right of another hyperlink for the website's PRIVACY POLICY, both of which appear in the same font and light green typeface that…could blend in with the website's lime green background.). The facts here compel the same result.

### D.   Plaintiffs Ahmad and Roberts' Claims Against JUUL Accrued Before They Visited the JUUL Website or Allegedly Agreed to the Terms.

Plaintiffs' claims in the Complaint all accrued from the moment they first tried JUUL products, and thus prior to the dates that JUUL alleges them to have agreed to its Terms, including the arbitration clause.  MTD, 5-6; Ahmad Decl. ¶¶ 3, 4; Masessa Decl. ¶¶ 2, 6; Minas Decl. ¶¶ 2, 5; Roberts Decl. ¶¶ 3, 6; Viscomi Decl. ¶¶ 2, 4 Even if the arbitration clause applied to all of the purchases Plaintiffs made after they allegedly agreed to JUUL's Terms (including those purchases made on the JUUL website and purchases in brick and mortar retail stores), there is nothing in the arbitration clause that would lead a reasonable consumer to believe that it also retroactively applied to purchases that took place before Plaintiffs agreed to the Terms. As Plaintiffs cannot be said to have accepted the Terms of Service when their claims arose, the arbitration provision cannot be imposed on them. *State Farm Gen. Ins. Co. v. Watts Regulator Co.*, 17 Cal. App. 5th 1093, 1100

---

of the screen, i.e., not spatially coupled with the Disclosure. JUUL's assertion to the contrary is a naked attempt to accomplish with language what it has failed to accomplish with web design.

(2017) (The 'critical point in time,' in determining whether an arbitration agreement applies to claims, 'is when the claims accrued, not when the [plaintiff] filed his or her judicial complaint.') (citing *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 62 (2013); *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1458 (2012) (To interpret the arbitration clause to apply retroactively would cause [the employee] to forego her vested right to litigate an accrued claim.).

### E. The Arbitration Agreement is Unenforceable Under Generally Applicable Contract Defenses.

Even if a valid agreement to arbitrate were formed, the final clause of section 2 of the FAA, called the savings clause, provides that arbitration agreements can be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability, which the Court must also assess under state law. *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 431 (9th Cir. 2015) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). JUUL's Terms provide that California law governs all issues of contract formation and interpretation, without regard to conflict of laws principles. ECF 98-5 at ¶ 16. Applying California law, and as explained in more detail below, JUUL's arbitration agreement is invalid, and therefore unenforceable, because Plaintiffs entered the agreement under duress. Further, to the extent the agreement includes a public injunctive relief waiver, that provision is unenforceable.

### 1. Any Agreements between JUUL and Plaintiffs Should Be Set Aside for Fraud, Duress, and Undue Influence.

An agreement otherwise valid may be set aside for fraud, duress, or upon other grounds invalidating the free consent of a contracting party. *Rehbock v. Reservoir Hill Gasoline Co.* (App. 2 Dist. 1936) 14 Cal.App.2d 233, 57 P.2d 1357. Here, any agreement between JUUL and Plaintiffs was obtained through fraud, duress, and undue influence and must be set aside.

California Civil Code section 1567 provides that an apparent consent to an agreement is not valid when obtained through duress. Duress generally exists whenever one is induced by the unlawful act of another to make a contract or perform some other act under circumstances that deprive him or her of the exercise of free will. *Lewis v. Fahn*,113 Cal.App.2d 95, 98 (1952). The loss of free will may be caused by a broad range of economic, physical, and emotional circumstances. *See Brown v. Pierce*, 74 U.S. 205, 207 (1868) (recognizing a deed procured through physical threats may be avoided for duress); *In re Marriage of Baltins*, 212 Cal.App.3d 66 (Cal. App. 1989). (finding

duress where wife in a distraught and weakened psychological condition was coerced to give apparent consent to husband's contract to dissolve marriage); *Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522, 528 (N.D. Cal. 1995) (recognizing theories of economic duress);

JUUL's infliction of addiction is a coercive act that deprived Plaintiffs' of the exercise of free will. JUUL's novel formulation of powerful nicotine salts invades the brain and causes long-lasting changes that induce addiction, particularly in minors. Plaintiffs have alleged the tremendous lengths they have gone to get their JUUL fix. *See* Dkt. 82-2. The addiction invalidates the free consent of the addicted, including Plaintiffs and the Class.

JUUL's agreements should also be voided because Plaintiffs and the Class were induced by fraud and undue influence. *See Turner v. Turner* 167 Cal. App. 2d 636, (C App. 1959) (free consent is an indispensable element of every transaction, and there is no real or free consent when it is obtained through fraud). Plaintiffs have alleged in great detail the scope and mechanisms of JUUL's fraud. Dkt. 82 at 89. *Odorizzi v. Bloomfield School Dist.*, 54 Cal.Rptr. 533 (Cal. App. 1966) (describing undue influence where persuasion tends to be coercive in nature and overcomes the will without convincing the judgment); *Webb v. Saunders*, 79 Cal.App.2d 863, (Cal. App. 1947) (whereby the will of the person is overborne and he is induced to do or forbear to do an act which he would not do).

Addiction is the very loss of free will. JUUL has inflicted a bio-behavioral disease described by uncontrollable, compulsive behavior despite negative consequences, on a great and increasing number of Americans, including minors. JUUL's founders, inspired by the tobacco industry, deliberately sought to design a substance as addictive as possible to deprive consumers of free will. Dkt. 82-9. Thus, any agreements these individuals may have entered into were a product of duress, undue influence and fraud.

### 2.    A Public Injunctive Relief Waiver is Unenforceable.

Under California law, any arbitration agreement that prevents the award of public injunctive relief in any forum is unenforceable. *See, McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961 (2017) (insofar as the arbitration provision here purports to waive McGill's right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law). That includes contracts that compel all claims to arbitration, yet allow only pursuit of individual relief (solely on behalf of oneself) in that forum. *See id.; Blair v. Rent-A-Ctr., Inc.*, Case No. 17-cv-02335-

WHA, 2017 U.S. Dist. LEXIS 163979, 2017 WL 4805577, at *5 (N.D. Cal. Oct. 25, 2017) (the arbitrator was prohibited from 'award[ing] relief that would affect RAC account holders other than [the customer]'); *Roberts v. AT&T Mobility LLC*, Case No. 15-cv-03418-EMC, 2018 U.S. Dist. LEXIS 42235, 2018 WL 1317346, at *4 (N.D. Cal. Mar. 14, 2018) (arbitrator was prohibited from awarding relief for or against anyone who was not a party to arbitration); *McArdle v. AT&T Mobility LLC*, Case No. 09-cv-01117-CW, 2017 U.S. Dist. LEXIS 162751, 2017 WL 4354998, at *1 (N.D. Cal. Oct. 2, 2017) (The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.). To the extent that the following language in the Class Action/Jury Trial Waiver paragraph of the Terms of Service could be interpreted as a public injunctive relief waiver, it is invalid:

> With respect to all persons and entities, regardless of whether they have obtained or used the Website or JUUL Labs Products or services for personal, commercial or other purposes, **all claims must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class action, collective action, private attorney general action or other representative proceeding**. This waiver applies to class arbitration, and, unless we agree otherwise, the arbitrator may not consolidate more than one person's claims. **You agree that, by entering into this agreement, you and JUUL Labs are each waiving the right to a trial by jury or to participate in a class action, collective action, private attorney general action, or other representative proceeding of any kind.**

Dkt. 98-5, pg. 11 (emphasis supplied). *See, e.g.,Dornaus v. Best Buy Co., Inc.*, No. 18-cv-04085-PJH, 2019 U.S.Dist.LEXIS 24522, at *9-10 (N.D.Cal. Feb. 14, 2019), (finding unenforceable and severing the following: The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis.).

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that JUUL's motion to compel arbitration be denied in its entirety.

1

2

3

Dated:  April 30, 2019                         **MIGLIACCIO & RATHOD LLP**

4

/s/ Esfand Nafisi /

5                                                              Nicholas Migliaccio, admitted pro hac vice
Jason Rathod, admitted pro hac vice

6                                                              Esfand Nafisi (State Bar No. 320119)
412 H Street NE, Suite 302

7                                                              Washington, D.C. 20002

8                                                              **GUTRIDE SAFIER LLP**

9                                                              Adam J. Gutride,
Seth A. Safier,

10                                                             Marie A. McCrary
Anthony J. Patek (State Bar No. 228964)

11                                                             100 Pine Street, Suite 1250
San Francisco, California 94111

12
Matthew T. McCrary, admitted pro hac vice

13                                                             265 Franklin St, Suite 1702
Boston, MA 02110

14

15                                                             **BERGER MONTAGUE, P.C.**
Sherrie R. Savett, admitted pro hac vice

16                                                             Russell D. Paul, admitted pro hac vice
Neil Makhija, admitted pro hac vice

17                                                             1818 Market Street, Suite 3600
Philadelphia, PA 19103

18                                                             Tel.: (215) 875-3000
Fax: (215) 875-4604

19                                                             Email: ssavett@bm.net
Email: rpaul@bm.net
Email: nmakhija@bm.net

20

21                                                             **ZIMMERMAN LAW OFFICES, P.C.**
Thomas Zimmerman, admitted pro hac vice

22                                                             77 W. Washington Street, Suite 1220
Chicago, Illinois 60602

23                                                             Tel: (312) 440-0020
Fax: (312) 440-4180

24                                                             Email: tom@attorneyzim.com
*Attorney for Hasnat Ahmad*

25

26                                                             *Attorneys for Plaintiffs*

27

28

PLAINTIFFS'OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
3:18-CV-02249-WHO